**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SHANGHAI QIANZHUO NETWORK TECHNOLOGY CO., LTD. A/K/A FUTUREDIAMOND AND SHANGHAI LANPIN HAIZHUO TECHNOLOGY CO., LTD. A/K/A LOVINTRY, | Case No. 2:25-cv-15740-CCC-LDW |
| Plaintiffs, | Honorable Claire C. Cecchi |
| v. | |
| DEBRA LOFRANCO, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR**
**MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER**

This Memorandum of Law is submitted in support of Plaintiffs' Motion for a Temporary Restraining Order pursuant to Rule 65 of the Federal Rules of Civil Procedure. Plaintiffs seek immediate injunctive relief to prevent imminent and irreparable harm resulting from Defendant's filing of complaints alleging patent infringement with Amazon.com against Plaintiffs' products. As set forth herein, Plaintiffs satisfy all four factors required for the issuance of a temporary restraining order: (1) likelihood of success on the merits, (2) irreparable harm in the absence of relief, (3) the balance of equities tipping in Plaintiffs' favor, and (4) the public interest supporting injunctive relief.

Additionally, the Emergency relief requested herein is appropriate as the peak holiday shopping season is approaching.  Plaintiff's goods remain barred from sale due to Defendants intentional tortious interference, providing Defendant with continued incentive to actively evade service and delay resolution and milk the system for improper gain by stifling competition.

## I.    Introduction

Plaintiffs, Shanghai Qianzhuo Network Technology Co. ,Ltd. a/k/a FutureDiamond and Shanghai Lanpin Haizhuo Technology Co., Ltd. a/k/a LovIntry ("Plaintiffs" or "FutureDiamond and LovIntry") request that this Court to temporarily enjoin Debra Lofranco ("Defendant")[1] from interfering with Plaintiffs' sales of products in the marketplace during the pendency of this case. Defendant is currently interfering with Plaintiffs' through wrongful and legally unsound allegations that Plaintiffs' products infringe on U.S. Patent No. 11,930,789 (the "'789 patent"). (Exhibit 1, attached hereto).  Without the Court's expedited intervention, Plaintiffs face the risk of their e-commerce store being shut down, their product links suffering permanent damage, and potential destruction of inventory. Plaintiffs seek relief to prevent the imminent harm wrongfully threatened by Defendant. The peak Holiday shopping season is approaching and some of Plaintiff's sales links remain deactivated due to Defendant's tortious interference.  Without temporary relief requested herein, Plaintiff will suffer significant harm by missing this critical holiday sales window.

Plaintiffs face imminent and permanent harm, including the inability to operate their business, loss of market share, diminished Amazon rankings, and damage to reputation and goodwill - harm that is irreparable and not compensable by monetary damages. Immediate injunctive relief is both necessary and appropriate.

## II.    The Background Facts

Amazon has a system in place to protect the intellectual property rights of owners. Under this system, a rights owner can file a complaint against seller on Amazon alleging that the seller has violated the rights owner's trademark, patent, and/or copyright.  In response, Amazon will

---

[1] Plaintiff's complaint included a typographical error "Lufranco", and Plaintiff has moved the court to correct it. See Dkt. 11.

delist the seller's products, revoke their selling privileges, and subsequently dispose of the allegedly infringing products.

This system is highly susceptible to abuse. Amazon's employees are not required to review evidence of alleged infringement in the same manner as the judicial system.  They are not required to weigh the factors for awarding injunctive relief. Yet they hold significant power to freeze assets, delist products, and even close entire stores all on an *ex parte* basis and without providing legal reasoning, analysis, or justification. This practice creates a loophole that can be exploited by entities like Defendant.

A significant portion of Plaintiffs' business is conducted through Amazon's online marketplace, which serves as a critical platform for Plaintiffs' operations in the United States. Declaration of Chuanpeng Ning at ¶4. Plaintiffs have invested substantial resources in in bringing their Products to market and establishing a presence on Amazon and building positive reputations for quality and reliability. *Id*. It requires tremendous time and effort to build product ranking on Amazon, including long-term sustained product sales.  *Id*. at ¶5.  If a product link becomes deactivated for any significant length of time, it will be permanently damaged by losing its ranking, resulting in the product listing appearing significantly further down the list of product searches, which in turn results in fewer sales and further loss of ranking. *Id*. at ¶6.  Any break in its ability to sell its product created an extremely high risk of permanently damaging each Plaintiff's ability to maintain that highly desirable and profitable ranking. *Id*. at ¶7.

Out of necessity, Plaintiffs bring the present motion for a TRO to temporarily enjoin Defendant due to wrongfully asserting patent rights and from interfering with Plaintiffs' sales of products on Amazon.com. This preserves the status quo, which is the default status of free and open competition in the marketplace, allowing consumers access to the full range of available

2

products and the benefits of competition, and affords Plaintiffs the opportunity to defend themselves against Defendant's legal claims in a proper judicial forum.

