**IN THE UNITED STATES DISTRICT COURT**
**FOR NEW JERSEY**

Shanghai Qianzhuo Network Technology Co., Ltd. a.k.a. FutureDiamond and Shanghai Lanpin Haizhuo Technology Co., Ltd. a.k.a. LovIntry,

Plaintiffs,

v.

Debra Lo Franco,

Defendant

Case No. 25-cv-15740-CCC

Judge Claire C. Cecchi

# PLAINTIFF'S OPENING *MARKMAN* CLAIM CONSTRUCTION BRIEF REGARDING U.S. PATENT NO. 11,930,789

# Table of Contents

I. Introduction .................................................. 1

II. The Background Facts .................................................. 1

III. The Law of Claim Construction .................................................. 7

A. The Effective Filing Date is the Relevant Date for Interpreting Claims ................ 7

B. The Role of Intrinsic and Extrinsic Evidence .................................................. 7

C. The Prosecution History Limits the Scope of Claim .................................................. 9

D. Plain and Ordinary Meaning .................................................. 9

IV. Construction of the Terms .................................................. 9

V. Conclusion .................................................. 13

**Table of Authorities**

**Cases**

*Bell Commc'ns Rsch., Inc. v. Vitalink Commc'ns Corp.*,
55 F.3d 615 (Fed. Cir. 1995) ... 8

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002) ... 12

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*,
460 F.3d 1349 (Fed. Cir.2006) ... 9

*Deering Precision Instruments, LLC v. Vector Distrib. Sys., Inc.*,
347 F.3d 1314 (Fed. Cir.2003) ... 9

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
344 F.3d 1359 (Fed. Cir.2003) ... 9

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
535 U.S. 722 (2002) ... 9

Geospatial Tech. Assocs., LLC v. United States,
No. 16-346C, 2021 WL 2325007 (Fed. Cl. Apr. 8, 2021) ... 7

*In re Gardiner*,
171 F.2d 313 (Cust. & Pat.App. 1948) ... 12

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
381 F.3d 1111 (Fed. Cir. 2004) ... 8

*Interactive Gift Express, Inc. v. Compuserve, Inc.*,
256 F.3d 1323 (Fed. Cir.2001) ... 8

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004) ... 12

*Markman v. Westview, Instrs., Inc.*,
52 F.3d 967 (Fed. Cir.1995) (*en banc*), aff'd, 517 U.S. 370 (1996) ... 7, 8

*Pats. v. Tech*, No. IPR2022-01182,
2024 WL 146117 (P.T.A.B. Jan. 12, 2024) ... 8

*Phillips v. AWH Corporation,*
*415 F.3d 1303 (Fed. Cir.2005)* ... 7, 9

*Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*,
315 F.3d 1335 (Fed. Cir. 2003) ... 9

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
522 F.3d 1299 (Fed. Cir.2008)........................................................................................ 7

*Roberts v. Ryer,*
91 U.S. 150 (1875)............................................................................................................. 12

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015).......................................................................................... 9

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir.1996)................................................................................... 7, 8, 9

*Wang Lab., Inc. v. Mitsubishi Elecs.,*
103 F.3d 1571 (Fed. Cir.1997)........................................................................................... 9

## I. Introduction

The technology of U.S. Patent No. 11,930,789 is straightforward. The invention is a scratching toy for a pet, such as a dog or cat. It is essentially a hollow container that a pet owner can place treats inside, and the exterior has abrasive pads that the pet will scratch at to try and get the treats. To prevent the abrasive pads from damaging the pet owner's floor, the toy has perpendicular projections that extend from the surface of the abrasive pads and thereby prevent the abrasive material from contacting the surface if the abrasive side gets flipped face-down onto the floor.

The primary dispute is over the limitation "a guard projection extending in a perpendicular direction with respect to the pad surface and configured to prevent the abrasive material from contacting a flat surface upon which the pet toy is placed." The laws of claim construction and relevant evidence dictate that this limitation must be construed as being directed to a structure that intersects with, and extends from, the surface having the abrasive material at an angle of 90 degrees such that the structure prevents the abrasive material from contacting a flat surface when the pet toy is placed abrasive side down on the flat surface. While Defendant further requests construction of "abrasive material," that term is readily understandable and requires no further construction.