### III.    Argument

#### A.    Legal Standard

Plaintiffs brought the present case under Title 35 of the United States Code, and under 28 U.S.C. §§2201 and 2202, to obtain a declaratory judgement of non-infringement with respect to '789 patent. *See* Dkt. No. 1. Courts have the discretion to issue an injunction to "prevent the violation of any rights secured by patent." 35 U.S.C. § 283.

The standard for analyzing a motion for a temporary restraining order is the same as that for a motion seeking a preliminary injunction. *Koons v. Reynolds*, 649 F. Supp. 3d 14, 22 (D.N.J. 2023). To satisfy the burden of proof for a temporary restraining order "the moving party must demonstrate the classic four elements: (1) a reasonable probability of success on the merits; (2) that denial of injunctive relief will result in irreparable injury; (3) that granting injunctive relief will not result in even greater harm to the nonmoving party; and (4) that granting injunctive relief will be in the public interest." *Saudi Basic Indus. Corp. v. Exxon Corp.*, 364 F.3d 106, 112 n. 6 (3d Cir. 2004). The first two factors - likelihood of success on the merits and irreparable harm - are threshold elements that must be demonstrated by the moving party to warrant relief. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Additionally, "[O]ne of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, noncontested status of the parties." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir.1990) (citation and quotation omitted).

The facts of this case compel the issuance of a temporary restraining order against Defendant because Plaintiffs meet all four requirements.

**B.        There Is a High Likelyhood that Plaintiff Will Prevail on Thier Claims**

The first element of the preliminary injunction test is that Plaintiffs must establish a reasonable probability of success on the merits. *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197–98 (3d Cir.1990); *see also Opticians*, 920 F.2d at 191–92, citing *Bill Blass, Ltd. v. Saz Corp.*, 751 F.2d 152, 154 (3d Cir.1984). In the present case Plaintiffs can demonstrate a high probability of success on their non-infringement claims.

Success on the merits of a declaratory judgment of non-infringement claim means demonstrating that it is likely the patent is not infringed (or is invalid). *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). Determining noninfringement of a utility patent involves a two-step process: (1) "the court determines the scope and meaning of the asserted claims"; and (2) "the properly construed claims are compared to the accused device or process to assess whether all claim elements are met." *Edge Sys. LLC v. Aguila*, 635 Fed. Appx. 897, 902 (Fed. Cir. 2015) (quoting *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998)).

To establish infringement, a patentee bears the burden of proving that an accused device includes each and every claim limitation. *Sci. Applications Int'l Corp. v. United States*, 169 Fed. Cl. 643, 715 (2024). Thus, even though Plaintiffs are moving for preliminary injunctive relief, the burden of establishing a likelihood of infringement of the patent remains solely with the Defendant patent owner.  In assessing the potential for infringement "[i]f…even one claim limitation is missing or not met, there is no literal infringement." *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005). If the accused product does not meet each and every limitation of a claim either literally or under the doctrine of equivalents it cannot infringe the claim. *Id.* If a product does not infringe an independent claim, that product cannot infringe a claim that is

dependent on the independent claims that is not infringed. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-15 (Fed. Cir. 2005).

### i.    The Subject Matter of the '789 Patent

The '789 patent is directed to a pet accessory. More particularly, the device in the '789 patent is a pet toy comprising a body having a central cavity and at least one handle made out of elastic material or a guard protection. *See* Ex. 1, 4:42-45 & 6:7-13. According to the specification, the device contains an abrasive material which is strategically placed in a recessed face of the toy to prevent "contacting and marring" of "a flat surface on which the pet toy may be placed, such as a wooden floor." *Id.* at 2:45-47;61-67.  These limitations are set forth in the claims.

### ii.    Plaintiff's Products Do Not Infringe

The '789 patent includes 20 claims, two of those 20 claims are independent claims (Claims 1 and 18).  Plaintiffs' Accused Products do not infringe the '789 Patent because none of the Accused Products possess all the elements and limitations of any claim of the '789 Patent.

### 1.    Plaintiffs' Products Cannot Meet Each And Every Limitation Of Claim 1

Claim 1 of the '789 patent requires that there be "at least one handle, made of an elastic material…". *See* Ex 1, 4:45. Claim 1 further requires that the "handle includes a plurality of grooves sized and positioned to be contacted by pet teeth and configured to clean the pet teeth". *Id.* at 4:48-50. Plaintiffs sell two versions of pet toy products (the "Flat Tray" and the "M Tray") (Figures 1 & 2). It is impossible for Plaintiffs' Products (the Flat Trat and M Tray) to meet each and every limitation of claim 1 of the '789 patent at least because **none** of the Products include a "handle, made of an elastic material" which "includes a plurality of grooves sized" either literally or under the doctrine of equivalents.



| **Figure 1**: Flat Tray Product | **Figure 2**: M Tray Product |

Indeed, the Flat Tray product is made of plywood with sandpaper-like material covering the flat surface.  A sliding door reveals a rectangular container.  Similarly, the M Tray is made of plywood and covered in sandpaper.  It has a single sliding door.  The products are inflexible and have no "grooves" for teeth.