## II. The Background Facts

U.S. Patent No. 11,930,789 (the "'789 Patent") was filed on December 31, 2019. Ex. 1, face of the patent, #(22). It is directed to a "Pet Toy." *Id*. Title, #(54). Figure 1 is a perspective view; Figure 2 is a front elevation view; Figure 3 is a side view. *Id*. at 1:65-2:2.[1] The pet toy has a body 10 with an upper face 22 and lower face 24 that are generally parallel to one another. *Id*.

---

[1] Citations to the patent are in the form of Column:line.

2:32-39. The upper face includes a "pad surface" 40 while the opposite, lower face includes "pad surface" 42 (*Id*. 2:45-50):




An abrasive material is applied to each pad surface. *Id*. at 2:49-55.

Because both the upper side and the lower side have abrasive material, regardless of whether the product is placed upper side down or lower side down on a floor for a pet to play with, the abrasive material would be contacting the floor. This presents a problem in that the abrasive material would then scratch and mar the floor. The '789 Patent explains how its structure prevents this from happening.

It states that "both the upper face 22 and the lower face 24 are provided with guard projections 50 which extend slightly above the respective upper pad surface 40 and lower pad surface 42 to prevent the abrasive material adhering to the pad surfaces 40, 42 from contacting and marring a flat surface on which the pet toy 10 may be placed, such as a wooden floor." Ex. 1, at 2:61-67.



Fig. 1



Fig. 3

The specification never discusses the perpendicular nature of the guard projections. However, during the prosecution of the '789 Patent application, the USPTO issued an office action rejecting all of the then pending claims. Ex. 2, FD_000258-267. At that time, there was only one independent claim which read as follows:

> 1. A pet toy comprising:
> a body having an upper face, a lower face, a top side, a bottom side, a left side, and a right side;
> at least one of the upper face and lower face having a pad surface for adhering an abrasive material;
> the body having an internal central cavity; and
> at least one aperture formed in the body for accessing the internal central cavity; at least one handle extending from the group consisting of the top side, the bottom side, the left side, and the right side of the body for grasping the pet toy.

*Id*. at FD000285. The original claims also included dependent claim 8 which read:

> 8. A pet toy according to claim 1, further including at least one guard projection from the at least one face having a pad surface, the at least one guard projection from the at least one face proximate to the pad surface.

*Id.* at FD_000285. In original claim 8, the "guard projection" was only identified as being "from the at least one face having a pad surface" and included no reference to its direction or orientation with respect to the pad surface.

The USPTO rejected claims 1 and 8 as being anticipated by *Lamstein* (Ex. 3, FD_00926-FD_000934). Ex. 1, FD_000262-263. Specifically with respect to claim 8, the USPTO found that *Lamstein* disclosed at least one guard (11, 13) projecting from at least one face having a pad surface:



*Id.*; Ex. 3, FD_000926

In response, Defendant amended claim 1 and added new independent claim 21 which read as follows:

> 21. (New) A pet toy comprising:
> a body having an upper face, a lower face, a top side, a bottom side, a left side, and a right side;
> at least one of the upper face and the lower face including:
> a pad surface for adhering an abrasive material; and
> a guard projection extending in a perpendicular direction with respect to the pad surface and configured to prevent the abrasive material from contacting a flat surface upon which the pet toy is placed;
> the body having an internal central cavity; and
> at least one aperture formed in the body for accessing the internal central cavity;
> at least one handle extending from the group consisting of the top side, the bottom side, the left and the right side of the body for grasping the pet toy.

Ex. 2, at FD_000249. In connection with new claim 21, Defendant argued that the product in *Lamstein* had long edges 11 and 13 that "appear to be extending outward on the same plane as the flat surface" and that they would not prevent the central surface of the toy from contacting another flat surface. *Id.* at FD_000255. Defendant argued that the claim amendment of "a guard projection extending in a perpendicular direction with respect to the pad surface and configured to prevent the abrasive material from contacting a flat surface upon which the pet toy is placed" was therefore not taught by *Lamstein*. *Id.* Upon entry of the amendment and in view of the Defendant's arguments, the claims were allowed, and new claim 21 became claim 18, which is at issue in this case.