### 2.    Plaintiffs' Products Cannot Meet Each And Every Limitation Of Claim 18

Claim 18 of the '789 patent requires an upper face or lower face that includes "a pad surface for adhering and abrasive material."  In addition, the claim requires "a guard protection extending in a perpendicular direction with respect to the pad surface and configured to prevent the abrasive material from contacting a flat surface upon which the pet toy is placed". *See* Ex. 1, 6:9-12. Once again, the combination of these structures is obviously not present in any of the accused products.

As seen in Figures 1 & 2 above, the Flat Tray, is just that, *flat*.  Assuming for argument that the sandpaper surface constitutes the "pad" there is nothing perpendicular from it.  So too, even if the sandpaper of the M Tray were considered the "pad" nothing protrudes perpendicularly from it either.

Quite simply, Plaintiffs' products do not have "a guard protection". Therefore, it is impossible for the Flat Trat and the M Tray to meet each and every limitation of claim 18 of the

6

'789 patent at least because none of the Products include a "a guard protection extending in a perpendicular direction with respect to the pad surface and configured to prevent the abrasive material from contacting a flat surface upon which the pet toy is placed" either literally or under the doctrine of equivalents. If either the Flat Tray or the M Tray were set sandpaper-side-down on a surface, it is readily apparent that the sandpaper would contact the surface, risking scratches. That is the opposite of what the claim requires.

Since all of the accused products do not meet the limitations of any of the independent claims of the '789 patent, none could infringe any independent claim. By extension, none of the products infringe on any of the remaining dependent claims of the '789 patent. See *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed.Cir.1989) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim."). At least because all of Plaintiffs' Products lack at least one required limitation of every claim, Plaintiffs Products cannot infringe any claim and Plaintiffs are, therefore, likely to succeed on the merits of its declaratory judgment action for noninfringement.

### C. Plaintiff Will Suffer Irreparable Harm In the Absence Of A Preliminary Injunction

Once a likelihood of success on the merits has been shown, a plaintiff must show that it is likely to suffer irreparable injury absent entry of the requested injunction. See *Winter v Natural Res. Def. Council, Inc*., 555 US 7, 22 (2008). The moving party must make a "clear showing of immediate irreparable injury[] or a presently existing actual threat." *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994) (internal quotation omitted). In the case at hand, Plaintiff is facing imminent and irreparable harm, which will only be exacerbated in the absence of a temporary restraining order.

In March of 2025, Defendants filed Amazon complaints on Plaintiffs' products alleging

7

that the products infringe on Defendant's '789 patent. *See* Dkt. No. at ¶ 22. Amazon rejected Defendant's complaints after Amazon determined that the M Tray product does not infringe on the '789 patent. *Id.* at ¶ 27. On April 3, 2025, Defendant threatened Plaintiffs stating that "we will be moving forward with taking the necessary legal action against your client." *Id.* at ¶ 28. However, Defendant never raised any issues with the Court.  Instead, it continues to interfere with Plaintiff's business by filing Amazon complaints which resulted in the removal of the Flat Tray product with the B0FFSKXXFY ASIN. *Id.* at ¶ 29 & 33. Defendant continued to harass Plaintiffs by also filing baseless complaints with other third-party platforms such as Walmart.com. *Id.* at ¶ 31.

Defendant's abusive behavior resulted in Plaintiffs' product listing being removed from Amazon.com. Declaration of Chuanpeng Ning at ¶3. Amazon.com serves as Plaintiffs' primary sales channel, accounting for a significant percentage of its revenue. *Id*. at ¶4 The freezing of Plaintiffs' inventories significantly disrupted their ability to meet customer demand. Customers who otherwise would purchase Plaintiffs' products will seek alternative suppliers, many of whom are Plaintiffs' direct competitors, leading to a permanent loss of market share. Declaration of Chuanpeng Ning at ¶8. Courts have recognized that loss of market share and the ability to compete are quintessential forms of irreparable harm. *See Black & Decker Inc. v. Robert Bosch Tool Corp.*, No. 04 C 7955, 2006 WL 3446144, at *4 (N.D. Ill. Nov. 29, 2006) ("Loss of market share is a key consideration in determining whether a plaintiff has suffered irreparable harm."); *see also Cipla Ltd. v. Amgen Inc.*, 386 F. Supp. 3d 386, 405–06 (D. Del.), aff'd sub nom. *Cipla Ltd. v. Amgen Inc*, 778 F. App'x 135 (3d Cir. 2019) (illustrating that irreparable harm can include long-term loss of market share, price erosion and harm to goodwill). Moreover, customers viewing Plaintiffs' products as unavailable or under scrutiny may associate this disruption with defects or violations, leading to diminished trust and harm to Plaintiffs' goodwill. Courts have repeatedly held that

damage to reputation and goodwill constitutes irreparable harm. See *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1154 (Fed. Cir. 2011).