However, the addition of the "perpendicular" guard did not arise from the text of the specification. Indeed, there is no recitation of any "perpendicular guard projection" anywhere in the text of the specification. The only disclosure of such a perpendicular guard projection (to the extent it is disclosed at all and not new matter) is the image of Figure 3 and element 50 which meets the "pad surface."




Despite the absence of any discussion of the guard projection being perpendicular in the patent, at the time that the patent was filed in 2019, the term "perpendicular" was generally

understood. In fact, specifically with respect to the definition of perpendicular, geometry books from before the patent was filed consistently and invariably define perpendicular as two lines intersecting at a right angle (i.e., intersecting at 90 degrees). *See, for example*, Ex. 4: Geometry for Dummies, ©2016, FD_001065-FD_001072 ("Lines, segments, or rays that intersect at right angles (90 ° angles) are perpendicular"); Prentice Hall Geometry, ©1993, FD_001077-FD_001083 ("Perpendicular lines: two lines that intersect to form right angles;" "Two lines are perpendicular if and only if they intersect to form a right angle"); Schaum's Outlines Geometry, ©2013, FD_001088-FD_001091 ("Perpendiculars are lines or rays or segments that meet at right angles"); Master Math: Geometry, ©2005, FD_001092-FD_001096 ("Perpendicular lines are defined as follows: Two lines are perpendicular if and only if they form a right angle"); A Complete Idiot's Guide to Geometry, ©2004, FD_001102-FD_001107 ("Solid Facts – Perpendicular lines are two lines that intersect to form one right angle"); Geometry the Easy Way, ©1990, FD_001112-FD_001116 ("Definition of Perpendicular Lines – Perpendicular lines are lines which intersect to form right angles.").

In graphical form, the concept can easily be shown as follows:




Schaum's Outlines Geometry, ©2013, at FD_001091.

These references provide consistent and reliable evidence of the historical understanding of what perpendicular lines are. Even more to the point, however, is Big Ideas Math Geometry, which was published in 2019, the same year the '789 Patent was filed. Ex. 5. That reference is

entirely consistent with the prior publications. It states "if two lines intersect to form a right angle, then they are perpendicular lines" and provides a useful diagram:




*See* Ex. 5 at FD_001117-FD_001120.

## III. The Law of Claim Construction

Claims are construed as a matter of law with the purpose of "determining the meaning and scope of the patent claims asserted." *Markman v. Westview, Instrs., Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), aff'd, 517 U.S. 370 (1996). The words of utility patent claims define the scope of the invention. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

### A. The Effective Filing Date is the Relevant Date for Interpreting Claims

Claims are construed as they would have been understood by "a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*). The date on the face of the patent is presumed to be the effective filing date. *Geospatial Tech. Assocs., LLC v. United States*, No. 16-346C, 2021 WL 2325007, at *15 (Fed. Cl. Apr. 8, 2021) (citing *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008)). It is the patent owner's burden to overcome the presumption by "com[ing] forward with evidence to prove entitlement to claim priority to an earlier filing date." *PowerOasis*, 522 F.3d at 1306.

### B. The Role of Intrinsic and Extrinsic Evidence

Claim construction "must begin and remain centered on the language of the claims

themselves, for it is that language that the patentee chose." *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). It is well-settled that, in interpreting an asserted claim, courts must first look to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history. *Vitronics*, 90 F.3d at 1582; *citing Markman*, 52 F.3d at 979.

Courts first look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention. *Bell Commc'ns Rsch., Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 619 (Fed. Cir. 1995). Next, the court looks to the specification. While words in a claim are generally given their ordinary and customary meaning, patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history. *Vitronics*, 90 F.3d at 1582. As the Court in *Vitronics* held: "The specification acts as a dictionary when it expressly defends terms used in the claims or when it defines terms by implication….Thus, the specification is always highly relevant to the claim construction analysis." *Id.*

"A court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004). "The inquiry into the meaning that claim terms would have to a person of skill in the art at the time of the invention is an objective one. This being the case, a court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean. Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* citing cases. Accordingly, extrinsic evidence that post-dates the filing date of a patent is accorded little to no weight. *Pats. v. Tech*, No. IPR2022-01182, 2024 WL 146117, at *5 (P.T.A.B. Jan. 12, 2024) (Rejecting reliance on an internet dictionary definition published years after the patent in question). This is because patent claims are limited to the meaning of the terms as understood at the time the patent was filed and cannot be expanded in

scope if those terms take on broader or alternative meaning in the future. *Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1345 (Fed. Cir. 2003).