Additionally, the Holiday shopping season is imminent.  This end-of-the-year holiday season is of paramount importance to sellers like Plaintiff.  Defendant has actively dodged service and delayed these proceedings, all while reaping the benefit of reduced competition due to here unilateral tortious interference.  Without the ability to sell during the holidays, Plaintiff will suffer immediate and irreparable injury, loss, or damage.  Accordingly, issuance of a TRO is appropriate to ensure Plaintiff has access to the market during this time and consumers have the benefit of legitimate competition.

**D.    Granting The Temporary Restraining Order Will Not Result In Even Greater Harm To The Defendant**

In the present case, the balance of equities favors the issuance of a temporary restraining order. In considering the harm the Defendant might suffer from the granting of the injunctive relief, "the district court must undertake to balance the hardships to the respective parties. The court must ensure that the issuance of an injunction would not harm the [Defendant] more than a denial would harm the [Plaintiff]." *Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc*., 143 F.3d 800, 805 (3d Cir. 1998). Here, Plaintiffs established a high likelihood of success on the merits; therefore, the balance of harm does not need to weigh heavily in their favor.  However, the balance of harm does weigh heavily in Plaintiffs' favor.

Here, Plaintiffs have made a strong showing of a likelihood of success on the merits, particularly by demonstrating that Plaintiffs' products do not infringe the '789 patent. Plaintiffs also established that they face immediate and irreparable harm - including the loss of market share, reputational damage, and significant disruption to their business - if the requested injunctive relief is not granted. These harms are direct, imminent, and cannot be remedied by monetary relief.

9

In contrast, any injury that Defendant might suffer from entry of a temporary restraining order is negligible and self-inflicted. Any harm claimed by Defendant arises solely from its own bad-faith conduct, including threats to exploit Amazon's enforcement mechanisms by wrongfully asserting patent rights while avoiding judicial resolution of its claims. Defendant's attempts to stifle competition through unfair tactics should not be considered when weighing the hardships.

**E.      The Public Interest Favors Granting Temporary Injunctive Relief.**

The public is harmed if Plaintiffs' motion for a TRO is not granted because the failure to stop Defendant's abuse deprives the public of competition. Since Defendant filed complaints on Amazon and other third-party platforms, the public - specifically customers - are harmed, as they will be unknowingly deprived of access to a competitive marketplace. The law has long recognized that the public is the ultimate beneficiary of a competitive marketplace. *See Atl. Richfield Co. v. Tribbitt*, 399 A.2d 535, 548 (Del. Ch. 1977) (illustrating the adverse effects of reduced competition on public welfare). Indeed, access to the free market is what led the Supreme Court to condemn practices that would limit the public's access to unpatented articles (like those here). *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 452 (2015)(An unpatented article is "in the public domain and may be made and sold by whoever chooses to do so…Allowing even a single company to restrict its use…would deprive the consuming public of the advantage to be derived from free exploitation of the discovery.") cleaned up.

Even if Defendant was to somehow establish infringement, it can seek monetary damages that will fully and completely compensate for any infringement. However, if the Court does not grant Plaintiffs' TRO, the consuming public will be forced to experience less opportunity and less options in the marketplace. They can never go back and achieve the benefits of open competition once the Court determines as a matter of law that Plaintiffs do not infringe. Thus, the consuming public will be irreparably harmed if the Court does not enter the TRO.

## IV. No Bond For The TRO Or Preliminary Injunction

Here, the TRO seeks nothing more than to maintain the traditional, natural state of free and open competition where both Plaintiffs and Defendant can sell on on-line marketplaces. It prevents the Defendant from profiting through abusing Amazon's intellectual property enforcement system and wrongfully asserting patent rights. For the reasons stated above, Defendant will suffer no damage from the TRO since Plaintiff does not infringe on the '789 patent. Hence, there is no reason for a bond.

## V. Conclusion

For the foregoing reasons, a Temporary Restraining Order is necessary and appropriate because Plaintiffs have a strong likelihood of prevailing on their claims and would suffer irreparable harm in lost profits, lost customers, damage to their Amazon link status, lost reputation, and lost goodwill should the interim relief be denied. Defendant, on the other hand, will not be harmed by the issuance of the requested temporary restraining order, and this relief will best serve the public interest by ensuring their access to the competitive market, and preventing Defendant from abusing the Amazon IP enforcement mechanism, or other similar dispute resolution mechanisms on other marketplaces, through wrongfully asserting patent rights. Accordingly, Plaintiffs respectfully request that this Court grant the TRO in its entirety.