### C. The Prosecution History Limits the Scope of Claim

"The court may also consider the prosecution history of the patent, if in evidence." *Vitronics*, 90 F.3d at 1582. Prosecution history estoppel precludes a patentee from recapturing subject matter excluded from the claim's scope through a narrowing amendment made during prosecution. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002). "[P]rosecution history estoppel can occur . . . either (1) by making a narrowing amendment to the claim ('amendment-based estoppel') or (2) by surrendering claim scope through argument to the patent examiner ('argument-based estoppel')." *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006) (citing *Deering Precision Instruments, LLC v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003)). "A patentee who narrows a claim as a condition for obtaining a patent disavows his claim to the broader subject matter, whether the amendment was made to avoid the prior art or to comply with § 112." *Festo Corp.*, 535 U.S. at 736. "Arguments and amendments made to secure allowance of a claim, especially those distinguishing prior art, presumably give rise to prosecution history estoppel." *Wang Lab., Inc. v. Mitsubishi Elecs.,* 103 F.3d 1571, 1578 (Fed. Cir. 1997) (citation omitted). The amendment "surrenders the entire territory between the original claim and the amended claim . . . ." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1365 (Fed. Cir. 2003).

### D. Plain and Ordinary Meaning

Not all terms in a patent require construction. The words used in a claim are generally given their ordinary and customary meaning. *Phillips*, 415 F.3d at 1312-1313. Claim terms that are generally understood and used in common parlance and which have no special meaning in the art do not require construction. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015). This is true even if there is a dispute over the meaning of a particular term. Id.

## IV. Construction of the Terms

The first term at issue pertains to the guard projection that is perpendicular to the pad surface. Specifically, the following:

| Claim term | Proper Construction |
|---|---|
| "a guard projection extending in a perpendicular direction with respect to the pad surface and configured to prevent the abrasive material from contacting a flat surface upon which the pet toy is placed" | A structure that intersects with, and extends from, the surface having the abrasive material at an angle of 90 degrees such that the structure prevents the abrasive material from contacting a flat surface when the pet toy is placed abrasive side down on the flat surface. |

The overall phrase provides needed structural relationships between the guard projection, the abrasive material, the pad, and how the device interacts with a surface. Plaintiff's construction takes all of those considerations into account and explains the technical "perpendicular" term and its relationship to the components of the claim. This should not be controversial. As discussed above, the specification never discusses the perpendicular nature of the guard projection. The guard projections are only shown in the figures, and the specification makes clear that it is the guard projection on the surface that has the abrasive material that prevents that abrasive material from making contact with another surface when that abrasive material is placed face down. That is only logical because if the abrasive material were placed face up, on the floor for example, then it would never come into contact with the floor and neither would the projections. That is, in such an example, it is the orientation of the abrasive material that dictates it will not contact the floor, rather than any particular structure preventing it from contacting the floor. It is only when the abrasive material is oriented face-down at the floor that a structure, such as a perpendicular guard projection, could prevent the abrasive material from contacting the floor.

The prosecution history makes clear that the projection must be oriented perpendicularly to the pad surface having the abrasive material. This is precisely how the Defendant overcame the prior art. *See* Ex. 2, at FD_000255, amending the claims and arguing over *Lamstein* based on the perpendicular orientation of the projection. This also comports with the only disclosure of the guard projections shown in the figures.