Dated: November 20, 2025                                        Respectfully submitted,

/s *Dennis J. Drasco*                                               /s *Matthew De Preter* (*pro hac vice pending*)
LUM, DRASCO & POSITAN LLC                   ARONBERG GOLDGEHN DAVIS & GARMISA
103 Eisenhower Parkway, Suite 401              225 W. Washington St. Suite 2800
Roseland, New Jersey 07068                          Chicago, IL 60606
973.228.6770                                                  312.755.3139
ddrasco@lumlaw.com                                    cdepreter@agdglaw.com
                                    ***Attorneys for Plaintiff***

11

# Exhibit 1

US011930789B2

## (12) United States Patent
Lofranco

(10) Patent No.: **US 11,930,789 B2**
(45) Date of Patent: **Mar. 19, 2024**

(54) **PET TOY**

(71) Applicant: **Debra Lofranco**, Galloway, NJ (US)

(72) Inventor: **Debra Lofranco**, Galloway, NJ (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 122 days.

(21) Appl. No.: **17/420,351**

(22) PCT Filed: **Dec. 31, 2019**

(86) PCT No.: **PCT/US2019/069087**
§ 371 (c)(1),
(2) Date: **Jul. 1, 2021**

(87) PCT Pub. No.: **WO2020/142502**
PCT Pub. Date: **Jul. 9, 2020**

(65) **Prior Publication Data**
US 2022/0053734 A1      Feb. 24, 2022

### Related U.S. Application Data

(60) Provisional application No. 62/910,144, filed on Oct. 3, 2019, provisional application No. 62/787,624, filed on Jan. 2, 2019.

(51) **Int. Cl.**
**A01K 15/02** (2006.01)

(52) **U.S. Cl.**
CPC .................................. **A01K 15/026** (2013.01)

(58) **Field of Classification Search**
CPC ... A01K 15/026; A01K 15/024; A01K 15/025
See application file for complete search history.

(56) **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 7,011,043 B2 | 3/2006 | Diep | |
| 7,565,884 B2 | 7/2009 | Lamstein | |
| 8,561,575 B2 | 10/2013 | Ruffin | |
| 8,578,890 B1 * | 11/2013 | Haaf | A01K 15/024 119/706 |
| 8,997,695 B2 | 4/2015 | Riding | |
| 10,206,373 B1 | 2/2019 | Fincher | |
| 10,244,735 B2 | 4/2019 | Wolfe, Jr. | |
| 10,477,838 B2 | 11/2019 | Dertsakyan | |
| 10,485,220 B2 | 11/2019 | Valle | |
| 2004/0194731 A1 | 10/2004 | Lineberry | |
| 2007/0295282 A1 * | 12/2007 | Lamstein | A01K 15/024 119/706 |
| 2008/0149041 A1 * | 6/2008 | Lamstein | A01K 15/024 119/706 |
| 2010/0050953 A1 * | 3/2010 | Fails, Jr. | A01K 15/024 119/706 |
| 2010/0199921 A1 * | 8/2010 | Haaf | A01K 5/0114 119/702 |
| 2011/0079183 A1 * | 4/2011 | Krotts | A01K 15/025 119/711 |
| 2011/0253060 A1 * | 10/2011 | Schotthoefer | A01K 15/024 119/706 |

(Continued)

#### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| WO | 2012075346 A2 | 6/2012 |
| WO | 2018096524 A1 | 5/2018 |

*Primary Examiner* — Trinh T Nguyen
(74) *Attorney, Agent, or Firm* — Maschoff Brennan

(57) **ABSTRACT**

A pet toy includes surfaces for adhering abrasive material for dulling a pet's claws as the pet plays with the toy, as well as a cavity for receiving pet treats for encouraging play.

**20 Claims, 2 Drawing Sheets**



**US 11,930,789 B2**

Page 2

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2012/0085294 A1* | 4/2012 | Christianson ........ | A01K 15/025 |
| | | | 119/707 |
| 2012/0090552 A1* | 4/2012 | Haaf .................... | A01K 15/024 |
| | | | 119/706 |
| 2012/0090553 A1* | 4/2012 | Haaf .................... | A01K 15/024 |
| | | | 119/706 |
| 2012/0192803 A1* | 8/2012 | Haaf .................... | A01K 15/025 |
| | | | 119/621 |
| 2012/0279458 A1* | 11/2012 | Haaf .................... | A01K 15/024 |
| | | | 119/706 |
| 2015/0257366 A1 | 9/2015 | Gick | |
| 2016/0255812 A1 | 8/2016 | Wolfe, Jr. | |

* cited by examiner



Fig. 1

Fig. 2

Fig. 3

Fig. 4

Fig. 5



Fig. 6

Fig. 7

Fig. 8

US 11,930,789 B2

**1**

## PET TOY

### BACKGROUND OF THE INVENTION

#### 1. Field of the Invention

The present invention relates to devices for caring for pet animals.