Because the specification does not discuss what "perpendicular" means, the only source of

guidance is extrinsic evidence. Here, that evidence is readily available in the form of geometry books published at the same time that the patent was filed and those published just before then as well. All of those references confirm that “perpendicular” means two lines intersecting at right angles (i.e., at 90°). Putting all of this together, the meaning of the claim term becomes clear:

In the context of the patent, “a guard projection extending in a perpendicular direction with respect to the pad surface and configured to prevent the abrasive material from contacting a flat surface upon which the pet toy is placed” necessarily refers to “a structure that intersects with, and extends from, the surface having the abrasive material at an angle of 90 degrees such that the structure prevents the abrasive material from contacting a flat surface when the pet toy is placed abrasive side down on the flat surface.”

The second limitation at issue really should not even be a point of contention. Only Defendant asserts that it requires construction. It is as follows:

| Claim term | Proper Construction |
|---|---|
| Abrasive Material | No construction is necessary. The plain and ordinary meaning that an abrasive material is a material that is abrasive suffices. |

There is nothing out of the ordinary, confusing, or ambiguous about “abrasive material.” Among the limitations of the pet toy of claim 18 is the limitation that the pet toy comprises “a pad surface for adhering an abrasive material.” The specification does not ascribe any unique meaning to “abrasive material.” Rather, it simply sets forward a few examples of what might be acceptable. It states: “The pad surfaces **40**, **42** are adapted to receive an abrasive material, such as a sheet of sandpaper, emery paper, or a sandstone material, for contacting and dulling a pet's claws or nails when the pet plays with the toy.” Ex. 1, 2:49-52. This portion of the specification merely refers to possible examples and a use for which the invention may be put.

Regarding the “use for,” and specifically the toy being used for nails, that is not a requirement set forth anywhere in the claim, and it is not a limitation on the claim. A patent

"describing the use of an invention generally do not limit the claims because the patentability of apparatus or composition claims depends on the claimed structure, not on the use or purpose of that structure." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002); *See also In re Gardiner*, 171 F.2d 313, 315–16 (Cust. & Pat.App. 1948) ("It is trite to state that the patentability of apparatus claims must be shown in the structure claimed and not merely upon a use, function, or result thereof."). Indeed, "[t]he inventor of a machine is entitled to the benefit of all the uses to which it can be put, no matter whether he had conceived the idea of the use or not." *Roberts v. Ryer,* 91 U.S. 150, 157 (1875). Thus any "use" of the abrasive material is irrelevant.

Furthermore, it would be improper to import limitations from the specification. The Federal Circuit has cautioned: "[c]laims "must be read in view of the specification, of which they are a part," but "it is improper to read a limitation from the specification into the claims." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004). Here the examples in the specification do not and should not limit the claims. "Abrasive material" is readily understandable. The patentee did not require any particular qualifications (such as grit level or the required pressure to reduce a particular hardness of material by a prescribed amount in a particular time). All that is required of the claim is that the material be, in some fashion, abrasive. No further or particular construction is necessary.

## V. Conclusion

The technology at issue is simple straightforward. A basic understanding of simple geometry concepts in view of the arguments made by Defendant to secure the patent are all that is needed to understand the scope of the primary disputed term, and "abrasive" is simple enough on its own so as to not warrant a specific construction. Accordingly, this Cour should construe the claim terms as follows:

| Claim Term | Proper Construction |
|---|---|
| "a guard projection extending in a perpendicular direction with respect to the pad surface and configured to prevent the abrasive material from contacting a flat surface upon which the pet toy is placed" | A structure that intersects with, and extends from, the surface having the abrasive material at an angle of 90 degrees such that the structure prevents the abrasive material from contacting a flat surface when the pet toy is placed abrasive side down on the flat surface. |
| Abrasive Material | No construction is necessary. The plain and ordinary meaning that an abrasive material is a material that is abrasive suffices. |

Dated: November 5, 2026

Respectfully submitted,

*/s/ Rachel Ann Niedzwiadek*

Rachel Ann Niedzwiadek
**COMBS & TAYLOR LLP**
1025 Thomas Jefferson Street NW, Suite 400 W
Washington, DC 20007
Telephone: (202) 448-1008
rachelann.niedzwiadek@combstaylor.com

Matthew De Preter
**ARONBERG GOLDGEHN DAVIS & GARMISA**
225 W. Washington St., Suite 2800
Chicago, IL 60606
Telephone: (312) 755-3153
cdepreter@agdglaw.com

*Attorneys for Plaintiffs*