#### 2. Brief Summary of the Prior Art

Pet toys of various types are well known in the art. Some such toys permit animal foodstuffs such as disclosed in U.S. Pat. Nos. 10,485,220 and 10,244,735 to be retained within the toy and to provide amusement for the animal in the interest of avoiding boredom and the destructive behavior which may sometimes accompany pet boredom. Other such toys are designed to aid with providing good care for pet animals. For example, U.S. Pat. No. 10,477,838 discloses a pet toy having cavities for engaging an animal's teeth with scrubbing elements with the goal of improving the animal's dental hygiene, while U.S. Pat. No. 10,206,373 discloses a double-ended pet toy adapted to clean a pet's teeth. U.S. Pat. Nos. 8,561,575 and 7,011,043 disclose apparatus for dulling an animal's claws using abrasive surfaces. U.S. Pat. No. 7,565,884 discloses a cat scratcher system for providing replaceable scatchable materials such as corrugated cardboard.

### SUMMARY OF THE INVENTION

The present invention is a pet toy comprising a body having an upper face, a lower face, a top side, a bottom side, a left side, and a right side. At least one of the upper face and the lower face has a pad surface for adhering an abrasive material. Preferably, the body has an internal central cavity. Preferably, at least one aperture is formed in the body for accessing the internal central cavity. Preferably, at least one handle extends from the group consisting of the top side, the bottom side, the left side, and the right side of the body for grasping the pet toy. Preferably, the at least one aperture is formed in the group consisting of the top side, the bottom side, the left side, and the right side of the body. Preferably, the at least one handle and the at least one aperture are formed in the same side. Preferably, the at least one handle is arc-shaped. Preferably, the at least one handle is arc-shaped and extends from the side on either side of the aperture. In one presently preferred embodiment, the body has a pair of arc-shaped handles extending from opposite sides of the body, and at least one aperture is formed in one of the opposite sides. Preferably, the body has an aperture formed in each of the opposite sides. Preferably, the pet toy further includes at least one guard projecting from the at least one face having a pad surface, with the at least one guard projecting from the at least one face proximate the pad surface. Preferably, the upper surface of the pet toy has an upper pad surface and the lower face has a lower pad surface. Preferably, the pet toy further comprises at least one cavity for receiving a scent material. Preferably, the at least one cavity is formed in at least one of the upper surface and the lower surface. Preferably, the pet toy further comprises an abrasive material adhered to the pad surface.

### BRIEF DESCRIPTION OF THE FIGURES

FIG. **1** is a perspective view of a first embodiment of a pet toy according to the present invention.

**2**

FIG. **2** is a front elevational view of the pet toy of FIG. **1**.

FIG. **3** is a side elevational view of the pet toy of FIG. **1**.

FIG. **4** is a front elevational sectional view of the pet toy of FIG. **1** taken along the line **4-4** of FIG. **3**.

FIG. **5** is a plan sectional view of the pet toy of FIG. **1** taken along the line **5-5** of FIG. **3**.

FIG. **6** is an exploded perspective view of a second embodiment of a pet toy according to the present invention.

FIG. **7** is a top plan view of the pet toy of FIG. **6**.

FIG. **8** is a top plan view of a third embodiment of a pet toy according to the present invention.

### DETAILED DESCRIPTION

The present invention provides a multi-purpose health and wellness toy with two key benefits: interactivity and healthy grooming. The pet toy of the present invention offers physical and mental entertainment with pet-centric specifications that are safe and healthy for pets. The pet toy of the present invention provides challenges for pets to use their natural instincts, and in particular, their sense of smell. Pets will have a sense of accomplishment, having engaged in an activity that is both fun and rewarding while they trim and file their own claws. The pet toy of the present invention mentally stimulates a pet's natural sense, and offers enrichment by helping satisfying instinctual needs. Further, the pet toy of the present invention supports interactive "play" with unpredictable bounces for games of fetch or tug-of-war, as well as advantageously reducing destructive chewing and fights boredom. Further, the pet toy of the present invention can be used for providing pet treats and snacks.

Referring now to the Figures in which like reference numerals represent like elements in each of the several views, there is shown in FIG. **1** a perspective view of a first embodiment of a pet toy **10** according to the present invention, as shown from above. The pet toy **10** has a generally rectangular body **20** having a generally flat upper face **22** and a generally flat lower face **24** (FIG. **3**) parallel to the upper face **22**. Preferably, the pet toy **10** is sized to be appropriate to the size of the pet for which the pet toy **10** is intended, such that, for example, a pet toy **10** intended for a larger breed dog is substantially larger overall than a pet toy **10** intended for a miniature breed dog. The body **20** further includes a top side **26**, a bottom side **28**, as well as a left side **30** and a right side **32**. A generally flat upper pad surface **40** is formed on and slightly recessed below the upper face **22** of the pet toy **10**, and a corresponding generally flat lower pad surface **42** is formed on and slightly recessed below the lower face **24**. The pad surfaces **40**, **42** are adapted to receive an abrasive material, such as a sheet of sandpaper, emery paper, or a sandstone material, for contacting and dulling a pet's claws or nails when the pet plays with the toy. The pad surfaces **40**, **42** may be provided with an adhesive coating for adhering the abrasive material, or an adhesive material, such as Velcro, for the same purpose. Alternatively, the abrasive material itself may be adherent, as by being coated with an adhesive material. Each abrasive sheet is preferably provided with a fastener surface on the underside of the abrasive sheet order to releasably adhere the abrasive sheet to the pad surface **40**, **42** so that the abrasive sheets can be replaced as necessary. Both the upper face **22** and the lower face **24** are provided with guard projections **50** which extend slightly above the respective upper pad surface **40** and lower pad surface **42** to prevent the abrasive material adhering to the pad surfaces **40**, **42** from contacting and marring a flat surface on which the pet toy **10** may be placed, such as a wooden floor. The pet toy **10** also includes a plurality of

US 11,930,789 B2

3

generally circular cavities or scent receptacles **60** formed at the corners of the upper face **22** and the lower face **24**, for receiving scent materials for encouraging pets to play with the pet toy **10**.

As can be seen in the front elevational sectional view of FIG. **4**, the body **20** includes a central cavity **70** which is accessible through a generally round first aperture **72** formed in the top side **26** of the body **20** and a corresponding generally round second aperture **74** formed in the bottom side of the body **20**, with the first aperture **72** and second aperture **74** lying on a common axis. Animal food such as pet treats can be received within the central cavity **70**. Preferably, such animal food is shaped so the food can be positioned such that the animal food extends at least partially through the first aperture **72** and/or the lower aperture **74**, to provide at least partial access to an animal seeking the animal food. Alternatively, or in addition, other toy elements (such as feathers or the like) can be placed in an aperture **72**, **74** to encourage play. Further, the apertures **72**, **74** may be plugged or closed to raise level of difficulty.

The pet toy **10** also includes a first arc-shaped handle **80** extending from the top side **26** of the body **20** and extending over the first aperture **72** and a second arc-shaped handle **82** extending from the bottom side **28** of the body **20** and extending over the second aperture **74**. Either handle **80**, **82** can be grasped by a pet owner while his or her pet attempts to pull the pet toy **10** away by tugging at the other handle **82**, **80**. Preferably, the pet toy **10** is formed from a sturdy, durable material, such as an elastic material such as a natural rubber, a thermoplastic elastomer or the like, such that the pet toy **10** resists destruction by rough play with the pet. Preferably, the pet toy **10** is formed from an FDA-approved chewable rubber material that is both safe and environmentally friendly.

A second embodiment of a pet toy **100** according to the present invention is depicted in the exploded perspective view of FIG. **6**. This embodiment of the pet toy **100** is specifically adapted for use with cats. The pet toy **100** includes a plurality of layers **120**, **130**, **140** arranged symmetrically on either side of a generally flat base layer **110**. The base layer **110** is preferably formed from a flexible, durable material, and preferably takes the form of a stylized fish, and has an upper face and a lower face. The base layer **110** includes a central portion **112** from which preferably extends a plurality of simulated appendages **114**, **116**. When the pet toy **100** is to be used with cats, one or more of the appendages **114**, **116** may take the form of a pocket in which catnip can be inserted to motivate play. On either side of the base layer **110** an interlayer or pad **120** preferably formed from a durable, flexible material, such as cotton fabric, is provided. Each interlayer **120** is adhered to a side of the base layer **110** by suitable means, such as by a fabric glue or the like. Preferably, the base layer is adhered to one or each of the interlayers **120** in such a way as to form pockets or central internal cavities **122** in which pet treats can be inserted through apertures formed between the base layer **110** and the interlayer **120**. On the exterior side of each of the interlayers **120** an abrasive sheet **130** is provided, preferably, in the case of a pet toy **100** intended for cats, with a fine grain abrasive to aid in trimming the cat's claws as the cat plays with the pet toy **100**. Each abrasive sheet **130** is preferably adhered to the respective interlayer **120** with a suitable adhesive material. Alternatively, a fastener surface, such as hook-like fasteners such as Velcro, can be provided on the interlayer **120**, and the abrasive sheets **130** can be provided with a surface, such as a fabric, adherent to the fastener surface. In another aspect, the abrasive sheets **130**

4

can be permanently adhered to the interlayers **120**, and the abrasive sheets **120** themselves can be covered with a layer of netting material **140** in order of catching a cat's claws in the interest of motivating further play activity with the pet toy **100**. Preferably, the aperture **102** is formed at one end of the pet toy **100** so that a cord or string **150** can be attached, thus forming a handle for the pet toy **100**, so that the pet owner can engage his or her pet by dangling the pet toy **100**. Preferably, a feather **160** or similar attractive object is attached to the pet toy **100** at one end of the pet toy **100**, as best seen in the top plan view of FIG. **7**. In a presently preferred embodiment, the pet toy **100** is formed from fabric materials, other than the abrasive sheets **120**, and the various component are adhered together, such a with a non-toxic glue, and/or by sewing the layers together.

A third embodiment of a pet toy **200** according to the present invention is depicted in the top plan view of FIG. **8**. While this embodiment is substantially similar to the first embodiment, the arc-shaped handles **280**, **284**, each includes plurality of grooves **285**, preferably oriented generally perpendicular to the central axes of the handles **280**, **284**, and spaced apart and with a depth to permit canine teeth to contact the interior of the grooves **285** to encourage cleaning of the teeth by contacting foreign matter and the like on the teeth, such as, for example, canine molars. Alternatively, a plurality of grooves can be provided for the same purpose elsewhere on the pet toy, such as on the body of the pet toy (not shown).

Various modifications can be made in the details of the various embodiments of the apparatus of the present invention, all within the scope and spirit of the invention as defined by the appended claims.

The invention claimed is:

1. A pet toy comprising:
a body having an upper face, a lower face, a top side, a bottom side, a left side, and a right side;
at least one of the upper face and the lower face having:
a pad surface for adhering an abrasive material; and
one or more substantially circular scent cavities configured to receive a scent material;
the body having an internal central cavity; and
at least one aperture formed in the body for accessing the internal central cavity;
at least one handle, made of an elastic material, extending from the group consisting of the top side, the bottom side, the left side, and the right side of the body for grasping the pet toy, wherein the handle includes a plurality of grooves sized and positioned to be contacted by pet teeth and configured to clean the pet teeth.

2. A pet toy according to claim **1**, wherein the at least one aperture is formed in the group consisting of the top side, the bottom side, the left side, and the right side of the body.

3. A pet toy according to claim **2**, wherein the at least one handle and the at least one aperture are formed in the same side.

4. A pet toy according to claim **1**, wherein the handle is arc-shaped.

5. A pet toy according to claim **3**, wherein the at least one handle is arc-shaped and extends from the side on either side of the aperture.

6. A pet toy according to claim **1**, the body having a pair of arc-shaped handles extending from opposite sides of the body, and at least one aperture formed in one of the opposite sides.

7. A pet toy according to claim **6**, the body having an aperture formed in each of the opposite sides.

US 11,930,789 B2

5

**8**. A pet toy according to claim **1**, further including at least one guard projecting from the at least one face having a pad surface, the at least one guard projecting from the at least one face proximate the pad surface.

**9**. A pet toy according to claim **1**, wherein the upper face has an upper pad surface and the lower face has a lower pad surface.

**10**. A pet toy according to claim **1**, wherein the one or more substantially circular scent cavities are formed in at least one of the upper face and the lower face.

**11**. A pet toy according to claim **1**, further comprising an abrasive material adhered to the pad surface.

**12**. A pet toy according to claim **1**, wherein the handle is a string or cord.

**13**. A pet toy according to claim **1**, further including catnip secured within the body.

**14**. A pet toy according to claim **11**, further including netting material covering the abrasive material.

**15**. A pet toy according to claim **1**, further including a feather adhered to the body.

**16**. The pet toy according to claim **1**, wherein the elastic material includes a thermoplastic material or a natural rubber.

6

**17**. The pet toy according to claim **1**, wherein the one or more substantially circular scent cavities are located in each corner of at least one of the upper face and the lower face.

**18**. A pet toy comprising:

a body having an upper face, a lower face, a top side, a bottom side, a left side, and a right side;

at least one of the upper face and the lower face including:

a pad surface for adhering an abrasive material; and

a guard projection extending in a perpendicular direction with respect to the pad surface and configured to prevent the abrasive material from contacting a flat surface upon which the pet toy is placed;

the body having an internal central cavity; and

at least one aperture formed in the body for accessing the internal central cavity;

at least one handle extending from the group consisting of the top side, the bottom side, the left side, and the right side of the body for grasping the pet toy.

**19**. A pet toy according to claim **17**, further comprising at least one cavity for receiving a scent material.

**20**. A pet toy according to claim **17**, further including a plurality of grooves sized and positioned to be contacted by pet teeth for cleaning the pet teeth.

\*    \*    \*    \*    \*