# EXHIBIT 2

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/420,351 | 07/01/2021 | Debra LOFRANCO | W4588.10010US03 | 7734 |

97149 7590 03/19/2024

Maschoff Brennan
1389 Center Drive, Ste. 300
Suite 300
Park City, UT 84098

| EXAMINER | |
|---|---|
| NGUYEN, TRINH T | |
| **ART UNIT** | **PAPER NUMBER** |
| 3644 | |
| **NOTIFICATION DATE** | **DELIVERY MODE** |
| 03/19/2024 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

bisraelsen@mabr.com
d@mabr.com

PTOL-90A (Rev. 04/07)

| APPLICATION NO. | ISSUE DATE | PATENT NO. |
|---|---|---|
| 17/420,351 | 19-Mar-2024 | 11930789 |

Maschoff Brennan
1389 Center Drive, Ste. 300
Park City, UT 84098

# EGRANT NOTIFICATION

Your electronic patent grant (eGrant) is now available, which can be accessed via Patent Center at https://patentcenter.uspto.gov

The electronic patent grant is the official patent grant under 35 U.S.C. 153. For more information, please visit https://www.uspto.gov/electronicgrants

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/420,351 | 03/19/2024 | 11930789 | W4588.10010US03 | 7734 |

97149 7590 02/28/2024

Maschoff Brennan
1389 Center Drive, Ste. 300
Suite 300
Park City, UT 84098

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above. The patent will issue electronically. The electronically issued patent is the official patent grant pursuant to 35 U.S.C. § 153. The patent may be accessed on or after the issue date through Patent Center at https://patentcenter.uspto.gov/. The patent will be available in both the public and the private sides of Patent Center. Further assistance in electronically accessing the patent, or about Patent Center, is available by calling the Patent Electronic Business Center at 1-888-217-9197.

The USPTO is implementing electronic patent issuance with a transition period, during which period the USPTO will mail a ceremonial paper copy of the electronic patent grant to the correspondence address of record. Additional copies of the patent (i.e., certified and presentation copies) may be ordered for a fee from the USPTO's Certified Copy Center at https://certifiedcopycenter.uspto.gov/index.html. The Certified Copy Center may be reached at (800)972-6382.

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 122 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Center (https://patentcenter.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Patents Stakeholder Experience (OPSE), Stakeholder Support Division (SSD) at (571)-272-4200.

INVENTOR(s) (Please see PATENT CENTER site https://patentcenter.uspto.gov for additional inventors):

Debra LOFRANCO, Galloway, NJ;

APPLICANT(s) (Please see PATENT CENTER site https://patentcenter.uspto.gov for additional applicants):

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

# PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

By mail, send to: Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

By fax, send to: (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications. **Because electronic patent issuance may occur shortly after issue fee payment, any desired continuing application should preferably be filed prior to payment of this issue fee in order not to jeopardize copendency.**

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

97149 7590 11/13/2023

Maschoff Brennan
1389 Center Drive, Suite 300
Park City, UT 84098

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

| |
|---|
| (Typed or printed name) |
| (Signature) |
| (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/420,351 | 07/01/2021 | Debra LOFRANCO | W4588.10010US03 | 7734 |

TITLE OF INVENTION: PET TOY

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | MICRO | $240 | $0.00 | $0.00 | $240 | 02/13/2024 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| NGUYEN, TRINH T | 3644 | 119-709000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/AIA/122 or PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/AIA/47 or PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 Maschoff Brennan
2 ______
3 ______

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☑ Issue Fee ☐ Publication Fee (if required)

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☑ Electronic Payment via Patent Center or EFS-Web ☐ Enclosed check ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. ____________

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

☐ Applicant asserting small entity status. See 37 CFR 1.27

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

☐ Applicant changing to regular undiscounted fee status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature /R. Burns Israelsen/ Date February 8, 2024

Typed or printed name R. Burns Israelsen Registration No. 42685



PTOL-85 Part B (08-18) Approved for use through 01/31/2020 OMB 0651-0033 U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | |
|---|---|---|
| In re application of : | Debra LOFRANCO | |
| Application No.: | 17/420,351 | Art Unit 3644 |
| Filed: | 07/01/2021 | |
| Conf. No.: | 7734 | |
| For: | PET TOY | |
| Examiner: | TRINH T NGUYEN | |
| Customer No.: | 97149 | |
| Attorney Docket No.: | W4588.10010US03 | |

**COMMENTS ON STATEMENT OF REASONS FOR ALLOWANCE**

Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

Applicant acknowledges Examiner's statements of Reasons for Allowance of the above-referenced patent application and agrees that the claimed subject matter is patentable. However, Applicant takes no position regarding the Reasons for Allowance presented by the Examiner other than the positions Applicant may have previously taken during prosecution. Therefore, the Examiner's Reasons for Allowance should not be attributed to Applicant as an indication of the basis for Applicant's belief that the claims are patentable. Furthermore, Applicant respectfully asserts that there may also be additional reasons for patentability of the claimed subject matter not explicitly stated in this record and Applicant does not waive its rights to such arguments by not further addressing such reasons herein.

Dated this 8th day of February, 2024.

Respectfully submitted,

**/R. Burns Israelsen, Reg. No. 42685/**
Registration No. 42685
Attorney for Applicant
Customer No. 97149
Telephone No. (435) 252-1360

UNITED STATES PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC PAYMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **17/420,351** | **02/08/2024 12:33:14 PM Z ET** | **W4588.10010US03** |

## Title of Invention

PET TOY

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - U.S. National Stage under 35 USC 371 | PATENT # | - |
| CONFIRMATION # | 7734 | FILED BY | Sage Nelson |
| PATENT CENTER # | 64232889 | AUTHORIZED BY | Burns Israelsen |
| CUSTOMER # | 97149 | FILING DATE | 07/01/2021 |
| INTL. APPLICATION # | - | INTL. FILING DATE | - |
| CORRESPONDENCE ADDRESS | - | FIRST NAMED INVENTOR | Debra LOFRANCO |

## Payment Information

| PAYMENT METHOD | PAYMENT TRANSACTION ID | PAYMENT AUTHORIZED BY |
|---|---|---|
| **CARD / 1004** | **E202428C34506286** | **Sage Nelson** |

| FEE CODE | DESCRIPTION | ITEM PRICE($) | QUANTITY | ITEM TOTAL($) |
|---|---|---|---|---|
| 3501 | UTILITY ISSUE FEE | 240.00 | 1 | 240.00 |
| | | | **TOTAL AMOUNT:** | **$240.00** |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **17/420,351** | **02/08/2024 12:33:14 PM Z ET** | **W4588.10010US03** |

## Title of Invention

PET TOY

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - U.S. National Stage under 35 USC 371 | PATENT # | - |
| CONFIRMATION # | 7734 | FILED BY | Sage Nelson |
| PATENT CENTER # | 64232889 | FILING DATE | 07/01/2021 |
| CUSTOMER # | 97149 | FIRST NAMED INVENTOR | Debra LOFRANCO |
| INTL. APPLICATION # | - | INTL. FILING DATE | - |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | Burns Israelsen |

## Documents

**TOTAL DOCUMENTS: 2**

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|
| W4588.10010US03_ Comments.pdf | 1 | Miscellaneous Incoming Letter | 129 KB |
| W4588.10010US03_ Issue fee transmittal.pdf | 1 | Issue Fee Payment (PTO-85B) | 170 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| W4588.10010US03_ Comments.pdf | F8EA913B38EF454AF3AF51120C9E1E8384F9692057B35BB023 E2BDE77A3790C73D1B0C0B14E77FBEBAD6840C239EA0984A 1DAF303AC703CEB9D7E8E3A32D0EBF |

| | |
|---|---|
| W4588.10010US03_ Issue fee transmittal.pdf | 056BA22E39B8D03441AD1BE26FA7CE824BC9DB71394F86A3F34000FEC0671178519508A49BA0BC23715D80E1B607CDE4BF060B9BA19CEDDC85FFFFB19AF44CBE |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

97149 7590 11/13/2023
Maschoff Brennan
1389 Center Drive, Suite 300
Park City, UT 84098

| EXAMINER | |
|---|---|
| NGUYEN, TRINH T | |
| ART UNIT | PAPER NUMBER |
| 3644 | |

DATE MAILED: 11/13/2023

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/420,351 | 07/01/2021 | Debra LOFRANCO | W4588.10010US03 | 7734 |

TITLE OF INVENTION: PET TOY

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | MICRO | $240 | $0.00 | $0.00 | $240 | 02/13/2024 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 40% the amount of undiscounted fees, and micro entity fees are 20% the amount of undiscounted fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

# PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

By mail, send to: Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

By fax, send to: (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications. **Because electronic patent issuance may occur shortly after issue fee payment, any desired continuing application should preferably be filed prior to payment of this issue fee in order not to jeopardize copendency.**

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

97149 7590 11/13/2023

Maschoff Brennan
1389 Center Drive, Suite 300
Park City, UT 84098

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

(Typed or printed name)

(Signature)

(Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/420,351 | 07/01/2021 | Debra LOFRANCO | W4588.10010US03 | 7734 |

TITLE OF INVENTION: PET TOY

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | MICRO | $240 | $0.00 | $0.00 | $240 | 02/13/2024 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| NGUYEN, TRINH T | 3644 | 119-709000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

❑ Change of correspondence address (or Change of Correspondence Address form PTO/AIA/122 or PTO/SB/122) attached.

❑ "Fee Address" indication (or "Fee Address" Indication form PTO/AIA/47 or PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 ______________________

2 ______________________

3 ______________________

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ❑ Individual ❑ Corporation or other private group entity ❑ Government

4a. Fees submitted: ❑ Issue Fee ❑ Publication Fee (if required)

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

❑ Electronic Payment via Patent Center or EFS-Web ❑ Enclosed check ❑ Non-electronic payment by credit card (Attach form PTO-2038)

❑ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. __________

5. **Change in Entity Status** (from status indicated above)

❑ Applicant certifying micro entity status. See 37 CFR 1.29

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

❑ Applicant asserting small entity status. See 37 CFR 1.27

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

❑ Applicant changing to regular undiscounted fee status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature ______________________ Date ______________________

Typed or printed name ______________________ Registration No. ______________________



PTOL-85 Part B (08-18) Approved for use through 01/31/2020 OMB 0651-0033 U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/420,351 | 07/01/2021 | Debra LOFRANCO | W4588.10010US03 | 7734 |

97149 7590 11/13/2023

Maschoff Brennan
1389 Center Drive, Suite 300
Park City, UT 84098

| EXAMINER | |
|---|---|
| NGUYEN, TRINH T | |
| ART UNIT | PAPER NUMBER |
| 3644 | |

DATE MAILED: 11/13/2023

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974** (**P.L. 93-579**) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | **Application No.**<br>17/420,351 | **Applicant(s)**<br>LOFRANCO, Debra | |
|---|---|---|---|
| | **Examiner**<br>TRINH T NGUYEN | **Art Unit**<br>3644 | **AIA (FITF) Status**<br>Yes |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--***

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1.☑ This communication is responsive to 7/31/23.
☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on ______.

2.☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on ______; the restriction requirement and election have been incorporated into this action.

3.☑ The allowed claim(s) is/are 1-9,11-16 and 19-23 . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information , please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4.☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

**Certified copies:**

a) ☐All b) ☐ Some* c) ☐ None of the:

1. ☐ Certified copies of the priority documents have been received.
2. ☐ Certified copies of the priority documents have been received in Application No. ______ .
3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

* Certified copies not received: ______ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5.☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.
☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date ______ .

**Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6.☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1.☐ Notice of References Cited (PTO-892)
2.☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date ______.
3.☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material ______.
4.☑ Interview Summary (PTO-413), Paper No./Mail Date. attached therein.
5. ☐ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other ______.

/TRINH T NGUYEN/
Primary Examiner, Art Unit 3644

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### *Reasons for Allowance*

1. Applicant's amendment and arguments filed on 7/31/23, with respect to claims 1-9, 11-16, and 19-23, have been fully considered and are persuasive. Therefore, the rejection on 3/2/23 has been withdrawn. For conclusion, claims 1-9, 11-16, and 19-23 are now allowed.

### *Conclusion*

2. Any inquiry concerning this communication or earlier communications from the examiner should be directed to TRINH T NGUYEN whose telephone number is (571)272-6906. The examiner can normally be reached on Monday-Friday 7:00-3:30.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Timothy Collins can be reached on 571-272-6886. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300. Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for

unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/TRINH T NGUYEN/
Primary Examiner, Art Unit 3644

<table>
<tr><td rowspan="2">Examiner-Initiated Interview Summary</td><td>Application No.<br>17/420,351</td><td colspan="3">Applicant(s)<br>LOFRANCO, Debra</td></tr>
<tr><td>Examiner<br>TRINH T NGUYEN</td><td>Art Unit<br>3644</td><td>AIA (First Inventor to File) Status<br>Yes</td><td>Page<br>1 of 1</td></tr>
</table>

| **All Participants** (applicant, applicants representative, PTO personnel) | **Title** | **Type** |
|---|---|---|
| TRINH T NGUYEN | Primary Examiner | Telephonic |
| Jacob Israelsen | Attorney | |

**Date of Interview:** 01 November 2023

**Issues Discussed:**

**Other**

Language was discussed to overcome the prior art and to better define the invention. It was agreed that the proposed amendment (see attached Examiner's Amendment) would further distinguish the invention over the prior art and thus put the case in condition for allowance. Furthermore, it is noted that modifying the prior art to meet the claimed limitations would be an improper hindsight reasoning.

| | |
|---|---|
| /TRINH T NGUYEN/<br>Primary Examiner, Art Unit 3644 | |

**Applicant is reminded that a complete written statement as to the substance of the interview must be made of record in the application file. It is the applicants responsibility to provide the written statement, unless the interview was initiated by the Examiner and the Examiner has indicated that a written summary will be provided. See MPEP 713.04**
Please further see:
MPEP 713.04
Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews, paragraph (b)
37 CFR § 1.2 Business to be transacted in writing

**Applicant recordation instructions:** It is not necessary for applicant to provide a separate record of the substance of interview.

**Examiner recordation instructions:** Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

| Issue Classification | Application/Control No. 17/420,351 | Applicant(s)/Patent Under Reexamination LOFRANCO, Debra |
|---|---|---|
| | Examiner TRINH T NGUYEN | Art Unit 3644 |

| CPC | | | | | | |
|---|---|---|---|---|---|---|
| Symbol | | | | | Type | Version |
| A01K | / | 15 | / | 026 | F | 2013-01-01 |

| CPC Combination Sets | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Symbol | | | | | Type | Set | Ranking | Version |
| | / | | / | | | | | |

| NONE<br>(Assistant Examiner) (Date) | Total Claims Allowed: 20 | |
|---|---|---|
| /TRINH T NGUYEN/<br>Primary Examiner, Art Unit 3644<br>(Primary Examiner) 03 November 2023 (Date) | O.G. Print Claim(s) 1 | O.G. Print Figure 1 |

U.S. Patent and Trademark Office Part of Paper No.: 20231102

| Issue Classification | Application/Control No. 17/420,351 | Applicant(s)/Patent Under Reexamination LOFRANCO, Debra |
|---|---|---|
| | Examiner TRINH T NGUYEN | Art Unit 3644 |

| INTERNATIONAL CLASSIFICATION | | | | |
|---|---|---|---|---|
| CLAIMED | | | | |
| A01K | / | 15 | / | 02 |
| NON-CLAIMED | | | | |
| | / | | / | |

| US ORIGINAL CLASSIFICATION | |
|---|---|
| CLASS | SUBCLASS |
| 119 | 709 |

| CROSS REFERENCES(S) | | | | | | |
|---|---|---|---|---|---|---|
| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | |
| | | | | | | |

| | | | |
|---|---|---|---|
| NONE<br>(Assistant Examiner) | (Date) | Total Claims Allowed:<br>20 | |
| /TRINH T NGUYEN/<br>Primary Examiner, Art Unit 3644<br>(Primary Examiner) | 03 November 2023<br>(Date) | O.G. Print Claim(s)<br>1 | O.G. Print Figure<br>1 |

U.S. Patent and Trademark Office Part of Paper No.: 20231102

| Issue Classification | Application/Control No.<br>17/420,351 | Applicant(s)/Patent Under Reexamination<br>LOFRANCO, Debra |
|---|---|---|
| | Examiner<br>TRINH T NGUYEN | Art Unit<br>3644 |

☑ Claims renumbered in the same order as presented by applicant ☐ CPA ☐ T.D. ☐ R.1.47

**CLAIMS**

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

| | | |
|---|---|---|
| NONE<br>(Assistant Examiner) (Date) | Total Claims Allowed:<br>20 | |
| /TRINH T NGUYEN/<br>Primary Examiner, Art Unit 3644<br>(Primary Examiner) | 03 November 2023<br>(Date) | O.G. Print Claim(s): 1<br>O.G. Print Figure: 1 |

U.S. Patent and Trademark Office Part of Paper No.: 20231102

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 17/420,351 | LOFRANCO, Debra |
| | **Examiner** | **Art Unit** |
| | TRINH T NGUYEN | 3644 |

| **CPC - Searched*** | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| **CPC Combination Sets - Searched*** | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| **US Classification - Searched*** | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| **Search Notes** | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Updated previous search. | 11/03/2023 | tn |
| PE2E search, see attached printout. | 11/03/2023 | tn |

| **Interference Search** | | | |
|---|---|---|---|
| **US Class/CPC Symbol** | **US Subclass/CPC Group** | **Date** | **Examiner** |
| A01K | 15/026,15/024,15/025. | 11/03/2023 | tn |

# PE2E SEARCH - Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|---|---|---|---|---|---|---|---|
| L3 | 11 | ("10206373"\|"10244735"\|"10477838"\|"10485220"\|"20040194731"\|"20150257366"\|"20160255812"\|"7011043"\|"7565884"\|"8561575"\|"8997695").PN. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/16 03:57 PM |
| L4 | 3 | ("20150257366" "20160255812" "8997695").PN. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/16 04:09 PM |
| L5 | 13 | (debra near2 lofranco).inv. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, CA, CH, CN, DD, DE, EA, EP, ES, FR, GB, JP, KR, OA, RU, SU, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/02/16 07:01 PM |
| L6 | 4830 | A01K15/026.cpc. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, CA, CH, CN, DD, DE, EA, EP, ES, FR, GB, JP, KR, OA, RU, SU, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/02/16 07:01 PM |
| L7 | 7061 | A01K15/025.cpc. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, CA, CH, CN, DD, DE, EA, EP, ES, FR, GB, JP, KR, OA, RU, SU, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/02/16 07:01 PM |
| L8 | 1208 | A01K15/024.cpc. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, CA, CH, CN, DD, DE, EA, EP, ES, FR, GB, JP, KR, OA, RU, SU, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/02/16 07:02 PM |
| L9 | 1732 | (L6 L7 L8) AND (abrasive scratch$4 sandpaper sand sandstone corrugat$4 emery) | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, CA, CH, CN, DD, DE, EA, EP, ES, FR, GB, JP, KR, OA, RU, SU, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/02/16 07:03 PM |
| L10 | 12 | ("2086631"\|"2215988"\|" | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/16 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | 3706140"\|"4907537"\|"4963117"\|"5758604"\|"5870971"\|"6073581"\|"6484671"\|"7137914"\|"7574977"\|"D426036").PN. | | | | | 11:02 PM |
| L11 | 11 | ("2005817"\|"20040103583"\|"20040194731"\|"20050011469"\|"3085551"\|"4539936"\|"5111771"\|"5988114"\|"6021741"\|"5450819"\|"4611556").PN. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/17 09:36 AM |
| L12 | 1 | ("20220053734").PN. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/24 07:55 PM |
| L13 | 1 | ("8997695").PN. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/24 08:15 PM |
| L14 | 2 | ("20080149041" "8997695").PN. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/09/10 07:06 PM |
| L15 | 2 | ("20080149041" "8997695").PN. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/10/12 12:32 PM |
| L17 | 1340 | L9 AND (cavit$4 aperture hole open$4 passage chamber) | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, CA, CH, CN, DD, DE, EA, EP, ES, FR, GB, JP, KR, OA, RU, SU, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/10/12 09:10 PM |
| L18 | 4 | ("20150257366" "20160255812" "8997695" "20040194731").PN. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/10/12 09:29 PM |
| L20 | 1973 | (L8 L6 L7) AND (abrasive scratch$4 sandpaper sand sandstone corrugat$4 emery velcro) | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, CA, CH, CN, DD, DE, EA, EP, ES, FR, GB, JP, KR, OA, RU, SU, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/10/13 09:59 AM |
| L21 | 1491 | L20 AND (cavit$4 aperture hole open$4 passage chamber) | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, CA, CH, CN, DD, DE, EA, EP, ES, FR, GB, JP, KR, OA, RU, SU, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/10/13 09:59 AM |

## PE2E SEARCH - Search History (Interference)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|---|---|---|---|---|---|---|---|
| N1 | 1031 | A01K15/026.cpc. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/10/24 09:46 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| N2 | 1783 | A01K15/025.cpc. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/10/24 09:50 AM |
| N3 | 321 | A01K15/024.cpc. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/10/24 09:51 AM |
| N4 | 636 | (N1 N2 N3) AND @pd>="20190102" | (US-PGPUB; USPAT) | OR | ON | ON | 2023/10/24 09:52 AM |

# Bibliographic Data

Application No: 17/420,351

Foreign Priority claimed: ○ Yes ◉ No

35 USC 119 (a-d) conditions met: ☐ Yes ☑ No ☐ Met After Allowance

Verified and Acknowledged: /TRINH T NGUYEN/ tn

Examiner's Signature Initials

Title: PET TOY

| FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/01/2021 | 119 | 3644 | W4588.10010US03 |
| **RULE** | | | |

**APPLICANTS**

**INVENTORS**

Debra LOFRANCO, Galloway, NJ, UNITED STATES

**CONTINUING DATA**

This application is a 371 of PCT/US2019/069087 12/31/2019

PCT/US2019/069087 has PRO of 62910144 10/03/2019

PCT/US2019/069087 has PRO of 62787624 01/02/2019

**FOREIGN APPLICATIONS**

**IF REQUIRED, FOREIGN LICENSE GRANTED****

11/10/2021

**** MICRO ENTITY ****

**STATE OR COUNTRY**

UNITED STATES

**ADDRESS**

Maschoff Brennan
1389 Center Drive, Suite 300
Park City, UT 84098
UNITED STATES

**FILING FEE RECEIVED**

$415

UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC PAYMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **17/420,351** | **07/31/2023 05:57:10 PM ET** | **W4588.10010US03** |

## Title of Invention

PET TOY

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - U.S. National Stage under 35 USC 371 | PATENT # | - |
| CONFIRMATION # | 7734 | FILED BY | Clarissa Johnson |
| PATENT CENTER # | 62532348 | AUTHORIZED BY | Jacob Israelsen |
| CUSTOMER # | 97149 | FILING DATE | 07/01/2021 |
| INTL. APPLICATION # | - | INTL. FILING DATE | - |
| CORRESPONDENCE ADDRESS | - | FIRST NAMED INVENTOR | Debra LOFRANCO |

## Payment Information

| PAYMENT METHOD | PAYMENT TRANSACTION ID | PAYMENT AUTHORIZED BY |
|---|---|---|
| **CARD / 1004** | **E20237UH57425401** | **Clarissa Johnson** |

| FEE CODE | DESCRIPTION | ITEM PRICE($) | QUANTITY | ITEM TOTAL($) |
|---|---|---|---|---|
| 3252 | EXTENSION FOR RESPONSE WITHIN SECOND MONTH | 128.00 | 1 | 128.00 |
| | | | **TOTAL AMOUNT:** | **$128.00** |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **17/420,351** | **07/31/2023 05:57:10 PM ET** | **W4588.10010US03** |

## Title of Invention

PET TOY

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - U.S. National Stage under 35 USC 371 | PATENT # | - |
| CONFIRMATION # | 7734 | FILED BY | Clarissa Johnson |
| PATENT CENTER # | 62532348 | FILING DATE | 07/01/2021 |
| CUSTOMER # | 97149 | FIRST NAMED INVENTOR | Debra LOFRANCO |
| INTL. APPLICATION # | - | INTL. FILING DATE | - |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | Jacob Israelsen |

## Documents

**TOTAL DOCUMENTS: 5**

| DOCUMENT | | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|---|
| W4588.10010US03 Non-Final Office Action Response.pdf | | 10 | - | 248 KB |
| W4588.10010US03 Non-Final Office Action Response-A.NE.pdf | (1-1) | 1 | Response After Final Action | 126 KB |
| W4588.10010US03 Non-Final Office Action Response-CLM.pdf | (2-4) | 3 | Claims | 132 KB |
| W4588.10010US03 Non- | (5-5) | 1 | Drawings-only black and white | 103 KB |

| | | | | |
|---|---|---|---|---|
| Final Office Action Response-DRW.pdf | | | line drawings | |
| W4588.10010US03 Non-Final Office Action Response-REM.pdf | (6-10) | 5 | Applicant Arguments/Remarks Made in an Amendment | 152 KB |
| W4588.10010US03 Replacement Sheet.pdf | | 1 | Drawings-only black and white line drawings | 47 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| W4588.10010US03 Non-Final Office Action Response.pdf | 57E7D755B19E80C74C5D322BC12A13456E9F4AB72A2FE2001B8A907D263F50E7DC6B6C0BCF70684044DEAC29FFD15A9FE7B0B20E63AAA045F853C8A27D17CC58 |
| W4588.10010US03 Non-Final Office Action Response-A.NE.pdf | F278198ECA6BB63852584C763E10526AF136F04A74329023B011ED884CDAC41128F39CF74E66DB40F18A5B56351B8F19E1A2F12E563E2568D919EA01B5021035 |
| W4588.10010US03 Non-Final Office Action Response-CLM.pdf | 76BD30BCD5EA6F8960B51A22D0EA79AFF6E72F3EAF954AEB495245B70BF3983580E19A5EF474544F1DDBFAD44BADBCD22FB5B6BFFA2C67793F235C49215C9AE2 |
| W4588.10010US03 Non-Final Office Action Response-DRW.pdf | E1A38AD0561B523F914114E8FAE68595B2BDDC85A69D5A9089C24357AE479B9A7CCA8BE850EE34C2A7D9C70028FCE32EF594672E9DDBBFC4518505EAFA314023 |
| W4588.10010US03 Non-Final Office Action Response-REM.pdf | 6CEB0A2CEF6CBC98F90A20B4675B0196F4B640A31A62FB758A26AC688444FB7D8100339BE40284E395EFB3C0BEBB4BC626D2FEC9841AE0E17CFBEA31838BEAC0 |
| W4588.10010US03 Replacement Sheet.pdf | C6AB97D585CD4F8775A383315E2904BBF5CE0DE88C79BC7EE9DBA1D3C5928763A7497960E134C9AF25F6590919D969BE5086A15DAA9AFC30C8F898735B961919 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | |
|---|---|---|
| In re application of: | Debra LOFRANCO | |
| Application No.: | 17/420,351 | Art Unit 3644 |
| Filed: | July 1, 2021 | |
| Conf. No.: | 7734 | |
| For: | PET TOY | |
| Examiner: | Nguyen, Trinh T | |
| Customer No.: | 97149 | |
| Attorney Docket No.: | W4588.10010US03 | |

**<u>RESPONSE TO FINAL OFFICE ACTION DATED MARCH 2, 2023</u>**

In response to the Final Office Action dated March 2, 2023, please consider:

AMENDMENTS TO THE CLAIMS ........ 2

AMENDMENTS TO THE DRAWINGS ........ 5

REMARKS ........ 6

**AMENDMENTS TO THE CLAIMS**

This listing of claims replaces all prior versions and listings of claims in the application:

1. **(Currently Amended)** A pet toy comprising:

a body having an upper face, a lower face, a top side, a bottom side, a left side, and a right side;

at least one of the upper face and the lower face having:

a pad surface for adhering an abrasive material; and

one or more substantially circular scent cavities configured to receive a scent material;

the body having an internal central cavity; and

at least one aperture formed in the body for accessing the internal central cavity;

at least one handle, made of an elastic material, extending from the group consisting of the top side, the bottom side, the left side, and the right side of the body for grasping the pet toy, wherein the handle includes a plurality of grooves sized and positioned to be contacted by pet teeth and configured to clean the pet teeth.

2. **(Original)** A pet toy according to claim 1, wherein the at least one aperture is formed in the group consisting of the top side, the bottom side, the left side, and the right side of the body.

3. **(Original)** A pet toy according to claim 2, wherein the at least one handle and the at least one aperture are formed in the same side.

4. **(Original)** A pet toy according to claim 1, wherein the handle is arc-shaped.

5. **(Original)** A pet toy according to claim 3, wherein the at least one handle is arc-shaped and extends from the side on either side of the aperture.

6. **(Original)** A pet toy according to claim 1, the body having a pair of arc-shaped handles extending from opposite sides of the body, and at least one aperture formed in one of the opposite sides.

7. **(Original)** A pet toy according to claim 6, the body having an aperture formed in each of the opposite sides.

8. **(Original)** A pet toy according to claim 1, further including at least one guard projecting from the at least one face having a pad surface, the at least one guard projecting from the at least one face proximate the pad surface.

9. **(Currently Amended)** A pet toy according to claim 1, wherein the upper ~~surface~~ face has an upper pad surface and the lower face has a lower pad surface.

10. **(Cancelled)**

11. **(Currently Amended)** A pet toy according to claim 1, wherein the ~~at least~~ one or more substantially circular scent ~~cavity~~ cavities are~~is~~ formed in at least one of the upper ~~surface~~ face and the lower ~~surface~~face.

12. **(Original)** A pet toy according to claim 1, further comprising an abrasive material adhered to the pad surface.

13. **(Original)** A pet toy according to claim 1, wherein the handle is a string or cord.

14. **(Original)** A pet toy according to claim 1, further including catnip secured within the body.

15. **(Original)** A pet toy according to claim 12, further including netting material covering the abrasive material.

16. **(Original)** A pet toy according to claim 1, further including a feather adhered to the body.

17. **(Cancelled)**

18. **(Cancelled)**

19. **(New)** The pet toy according to claim 1, wherein the elastic material includes a thermoplastic material or a natural rubber.

20. **(New)** The pet toy according to claim 1, wherein the one or more substantially circular scent cavities are located in each corner of at least one of the upper face and the lower face.

21. **(New)** A pet toy comprising:

a body having an upper face, a lower face, a top side, a bottom side, a left side, and a right side;

at least one of the upper face and the lower face including:

a pad surface for adhering an abrasive material; and

a guard projection extending in a perpendicular direction with respect to the pad surface and configured to prevent the abrasive material from contacting a flat surface upon which the pet toy is placed;

the body having an internal central cavity; and

at least one aperture formed in the body for accessing the internal central cavity;

at least one handle extending from the group consisting of the top side, the bottom side, the left side, and the right side of the body for grasping the pet toy.

22. **(New)** A pet toy according to claim 20, further comprising at least one cavity for receiving a scent material.

23. **(New)** A pet toy according to claim 20, further including a plurality of grooves sized and positioned to be contacted by pet teeth for cleaning the pet teeth.

Replacement Sheet






Fig. 6




Fig. 7




Fig. 8

## AMENDMENTS TO THE DRAWINGS

The attached drawing sheet includes changes to Figure 6. This sheet, which include Figures 6, 7, and 8, replace the original sheets. In Figure 6, previously omitted element 112 has been added.

## REMARKS

The foregoing amendment cancels claims 10, 17, and 18 without prejudice and amends claims 1, and 11 and adds new claims 19-23. Claims 1-9, 11-16, and 19-23 are pending.

Applicant respectfully requests reconsideration of the application in view of the above amendments to the claims and the following remarks. Unless otherwise stated herein, amendments to the claims have been made at the discretion of Applicant and not necessarily for reasons related to patentability.

Applicant reserves the right to pursue any previously pending claims or other claims that capture any subject matter supported by the present disclosure. Additionally, Applicant reserves the right, both during and after prosecution of this case, to modify or revoke the views expressed with regard to any cited reference.

Applicant includes dates in any Information Disclosure Statement (IDS) filed during the prosecution of this application solely to comply with the duty of disclosure required by the USPTO. Applicant expressly denies that any date listed in any IDS is an admission that a corresponding reference was published, accessible, disseminated, or otherwise qualified as prior art as of the listed date.

The following remarks are not intended to exhaustively identify all distinctions between any cited reference and the claims. The term "Applicant" is used generically herein to refer to any entity with authority to prosecute this application.

### Amendments Not Related to Patentability

Some amendments to the claims have been made not in response to any rejection or objection posed by the Office Action but rather simply to refine the language of those claims. Applicant has broad discretion to choose and modify the language of a claim. It should be noted that, because these amendments to the claims fall within the bounds of that discretion, such amendments are not related to the patentability of those claims.

**Objections to Drawings**

The Office Action objects to the Figures for not including reference sign 112 that was mentioned in the description as "a central portion 112." Applicant submits new Figure 4 that includes the reference sign 112, which render the objections moot. Applicant therefore respectfully requests the objections to the Figures be withdrawn.

**Rejections Under 35 U.S.C. §§ 102 and 103**

The Office Action rejects claims 1-5, 7-15, and 17-18 under 35 U.S.C. §102 as being anticipated by *Lamstein* (US Publication No. 2008/0149041). Further, the Office Action rejects claim 6 under 35 U.S.C. § 103 over *Lamstein*. Additionally, the Office Action rejects claim 16 under 35 U.S.C. § 103 over *Lamstein* in view of *Riding* (US 8997695).

**Remarks Directed to Claim 1**

Applicant disagrees with aspects of the rejection. Nevertheless, in the interest of expediting prosecution, Applicant has herein amended independent claim 1 to recite, for example,

> at least one of the upper face and the lower face having:
> a pad surface for adhering an abrasive material; and
> one or more substantially circular scent cavities configured to receive a scent material;
> the body having an internal central cavity; and
> at least one aperture formed in the body for accessing the internal central cavity;
> at least one handle, made of an elastic material, extending from the group consisting of the top side, the bottom side, the left side, and the right side of the body for grasping the pet toy, wherein the handle includes a plurality of grooves sized and positioned to be contacted by pet teeth for cleaning the teeth.

Applicant respectfully submits that *Lamstein* fails to teach or suggest each element in the above-quoted recitations.

*Lamstein* is generally directed to a recreational pet toy for cats. *Lamstein*, ¶[0009]. The Office Action equates a fabric flap or a pouch where catnip may be placed with the "at least one cavity for receiving scent material" recited in claim 10. *See* Office Action, p. 5. For example, the Office Action points to ¶¶ [0026] and [0030] where *Lamstein* states that a "fabric flap 18 can be provided on a sidewall of recreational pet toy 10 to enable a user to open the sidewall 16 of the

recreational pet toy 10 to introduce catnip therein" and that "once closure element 74 has been opened, catnip leaves can be applied through substantially the entire length of the pet toy." *Id.* However, *Lamstein* is silent regarding a substantially circular scent cavity configured to receive a scent material included in the upper face and lower face of the pet toy. Indeed, far from circular scent cavities, *Lamstein* teaches a series of flaps and pouches into which catnip may be placed; for example,

> Rather than employing the channel structure shown in FIG. 3, catnip can be introduced to the interior of hanging pet toy 10 in several ways. For example, in turning first to FIG. 1C, fabric flap 18 can be provided on a sidewall of recreational pet toy 10 to enable a user to open the sidewall 16 of recreational pet toy 10 to introduce catnip therein. This could be done by either pouring loose catnip leaves through an opening beneath flap 18 or, alternatively, catnip can be placed within a pouch and the pouch inserted therein.

*Lamstein*, ¶ [0026]. Further, insofar as the funnel shape depicted in FIGs. 4B and 4C, for example, is "substantially circular," which the Applicant does not concede, the funnel shape introduces catnip to the portion of the pet toy that is considered a central cavity. The claims, as recited here, include both an internal central cavity and one or more substantially circular scent cavities. Therefore, *Lamstein* does not teach or suggest each of the elements in amended claim 1.

Additionally, *Lamstein* does not teach or suggest "at least one handle, made of an elastic material, . . . wherein the handle includes a plurality of grooves sized and positioned to be contacted by pet teeth for cleaning the teeth," as recited in independent claim 1. The Office Action equates the plurality of grooves in claims 17 and 18 now included in claim 1, to "grooves created in ropes (15, 23, and 71)." *See* Office Action, p. 6. However, *Lamstein* is silent regarding the handle being made of an elastic material, *Lamstein* specifically teaches that the handle is to be made of "rope or cord." *See Lamstein*, ¶¶ [0015], [0021], [0024], [0026], and [0029]. Furthermore, *Lamstein* is silent regarding the rope or cord being configured to be used for animal teeth in any way, much less specifically calling out that the grooves are sized and positioned to be contacted by pet teeth for cleaning the pet teeth, as recited in amended claim 1. Therefore, because *Lamstein* does not teach each element of claim 1, Applicant respectfully requests that the rejections under 35 U.S.C. §102 be withdrawn.

Further, the deficiencies of *Lamstein* do not appear to be remedied by *Riding*, which is used to read on one or more other elements of claim 16. Therefore, because claims 6 and 16 depend from claim 1, Applicant respectfully requests the rejections under § 103 be withdrawn.

**<u>Remarks Directed to Claim 21</u>**

Independent claim 21 has been added to the claim set and includes many elements included in independent claim 1 and elements that are not taught in *Lamstein*; as such, claim 21 and dependent claims 22 and 23 are allowable over *Lamstein*. Claim 21 states, for example,

> at least one of the upper face and the lower face including:
> a pad surface for adhering an abrasive material; and
> a guard projection extending in a perpendicular direction with respect to the pad surface and configured to prevent the abrasive material from contacting a flat surface upon which the pet toy is placed;
> the body having an internal central cavity; and
> at least one aperture formed in the body for accessing the internal central cavity;
> at least one handle extending from the group consisting of the top side, the bottom side, the left side, and the right side of the body for grasping the pet toy.

Applicant respectfully submits that *Lamstein* fails to teach or suggest each element in the above-quoted recitations.

The Office Action equates the at least one guard in claim 8, added to claim 21, to the long edges 11 and 13 as shown, for example, in FIGs. 1A and 1B. *See* Office Action, p. 5. *Lamstein* describes the long edges as "generally extend[ing] vertically when the present invention is in use." *Lamstein*, ¶ [0016]. Indeed as shown in FIGs. 1A and 1B, the long edges 11 and 13 appear to be extending outward on the same plane as the flat surface(s) (16 and 17). By contrast, *Lamstein* is silent regarding "a guard projection extending in a perpendicular direction with respect to the pad surface and configured to prevent the abrasive material from contacting a flat surface upon which the pet toy is placed," as recited in independent claim 21. For example, in the instance that the pet toy from *Lamstein* is set on a flat surface (e.g., the rug surface 17), the long edges 11 and/or 13 would not prevent the rug surface from contacting another flat surface (e.g., a table or floor).

The claim amendments, taken as a whole, render the rejections moot. Applicant notes that portions of the claims, other than those specifically amended and/or mentioned above, may contribute to patentability. In light of the references as now understood by Applicant and the amendments made herein, claims 1 and 21 appear to be allowable. Applicant therefore respectfully requests that the rejections of claims 1-9, 11-16 under 35 U.S.C. § 102 and § 103 be withdrawn. Further, Applicant submits that new claims 19-23 appear to be allowable over *Lamstein* and *Riding*.

**Charge Authorization**

The Commissioner is hereby authorized to charge payment of any of the following fees that may be applicable to this communication, or credit any overpayment, to Deposit Account No. 50-5394: (1) any filing fees required under 37 C.F.R. § 1.16; (2) any patent application and reexamination processing fees under 37 C.F.R. § 1.17; and/or (3) any post issuance fees under 37 C.F.R. § 1.20. In addition, if any additional extension of time is required, which has not otherwise been requested, please consider this a petition therefor and charge any additional fees that may be required to Deposit Account No. 50-5394.

**CONCLUSION**

In view of the foregoing, Applicant submits that the pending claims are allowable. In the event that Examiner finds remaining impediment to a prompt allowance of this application that may be clarified through a telephone interview or overcome by an Examiner's Amendment, Examiner is invited to contact the undersigned attorney.

Dated this 31st day of July, 2023.

Respectfully submitted,

**/Jacob O. Israelsen/**

Jacob O. Israelsen
Registration No. 79,236
Attorney for Applicant
Telephone No. (801) 297-1870
Maschoff Brennan

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>17/420,351 | Filing Date<br>07/01/2021 | ☐ To be Mailed |
|---|---|---|---|

ENTITY: ☐ LARGE ☐ SMALL ☑ MICRO

## APPLICATION AS FILED - PART I

| FOR | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | | RATE ($) | FEE ($) |
|---|---|---|---|---|---|
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | | x $25 = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | | x $ 120 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| AMENDMENT | 07/31/2023 | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| | Total<br>(37 CFR 1.16(i)) | * 20 | Minus | ** 20 | = 0 | | x $20 = | 0 |
| | Independent<br>(37 CFR 1.16(h)) | * 2 | Minus | *** 3 | = 0 | | x $96 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | 0 |

| AMENDMENT | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| | Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | | x $0 = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | |

| | |
|---|---|
| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /SULONDA D STEVENSON/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/420,351 | 07/01/2021 | Debra LOFRANCO | W4588.10010US03 | 7734 |

97149 7590 03/02/2023

Maschoff Brennan
1389 Center Drive, Suite 300
Park City, UT 84098

| EXAMINER |
|---|
| NGUYEN, TRINH T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3644 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 03/02/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

d@mabr.com

| *Office Action Summary* | **Application No.**<br>17/420,351 | **Applicant(s)**<br>LOFRANCO, Debra | |
|---|---|---|---|
| | **Examiner**<br>TRINH T NGUYEN | **Art Unit**<br>3644 | **AIA (FITF) Status**<br>Yes |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☑ Responsive to communication(s) filed on 7/1/21.
☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL.** 2b) ☑ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) 1-18 is/are pending in the application.
5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) 1-18 is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined allowable, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.
11)☑ The drawing(s) filed on 7/1/21 is/are: a)☑ accepted or b)☐ objected to by the Examiner.
Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
**Certified copies:**
a)☐ All b)☐ Some** c)☐ None of the:
1.☐ Certified copies of the priority documents have been received.
2.☐ Certified copies of the priority documents have been received in Application No. _____.
3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)
2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date 7/1/21.
3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date ______.
4) ☐ Other: ______.

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### *Drawings*

The drawings are objected to as failing to comply with 37 CFR 1.84(p)(5) because they do not include the following reference sign(s) mentioned in the description: "a central portion 112". Corrected drawing sheets in compliance with 37 CFR 1.121(d) are required in reply to the Office action to avoid abandonment of the application. Any amended replacement drawing sheet should include all of the figures appearing on the immediate prior version of the sheet, even if only one figure is being amended. Each drawing sheet submitted after the filing date of an application must be labeled in the top margin as either "Replacement Sheet" or "New Sheet" pursuant to 37 CFR 1.121(d). If the changes are not accepted by the examiner, the applicant will be notified and informed of any required corrective action in the next Office action. The objection to the drawings will not be held in abeyance.

## *Claim Rejections - 35 USC § 102*

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale or otherwise available to the public before the effective filing date of the claimed invention.
>
> (a)(2) the claimed invention was described in a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention.

**Claim 1 is rejected under 35 U.S.C. 102(a)(1) and (a)(2) as being anticipated by Lamstein et al. (US 2008/0149041).**

For claim 1, Lamstein et al. teach a pet toy comprising: a body (10,20,70) having an upper face, a lower face, a top side, a bottom side, a left side, and a right side; at least one of the upper face and the lower face having a pad surface for adhering an abrasive material (16,17,21,72); the

body having an internal central cavity; and at least one aperture formed in the body for accessing the internal central cavity (see [0021],[0026],[0030]); at least one handle (15,23,71) extending from the group consisting of the top side, the bottom side, the left side, and the right side of the body for grasping the pet toy.

For claim 2, Lamstein et al. teach wherein the at least one aperture is formed in the group consisting of the top side, the bottom side, the left side, and the right side of the body (see [0021],[0026],[0030]).

For claim 3, Lamstein et al. teach wherein the at least one handle and the at least one aperture are formed in the same side (see Figures 1C,1D,3,4B).

For claim 4, Lamstein et al. teach wherein the handle (15,23,71) is arc-shaped (see Figures 1C,1D,3,4B).

For claim 5, Lamstein et al. teach wherein the at least one handle is arc-shaped and extends from the side on either side of the aperture (see Figures 1C,1D,3,4B).

For claim 7, Lamstein et al. teach the body having an aperture formed in each of the opposite sides (see Figures 1C,1D,3,4B).

For claim 8, Lamstein et al. teach at least one guard (11,13) projecting from the at least one face having a pad surface, the at least one guard projecting from the at least one face proximate the pad surface.

For claim 9, Lamstein et al. teach wherein the upper surface (16,17,22) has an upper pad surface and the lower face (16,17,22) has a lower pad surface (see Figures 1A,1B,2,3).

For claim 10, Lamstein et al. teach at least one cavity for receiving a scent material (see [0021],[0026],[0030]).

For claim 11, Lamstein et al. teach wherein the at least one cavity (17,25,29,45,47) is formed in at least one of the upper surface and the lower surface (see Figures 1C,1D,3,4A,4B,4D).

For claim 12, Lamstein et al. teach an abrasive material (16,17,21,72) adhered to the pad surface.

For claim 13, Lamstein et al. teach wherein the handle is a string or cord (15,23,71).

For claim 14, Lamstein et al. teach catnip secured within the body (see [0021],[0026],[0030]).

For claim 15, Lamstein et al. teach netting material (72) covering the abrasive material.

For claim 17, Lamstein et al. teach a plurality of grooves (grooves created in ropes (15,23,71)) sized and positioned to be contacted by pet teeth for cleaning the teeth.

For claim 18, Lamstein et al. teach wherein the plurality of grooves (grooves created in ropes (15,23,71)) is provided on the at least one handle.

### *Claim Rejections - 35 USC § 103*

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102 of this title, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

**Claim 6 is rejected under 35 U.S.C. 103 as being unpatentable over Lamstein et al. (US 2008/0149041).**

For claim 6, as described above, Lamstein et al. further disclose at least one aperture (25) formed in one of the opposite sides (see Figure 3) but lack the body having a pair of arc-shaped handles extending from opposite sides of the body. However, it would have been obvious to one having ordinary skill in the art before the effective filing date of the claimed invention to have modified the pet toy of Lamstein et al. so as to include a pair of arc-shaped handles extending from opposite sides of the body, since it has been held that mere duplication of the essential working parts of a device involves only routing skill in the art.

**Claim 16 is rejected under 35 U.S.C. 103 as being unpatentable over Lamstein et al. (US 2008/0149041) in view of Riding (US 8997695).**

For claim 16, as described above, Lamstein et al. disclose most of the claimed invention except for mentioning a feather adhered to the body.

Riding teaches that it is old and well known in the art to provide a pet toy having a feather (28) adhered to the body (see Figures 6A-6D).

It would have been obvious to one having ordinary skill in the art before the effective filing date of the claimed invention to have modified the pet toy of Lamstein et al. so as to include a feather adhered to the toy body, in a similar manner as taught in Riding, so as to attract the pet for an interactive play session.

## *Conclusion*

Note, although the examiner recites certain excerpts for the prior art, MPEP 2141.02 VI states “PRIOR ART MUST BE CONSIDERED IN ITS ENTIRETY, INCLUDING DISCLOSURES THAT TEACH AWAY FROM THE CLAIMS”.

The prior art Haaf (US 8578890) teaches a pet scratching device having an uncorrugated surface, a handle, and a catnip stored therein.

The prior art Haaf et al. (US 2012/0279458) teaches a pet scratching device having scratching surfaces thereon and a pet attractant feathered toy.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to TRINH T NGUYEN whose telephone number is (571)272-6906. The examiner can normally be reached on Monday-Friday 7:00-3:30.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Timothy Collins can be reached on 571-272-6886. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300. Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/TRINH T NGUYEN/
Primary Examiner, Art Unit 3644

| *Notice of References Cited* | Application/Control No. 17/420,351 | Applicant(s)/Patent Under Reexamination LOFRANCO, Debra | |
|---|---|---|---|
| | Examiner TRINH T NGUYEN | Art Unit 3644 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-8578890-B1 | 11-2013 | Haaf; David | A01K15/024 | 119/706 |
| * | B | US-20120279458-A1 | 11-2012 | Haaf; David | A01K15/024 | 119/706 |
| * | C | US-20120192803-A1 | 08-2012 | Haaf; David | A01K15/025 | 119/621 |
| * | D | US-20120090553-A1 | 04-2012 | Haaf; David | A01K15/024 | 119/706 |
| * | E | US-20120090552-A1 | 04-2012 | Haaf; David | A01K15/024 | 119/706 |
| * | F | US-20120085294-A1 | 04-2012 | Christianson; Tristan | A01K15/025 | 119/707 |
| * | G | US-20110253060-A1 | 10-2011 | Schotthoefer; Randy | A01K15/024 | 119/706 |
| * | H | US-20110079183-A1 | 04-2011 | Krotts; Dean B. | A01K15/025 | 119/711 |
| * | I | US-20100199921-A1 | 08-2010 | Haaf; David | A01K5/0114 | 119/702 |
| * | J | US-20100050953-A1 | 03-2010 | Fails, JR.; Harlan Wayne | A01K15/024 | 119/706 |
| * | K | US-20080149041-A1 | 06-2008 | Lamstein; Aaron | A01K15/024 | 119/706 |
| * | L | US-20070295282-A1 | 12-2007 | Lamstein; Aaron | A01K15/024 | 119/706 |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Search Notes* | Application/Control No. 17/420,351 | Applicant(s)/Patent Under Reexamination LOFRANCO, Debra |
|---|---|---|
| | Examiner TRINH T NGUYEN | Art Unit 3644 |

| CPC - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| A01K15/026,15/024,15/025. | 02/24/2023 | tn |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Inventor name search. | 02/24/2023 | tn |
| PE2E search, see attached history printouts. | 02/24/2023 | tn |

| Interference Search | | | |
|---|---|---|---|
| **US Class/CPC Symbol** | **US Subclass/CPC Group** | **Date** | **Examiner** |
| | | | |

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (02-18)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | | |
|---|---|---|
| | Application Number | |
| | Filing Date | |
| | First Named Inventor | Debra LOFRANCO |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | W4588.10010US01 |

**U.S.PATENTS** Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code1 | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 10485220 | | 2019-11-26 | VALLE | |
| | 2 | 10244735 | | 2019-04-02 | WOLFE JR. | |
| | 3 | 10477838 | | 2019-11-19 | DERTSAKYAN | |
| | 4 | 10206373 | | 2019-02-19 | FINCHER | |
| | 5 | 8561575 | | 2013-10-22 | RUFFIN | |
| | 6 | 7011043 | | 2006-03-14 | DIEP | |
| | 7 | 7565884 | | 2009-07-28 | LAMSTEIN | |
| | 8 | 8997695 | | 2015-04-07 | RIDING | |

If you wish to add additional U.S. Patent citation information please click the Add button. Add

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /T.T.N/

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | | |
|---|---|---|
| | Application Number | |
| | Filing Date | |
| | First Named Inventor | Debra LOFRANCO |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | W4588.10010US01 |

**U.S.PATENT APPLICATION PUBLICATIONS** Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 20150257366 | A1 | 2015-09-17 | GICK | |
| | 2 | 20160255812 | A1 | 2016-08-09 | WOLFE JR. | |
| | 3 | 20040194731 | A1 | 2004-10-07 | LINEBERRY | |

If you wish to add additional U.S. Published Application citation information please click the Add button. Add

**FOREIGN PATENT DOCUMENTS** Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2018096524 | WO | A1 | 2018-05-31 | COOPERSMITH | | |
| | 2 | 2012075346 | WO | A2 | 2012-06-07 | PIONEER PET PRODUCTS LLC | | |

If you wish to add additional Foreign Patent Document citation information please click the Add button Add

**NON-PATENT LITERATURE DOCUMENTS** Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| | 1 | | |

If you wish to add additional non-patent literature document citation information please click the Add button Add

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /T.T.N/

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | Application Number | |
|---|---|---|
| | Filing Date | |
| | First Named Inventor | Debra LOFRANCO |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | W4588.10010US01 |

| **EXAMINER SIGNATURE** | | | |
|---|---|---|---|
| Examiner Signature | /TRINH T NGUYEN/ | Date Considered | 02/24/2023 |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | | |
|---|---|---|
| | Application Number | |
| | Filing Date | |
| | First Named Inventor | Debra LOFRANCO |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | W4588.10010US01 |

**CERTIFICATION STATEMENT**

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

See attached certification statement.

The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

**SIGNATURE**

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /R. Burns Israelsen, Reg. No. 42685/ | Date (YYYY-MM-DD) | 2021-07-01 |
|---|---|---|---|
| Name/Print | R. Burns Israelsen | Registration Number | 42685 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# PE2E SEARCH - Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|---|---|---|---|---|---|---|---|
| L3 | 11 | ("10206373"\|"10244735"\|"10477838"\|"10485220"\|"20040194731"\|"20150257366"\|"20160255812"\|"7011043"\|"7565884"\|"8561575"\|"8997695").PN. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/16 03:57 PM |
| L4 | 3 | ("20150257366" "20160255812" "8997695").PN. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/16 04:09 PM |
| L5 | 13 | (debra near2 lofranco).inv. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, CA, CH, CN, DD, DE, EA, EP, ES, FR, GB, JP, KR, OA, RU, SU, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/02/16 07:01 PM |
| L6 | 4830 | A01K15/026.cpc. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, CA, CH, CN, DD, DE, EA, EP, ES, FR, GB, JP, KR, OA, RU, SU, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/02/16 07:01 PM |
| L7 | 7061 | A01K15/025.cpc. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, CA, CH, CN, DD, DE, EA, EP, ES, FR, GB, JP, KR, OA, RU, SU, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/02/16 07:01 PM |
| L8 | 1208 | A01K15/024.cpc. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, CA, CH, CN, DD, DE, EA, EP, ES, FR, GB, JP, KR, OA, RU, SU, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/02/16 07:02 PM |
| L9 | 1732 | (L6 L7 L8) AND (abrasive scratch$4 sandpaper sand sandstone corrugat$4 emery) | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, CA, CH, CN, DD, DE, EA, EP, ES, FR, GB, JP, KR, OA, RU, SU, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/02/16 07:03 PM |
| L10 | 12 | ("2086631"\|"2215988"\|" | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/16 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | 3706140"\|"4907537"\|"4963117"\|"5758604"\|"5870971"\|"6073581"\|"6484671"\|"7137914"\|"7574977"\|"D426036").PN. | | | | | 11:02 PM |
| L11 | 11 | ("2005817"\|"20040103583"\|"20040194731"\|"20050011469"\|"3085551"\|"4539936"\|"5111771"\|"5988114"\|"6021741"\|"5450819"\|"4611556").PN. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/17 09:36 AM |
| L12 | 1 | ("20220053734").PN. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/24 07:55 PM |
| L13 | 1 | ("8997695").PN. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/24 08:15 PM |

**PE2E SEARCH - Search History (Interference)**

There are no Interference searches to show.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 17/420,351 | 07/01/2021 | Debra LOFRANCO | W4588.10010US03 |

**CONFIRMATION NO. 7734**

**PUBLICATION NOTICE**

*OC000000132040435*

97149
Maschoff Brennan
1389 Center Drive, Suite 300
Park City, UT 84098

**Title:**PET TOY

**Publication No.**US-2022-0053734-A1
**Publication Date:**02/24/2022

## NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Public Records Division. The Public Records Division can be reached by telephone at (571) 272-3150 or (800) 972-6382, by facsimile at (571) 273-3250, by mail addressed to the United States Patent and Trademark Office, Public Records Division, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently https://portal.uspto.gov/pair/PublicPair. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

---

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| U.S. APPLICATION NO. | FIRST NAMED INVENTOR | ATTY. DOCKET NO. |
|---|---|---|
| 17/420,351 | Debra LOFRANCO | W4588.10010US03 |

97149
Maschoff Brennan
1389 Center Drive, Suite 300
Park City, UT 84098

| INTERNATIONAL APPLICATION NO. | |
|---|---|
| PCT/US2019/069087 | |
| I.A. FILING DATE | PRIORITY DATE |
| 12/31/2019 | 01/02/2019 |

**CONFIRMATION NO. 7734**
**371 ACCEPTANCE LETTER**

*OC000000129744198*

Date Mailed: 11/15/2021

## NOTICE OF ACCEPTANCE OF APPLICATION UNDER 35 U.S.C 371 AND 37 CFR 1.495

The applicant is hereby advised that the United States Patent and Trademark Office, in its capacity as a Designated / Elected Office (37 CFR 1.495), has ACCEPTED the above identified international application for national patentability examination in the United States Patent and Trademark Office.

The United States Application Number assigned to the application is shown above. A Filing Receipt will be issued for the present application in due course. **THE DATE APPEARING ON THE FILING RECEIPT AS THE "FILING DATE or 371(c) DATE" IS THE DATE ON WHICH THE LAST OF THE 35 U.S.C. 371 (c)(1) and (c)(2) REQUIREMENTS HAS BEEN RECEIVED IN THE OFFICE. THIS DATE IS SHOWN BELOW.** The filing date of the above identified application is the international filing date of the international application (Article 11(3) and 35 U.S.C. 363)

07/01/2021
DATE OF RECEIPT OF 35 U.S.C.
371(c)(1) and (c)(2) REQUIREMENTS

The following items have been received:

- Copy of the International Application filed on 07/01/2021
- Copy of the International Search Report filed on 07/01/2021
- Information Disclosure Statements filed on 07/01/2021
- Inventor's Oath or Declaration filed on 07/01/2021
- U.S. Basic National Fees filed on 07/01/2021
- Authorize Access to Search Results filed on 07/01/2021
- Priority Documents filed on 07/01/2021
- Power of Attorney filed on 07/01/2021
- Authorization to Permit Access filed on 07/01/2021
- Application Data Sheet (37 CFR 1.76) filed on 07/01/2021



FORM PCT/DO/EO/903 (371 Acceptance Notice)

Applicant is reminded that any communications to the United States Patent and Trademark Office must be mailed to the address given in the heading and include the U.S. application no. shown above (37 CFR 1.5)

TRAYNA M LAWRENCE

Telephone: (703) 756-1210

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 17/420,351 | 07/01/2021 | | 415 | W4588.10010US03 | 18 | 1 |

**CONFIRMATION NO. 7734**

**FILING RECEIPT**

97149
Maschoff Brennan
1389 Center Drive, Suite 300
Park City, UT 84098

OC000000129744197

Date Mailed: 11/15/2021

Receipt is acknowledged of this non-provisional utility patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF FIRST INVENTOR, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection.

**Please verify the accuracy of the data presented on this receipt.** If an error is noted on this Filing Receipt, please submit a written request for a corrected Filing Receipt, including a properly marked-up ADS showing the changes with strike-through for deletions and underlining for additions. If you received a "Notice to File Missing Parts" or other Notice requiring a response for this application, please submit any request for correction to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections provided that the request is grantable.

**Inventor(s)**

Debra LOFRANCO, Galloway, NJ;

**Applicant(s)**

Debra LOFRANCO, Galloway, NJ;

**Power of Attorney:** The patent practitioners associated with Customer Number 97149

**Domestic Priority data as claimed by applicant**

This application is a 371 of PCT/US2019/069087 12/31/2019
which claims benefit of 62/787,624 01/02/2019
and claims benefit of 62/910,144 10/03/2019

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** Yes

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 11/10/2021

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 17/420,351**

**Projected Publication Date:** 02/24/2022

**Non-Publication Request:** No

**Early Publication Request:** No
**** MICRO ENTITY ****
**Title**

PET TOY

**Preliminary Class**

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

## LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

# MULTIPLE DEPENDENT CLAIM FEE CALCULATION SHEET

Substitute for Form PTO-1360
(For use with Form PTO/SB/06)

Application Number: 17420351

Filing Date:

Applicant(s) Debra LOFRANCO

* May be used for additional claims or amendments

| CLAIMS | AS FILED | | AFTER FIRST AMENDMENT | | AFTER SECOND AMENDMENT | |
|---|---|---|---|---|---|---|
| | Indep | Depend | Indep | Depend | Indep | Depend |
| 1 | 1 | | | | | |
| 2 | | 1 | | | | |
| 3 | | 1 | | | | |
| 4 | | 1 | | | | |
| 5 | | 1 | | | | |
| 6 | | 1 | | | | |
| 7 | | 1 | | | | |
| 8 | | 1 | | | | |
| 9 | | 1 | | | | |
| 10 | | 1 | | | | |
| 11 | | 1 | | | | |
| 12 | | 1 | | | | |
| 13 | | 1 | | | | |
| 14 | | 1 | | | | |
| 15 | | 1 | | | | |
| 16 | | 1 | | | | |
| 17 | | 1 | | | | |
| 18 | | 1 | | | | |
| 19 | | | | | | |
| 20 | | | | | | |
| 21 | | | | | | |
| 22 | | | | | | |
| 23 | | | | | | |
| 24 | | | | | | |
| 25 | | | | | | |
| 26 | | | | | | |
| 27 | | | | | | |
| 28 | | | | | | |
| 29 | | | | | | |
| 30 | | | | | | |
| 31 | | | | | | |
| 32 | | | | | | |
| 33 | | | | | | |
| 34 | | | | | | |
| 35 | | | | | | |
| 36 | | | | | | |
| 37 | | | | | | |
| 38 | | | | | | |
| 39 | | | | | | |
| 40 | | | | | | |
| 41 | | | | | | |
| 42 | | | | | | |
| 43 | | | | | | |
| 44 | | | | | | |
| 45 | | | | | | |
| 46 | | | | | | |
| 47 | | | | | | |
| 48 | | | | | | |
| 49 | | | | | | |
| 50 | | | | | | |
| Total Indep | 1 | | 0 | | 0 | |
| Total Depend | 17 | | 0 | | 0 | |
| Total Claims | 18 | | 0 | | 0 | |

| CLAIMS | * | | * | | * | |
|---|---|---|---|---|---|---|
| | Indep | Depend | Indep | Depend | Indep | Depend |
| 51 | | | | | | |
| 52 | | | | | | |
| 53 | | | | | | |
| 54 | | | | | | |
| 55 | | | | | | |
| 56 | | | | | | |
| 57 | | | | | | |
| 58 | | | | | | |
| 59 | | | | | | |
| 60 | | | | | | |
| 61 | | | | | | |
| 62 | | | | | | |
| 63 | | | | | | |
| 64 | | | | | | |
| 65 | | | | | | |
| 66 | | | | | | |
| 67 | | | | | | |
| 68 | | | | | | |
| 69 | | | | | | |
| 70 | | | | | | |
| 71 | | | | | | |
| 72 | | | | | | |
| 73 | | | | | | |
| 74 | | | | | | |
| 75 | | | | | | |
| 76 | | | | | | |
| 77 | | | | | | |
| 78 | | | | | | |
| 79 | | | | | | |
| 80 | | | | | | |
| 81 | | | | | | |
| 82 | | | | | | |
| 83 | | | | | | |
| 84 | | | | | | |
| 85 | | | | | | |
| 86 | | | | | | |
| 87 | | | | | | |
| 88 | | | | | | |
| 89 | | | | | | |
| 90 | | | | | | |
| 91 | | | | | | |
| 92 | | | | | | |
| 93 | | | | | | |
| 94 | | | | | | |
| 95 | | | | | | |
| 96 | | | | | | |
| 97 | | | | | | |
| 98 | | | | | | |
| 99 | | | | | | |
| 100 | | | | | | |

# PATENT APPLICATION FEE DETERMINATION RECORD

Substitute for Form PTO-875

Application or Docket Number
17/420,351

## APPLICATION AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE($) | SMALL ENTITY FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | 80 |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | 135 |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | 200 |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 18 minus 20 = | * | | | OR | x 25 = | 0.00 |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 1 minus 3 = | * | | | | x 120 = | 0.00 |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | 0.00 |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | 0.00 |
| | | | TOTAL | | | TOTAL | 415 |

* If the difference in column 1 is less than zero, enter "0" in column 2.

## APPLICATION AS AMENDED - PART II

### AMENDMENT A

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

### AMENDMENT B

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

## CLAIMS

1. A pet toy comprising:

a body having an upper face, a lower face, a top side, a bottom side, a left side, and a right side;

at least one of the upper face and the lower face having a pad surface for adhering an abrasive material;

the body having an internal central cavity; and

at least one aperture formed in the body for accessing the internal central cavity; at least one handle extending from the group consisting of the top side, the bottom side, the left side, and the right side of the body for grasping the pet toy.

2. A pet toy according to claim 1 wherein the at least one aperture is formed in the group
consisting of the top side, the bottom side, the left side, and the right side of the body.

3. A pet toy according to claim 2 wherein the at least one handle and the at least one aperture are formed in the same side.

4. A pet toy according to claim 1 wherein the handle is arc-shaped.

5. A pet toy according to claim 3 wherein the at least one handle is arc-shaped and extends from the side on either side of the aperture.

6. A pet toy according to claim 1, the body having a pair of arc-shaped handles extending from opposite sides of the body, and at least one aperture formed in one of the opposite sides.

7 A pet toy according to claim 6, the body having an aperture formed in each of the opposite sides.

8. A pet toy according to claim 1, further including at least one guard projecting from the at least one face having a pad surface, the at least one guard projecting from the at least one face proximate the pad surface.

9. A pet toy according to claim 1 wherein the upper surface has an upper pad surface and the lower face has a lower pad surface.

10. A pet toy according to claim 1 further comprising at least one cavity for receiving a scent material.

11. A pet toy according to claim 10 wherein the at least one cavity is formed in at least one of the upper surface and the lower surface.

12. A pet toy according to claim 1 further comprising an abrasive material adhered to the pad surface.

13. A pet toy according to claim 1 wherein the handle is a string or cord.

14. A pet toy according to claim 1 further including catnip secured within the body.

15. A pet toy according to claim 12 further including netting material covering the abrasive material.

16. A pet toy according to claim 1 further including a feather adhered to the body.

17. A pet toy according to claim 1 further including a plurality of grooves sized and positioned to be contacted by pet teeth for cleaning the teeth.

18. A pet toy according to claim 17 wherein the plurality of grooves is provided on the at least one handle.



Fig. 2



Fig. 3



Fig. 4



Fig. 1



Fig. 5




Fig. 6




Fig. 7




Fig. 8

(12) INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

(19) World Intellectual Property Organization
International Bureau

(43) International Publication Date
09 July 2020 (09.07.2020)

WIPO | PCT

(10) International Publication Number
WO 2020/142502 A1

(51) International Patent Classification:
*A01K 15/02* (2006.01)

(21) International Application Number:
PCT/US2019/069087

(22) International Filing Date:
31 December 2019 (31.12.2019)

(25) Filing Language: English

(26) Publication Language: English

(30) Priority Data:
62/787,624 02 January 2019 (02.01.2019) US
62/910,144 03 October 2019 (03.10.2019) US

(72) Inventor; and
(71) Applicant: LOFRANCO, Debra [US/US]; Debra LoFranco, 35 East Mockingbird Way, Galloway, New Jersey 08205 (US).

(74) Agent: SLUZAS, Alex R.; Paul and Paul, Suite 3740, 1717 Arch Street, Philadelphia, Pennsylvania 19103 (US).

(81) Designated States *(unless otherwise indicated, for every kind of national protection available)*: AE, AG, AL, AM, AO, AT, AU, AZ, BA, BB, BG, BH, BN, BR, BW, BY, BZ, CA, CH, CL, CN, CO, CR, CU, CZ, DE, DJ, DK, DM, DO, DZ, EC, EE, EG, ES, FI, GB, GD, GE, GH, GM, GT, HN, HR, HU, ID, IL, IN, IR, IS, JO, JP, KE, KG, KH, KN, KP, KR, KW, KZ, LA, LC, LK, LR, LS, LU, LY, MA, MD, ME, MG, MK, MN, MW, MX, MY, MZ, NA, NG, NI, NO, NZ, OM, PA, PE, PG, PH, PL, PT, QA, RO, RS, RU, RW, SA, SC, SD, SE, SG, SK, SL, SM, ST, SV, SY, TH, TJ, TM, TN, TR, TT, TZ, UA, UG, US, UZ, VC, VN, ZA, ZM, ZW.

(84) Designated States *(unless otherwise indicated, for every kind of regional protection available)*: ARIPO (BW, GH, GM, KE, LR, LS, MW, MZ, NA, RW, SD, SL, ST, SZ, TZ, UG, ZM, ZW), Eurasian (AM, AZ, BY, KG, KZ, RU, TJ, TM), European (AL, AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FI, FR, GB, GR, HR, HU, IE, IS, IT, LT, LU, LV, MC, MK, MT, NL, NO, PL, PT, RO, RS, SE, SI, SK, SM, TR), OAPI (BF, BJ, CF, CG, CI, CM, GA, GN, GQ, GW, KM, ML, MR, NE, SN, TD, TG).

**Published:**
— *with international search report (Art. 21(3))*

(54) **Title:** PET TOY




Fig. 1

(57) **Abstract:** A pet toy includes surfaces for adhering abrasive material for dulling a pet's claws as the pet plays with the toy, as well as a cavity for receiving pet treats for encouraging play.

WO 2020/142502 A1

# PET TOY

## BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to devices for caring for pet animals.

3. Brief Summary of the Prior Art

Pet toys of various types are well known in the art. Some such toys permit animal foodstuffs such as disclosed in U.S. Patents 10,485,220 and 10,244,735 to be retained within the toy and to provide amusement for the animal in the interest of avoiding boredom and the destructive behavior which may sometimes accompany pet boredom. Other such toys are designed to aid with providing good care for pet animals. For example, U.S. Patent 10,477,838 discloses a pet toy having cavities for engaging an animal's teeth with scrubbing elements with the goal of improving the animal's dental hygiene, while U.S. Patent 10,206,373 discloses a double-ended pet toy adapted to clean a pet's teeth. U.S. Patents 8,561,575 and 7,011,043 disclose apparatus for dulling an animal's claws using abrasive surfaces. U.S. Patent 7,565,884 discloses a cat scratcher system for providing replaceable scatchable materials such as corrugated cardboard.

## SUMMARY OF THE INVENTION

The present invention is a pet toy comprising a body having an upper face, a lower face, a top side, a bottom side, a left side, and a right side. At least one of the upper face and the lower face has a pad surface for adhering an abrasive material. Preferably, the body has an internal central cavity. Preferably, at least one aperture is formed in the body for accessing the internal central cavity. Preferably, at least one handle extends from the group consisting of the top side, the bottom side, the left side, and the right side of the body for grasping the pet toy. Preferably, the at least one aperture is formed in the group consisting of the top side, the bottom side, the left side, and the right side of the body. Preferably, the at least one handle and the at least one aperture are formed in the same side. Preferably, the at least one handle is arc-shaped. Preferably, the at least one handle is arc-shaped and extends from the side on either side of the aperture. In one presently preferred embodiment, the body has a pair of arc-shaped handles extending from opposite sides of the body, and at least one aperture is formed in one of the opposite sides. Preferably, the body has an aperture formed in each of the opposite sides. Preferably, the pet toy further includes at least one guard projecting from the at least one face having a pad surface, with the at least one guard projecting from the at least one face proximate the pad surface. Preferably,

the upper surface of the pet toy has an upper pad surface and the lower face has a lower pad surface. Preferably, the pet toy further comprises at least one cavity for receiving a scent material. Preferably, the at least one cavity is formed in at least one of the upper surface and the lower surface. Preferably, the pet toy further comprises an abrasive material adhered to the pad surface.

## BRIEF DESCRIPTION OF THE FIGURES

Fig. 1 is a perspective view of a first embodiment of a pet toy according to the present invention.

Fig. 2 is a front elevational view of the pet toy of Fig. 1.

Fig. 3 is a side elevational view of the pet toy of Fig. 1.

Fig. 4 is a front elevational sectional view of the pet toy of Fig. 1 taken along the line 4—4 of Fig. 3.

Fig. 5 is a plan sectional view of the pet toy of Fig. 1 taken along the line 5—5 of Fig. 3.

Fig. 6 is an exploded perspective view of a second embodiment of a pet toy according to the present invention.

Fig. 7 is a top plan view of the pet toy of Fig. 6.

Fig. 8 is a top plan view of a third embodiment of a pet toy according to the present invention.

## DETAILED DESCRIPTION

The present invention provides a multi-purpose health and wellness toy with two key benefits: interactivity and healthy grooming. The pet toy of the present invention offers physical and mental entertainment with pet-centric specifications that are safe and healthy for pets. The pet toy of the present invention provides challenges for pets to use their natural instincts, and in particular, their sense of smell. Pets will have a sense of accomplishment, having engaged in an activity that is both fun and rewarding while they trim and file their own claws. The pet toy of the present invention mentally stimulates a pet's natural sense, and offers enrichment by helping satisfying instinctual needs. Further, the pet toy of the present invention supports interactive "play" with unpredictable bounces for games of fetch or tug-of-war, as well as advantageously reducing destructive chewing and fights boredom. Further, the pet toy of the present invention can be used for providing pet treats and snacks.

Referring now to the Figures in which like reference numerals represent like elements in each of the several views, there is shown in Fig. 1 a perspective view of a first embodiment of a pet toy 10 according to the present invention, as shown from above. The pet toy 10 has a generally rectangular body 20 having a generally flat

upper face 22 and a generally flat lower face 24 (Fig. 3) parallel to the upper face 22. Preferably, the pet toy 10 is sized to be appropriate to the size of the pet for which the pet toy 10 is intended, such that, for example, a pet toy 10 intended for a larger breed dog is substantially larger overall than a pet toy 10 intended for a minature breed dog. The body 20 further inclues a top side 26, a bottom side 28, as well as a left side 30 and a right side 32. A generally flat upper pad surface 40 is formed on and slightly recessed below the upper face 22 of the pet toy 10, and a corresponding generally flat lower pad surface 42 is formed on and slightly recessed below the lower face 24. The pad surfaces 40, 42 are adapted to receive an abrasive material, such as a sheet of sandpaper, emery paper, or a sandstone material, for contacting and dulling a pet's claws or nails when the pet plays with the toy. The pad surfaces 40, 42 may be provided with an adhesive coating for adhering the abrasive material, or an adhesive material, such as Velcro, for the same purpose. Alternatively, the abrasive material itself may be adherent, as by being coated with an adhesive material. Each abrasive sheet is preferably provided with a fastener surface on the underside of the abrasive sheet order to releasably adhere the abrasive sheet to the pad surface 40, 42 so that the abrasive sheets can be replaced as necessary. Both the upper face 22 and the lower face 24 are provided with guard projections 50 which extend slightly above the respective upper pad surface 40 and lower pad surface 42 to prevent the abrasive material adhering to the pad surfaces 40, 42 from contacting and marring a flat surface on which the pet toy 10 may be placed, such as a wooden floor. The pet toy 10 also includes a plurality of generally circular cavities or scent receptacles 60 formed at the corners of the upper face 22 and the lower face 24, for receiving scent materials for encouraging pets to play with the pet toy 10.

As can be seen in the front elevational sectional view of Fig. 4, the body 20 includes a central cavity 70 which is accessible through a generally round first aperture 72 formed in the top side 26 of the body 20 and a corresponding generally round second aperture 74 formed in the bottom side of the body 20, with the first aperture 72 and second aperture 74 lying on a common axis. Animal food such as pet treats can be received within the central cavity 70. Preferably, such animal food is shaped so the food can be positioned such that the animal food extends at least partially through the first aperture 72 and/or the lower aperture 74, to provide at least partial access to an animal seeking the animal food. Alternatively, or in addition, other toy elements (such as feathers or the like) can be placed in an aperture 72, 74 to encourage play. Further, the apertures 72, 74 may be plugges or closed to raise level of difficulty.

The pet toy 10 also includes a first arc-shaped handle 80 extending from the top side 26 of the body 20 and extending over the first aperture 72 and a second arc-shaped handle 82 exending from the bottom side 28 of the body 20 and extending over the second aperture 74. Either handle 80, 82 can be grasped by a pet owner while his or her pet attempts to pull the pet toy 10 away by tugging at the other handle 82, 80. Preferably, the pet toy 10 is formed from a sturdy, durable material, such as an elastic material such as a natural rubber, a thermoplastic elastomer or the like, such that the pet toy 10 resists destruction by rough play with the pet. Preferably, the pet toy 10 is formed from an FDA-approved chewable rubber material that is both safe and environmentally friendly.

A second embodiment of a pet toy 100 according to the present invention is depicted in the exploded perspective view of Fig. 6. This embodiment of the pet toy 100 is specifically adapted for use with cats. The pet toy 100 includes a plurality of layers 120, 130, 140 arranged symmetrically on either side of a generally flat base layer 110. The base layer 110 is preferably formed from a flexible, durable material, and preferably takes the form of a stylized fish, and has an upper face and a lower face. The base layer 110 includes a central portion 112 from which preferably extends a plurality of simulated appendages 114, 116. When the pet toy 100 is to be used with cats, one or more of the appendages 114, 116 may take the form of a pocket in which catnip can be inserted to motivate play. On either side of the base layer 110 an interlayer or pad 120 preferably formed from a durable, flexible material, such as cotton fabric, is provided. Each interlayer 120 is adhered to a side of the base layer 110 by suitable means, such as by a fabric glue or the like. Preferably, the base layer is adhered to one or each of the interlayers 120 in such a way as to form pockets or central internal cavities 122 in which pet treats can be inserted through apertures formed between the base layer 110 and the interlayer 120. On the exterior side of each of the interlayers 120 an abrasive sheet 130 is provided, preferably, in the case of a pet toy 100 intended for cats, with a fine grain abrasive to aid in trimming the cat's claws as the cat plays with the pet toy 100. Each abrasive sheet 130 is preferably adhered to the respective interlayer 120 with a suitable adhesive material. Alternatively, a fastener surface, such as hook-like fasteners such as Velcro, can be provided on the interlayer 120, and the abrasive sheets 130 can be provided with a surface, such as a fabric, adherent to the fastener surface. In another aspect, the abrasive sheets 130 can be permanently adhered to the interlayers 120, and the abrasive sheets 120 themselves can be covered with a layer of netting material 140 in order of catching a cat's claws in the interest of motivating further play activity with the

pet toy 100. Preferably, the aperture 102 is formed at one end of the pet toy 100 so that a cord or string 150 can be attached, thus forming a handle for the pet toy 100, so that the pet owner can engage his or her pet by dangling the pet toy 100. Preferably, a feather 160 or similar attractive object is attached to the pet toy 100 at one end of the pet toy 100, as best seen in the top plan view of Fig. 7. In a presently preferred embodiment, the pet toy 100 is formed from fabric materials, other than the abrasive sheets 120, and the various component are adhered together, such a with a non-toxic glue, and/or by sewing the layers together.

A third embodiment of a pet toy 200 according to the present invention is depicted in the top plan view of Fig. 8. While this embodiment is substantially similar to the first embodiment, the arc-shaped handles 280, 284, each includes plurality of grooves 285, preferably oriented generally perpendicular to the central axes of the handles 280, 284, and spaced apart and with a depth to permit canine teeth to contact the interior of the grooves 285 to encourage cleaning of the teeth by contacting foreign matter and the like on the teeth, such as, for example, canine molars. Alternatively, a plurality of grooves can be provided for the same purpose elsewhere on the pet toy, such as on the body of the pet toy (not shown).

Various modifications can be made in the details of the various embodiments of the apparatus of the present invention, all within the scope and spirit of the invention as defined by the appended claims.

1045770

# THE UNITED STATES OF AMERICA

TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

*January 19, 2020*

**THIS IS TO CERTIFY THAT ANNEXED HERETO IS A TRUE COPY FROM THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE OF THOSE PAPERS OF THE BELOW IDENTIFIED PATENT APPLICATION THAT MET THE REQUIREMENTS TO BE GRANTED A FILING DATE.**

**APPLICATION NUMBER:** ***62/910,144***
**FILING DATE:** ***October 03, 2019***
**RELATED PCT APPLICATION NUMBER:** ***PCT/US19/69087***

**THE COUNTRY CODE AND NUMBER OF YOUR PRIORITY APPLICATION, TO BE USED FOR FILING ABROAD UNDER THE PARIS CONVENTION, IS** ***US62/910,144***

Certified by

Under Secretary of Commerce
for Intellectual Property
and Director of the United States
Patent and Trademark Office

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 37361235 |
| **Application Number:** | 62910144 |
| **International Application Number:** | |
| **Confirmation Number:** | 2193 |
| **Title of Invention:** | MULTI-PURPOSE PET TOY |
| **First Named Inventor/Applicant Name:** | Debra LoFranco |
| **Customer Number:** | 27569 |
| **Filer:** | Alex R. Sluzas |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 2019-139 |
| **Receipt Date:** | 03-OCT-2019 |
| **Filing Date:** | |
| **Time Stamp:** | 16:52:31 |
| **Application Type:** | Provisional |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $70 |
| RAM confirmation Number | E201903G52594636 |
| Deposit Account | |
| Authorized User | |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Provisional Cover Sheet (SB16) | ProvisionalSB.pdf | 2032430<br>2a206db4edc4bbbd6a1ccae819eb8ac2827 3a8a4 | no | 3 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Specification | Disclosure.pdf | 4124037<br>1c723138f2493292aab8eefb8a51d742e92 d11be | no | 25 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | Certification of Micro Entity (Gross Income Basis) | Micro_entity_status.pdf | 74118<br>8c66f484ded41cbec7f5328eedeb195b5ef1 32e1 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 4 | Fee Worksheet (SB06) | fee-info.pdf | 29472<br>14eb52271ecbc237afd18e569548ebdad52 f3ab6 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 6260057 | | |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**
**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**
**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

Doc Code: **TR.PROV**
Document Description: Provisional Cover Sheet (SB16)

PTO/SB/16 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

## Provisional Application for Patent Cover Sheet

This is a request for filing a PROVISIONAL APPLICATION FOR PATENT under 37 CFR 1.53(c)

### Inventor(s)

Inventor 1 — Remove

| Given Name | Middle Name | Family Name | City | State | Country |
|---|---|---|---|---|---|
| Debra | | LoFranco | Galloway | NJ | US |

All Inventors Must Be Listed – Additional Inventor Information blocks may be generated within this form by selecting the **Add** button. — Add

| | |
|---|---|
| **Title of Invention** | MULTI-PURPOSE PET TOY |
| Attorney Docket Number (if applicable) | 2019-001 |

### Correspondence Address

Direct all correspondence to (select one):

| | |
|---|---|
| (●) The address corresponding to Customer Number | ( ) Firm or Individual Name |
| Customer Number | 27569 |

The invention was made by an agency of the United States Government or under a contract with an agency of the United States Government.

- ● No.
- Yes, the invention was made by an agency of the United States Government. The U.S. Government agency name is:
- Yes, the invention was under a contract with an agency of the United States Government. The name of the U.S. Government agency and Government contract number are:

Doc Code: **TR.PROV**
Document Description: Provisional Cover Sheet (SB16)

PTO/SB/16 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

**Entity Status**
**Applicant asserts small entity status under 37 CFR 1.27 or applicant certifies micro entity status under 37 CFR 1.29**

- ◯ Applicant asserts small entity status under 37 CFR 1.27
- ◉ Applicant certifies micro entity status under 37 CFR 1.29. Applicant must attach form PTO/SB/15A or B or equivalent.
- ◯ No

## Warning

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

## Signature

Please see 37 CFR 1.4(d) for the form of the signature.

| | | | |
|---|---|---|---|
| Signature | /Alex R. Sluzas/ | Date (YYYY-MM-DD) | 2019-10-03 |
| First Name | Alex | Last Name | Sluzas |
| Registration Number (If appropriate) | 28669 | | |

This collection of information is required by 37 CFR 1.51. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 8 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **This form can only be used when in conjunction with EFS-Web. If this form is mailed to the USPTO, it may cause delays in handling the provisional application.**

# Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or paten. Accordingly, pursuant to the requirements of the Act, please be advised that : (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, t o a n other federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.




Description

Scratch Square is multi-purpose health & wellness toy with two key benefits in every design; interactivity and healthy grooming. Scratch Square offers physical & mental entertainment with pet-centric specification that are safe and health for you pup. Your pet will be changed use their natural instincts (smell) and have a sense of accomplishment that is both fun & rewarding while they trim & file their OWN claws! All products are made in the USA from globally sourced FDA chewable rubber that are durable and environmentally friendly.

Key Benefits:

-Trims & files pet nails.

-Mentally simulates natural sense.

-Offers enrichment by helping satisfying instinctual needs.

-Great for stuffing with treats and snacks.

-Supports interactive "play" with unpredictable bounce for games of fetch or tug-a-war.

-Reduces destructive chewing.

-Fights boredom.

Activity: File & shortens pet claws

Material: Natural Rubber

Available Sizes and Dimensions:

Small: 1.75" H x 5.5" W x 5.5"L

Medium: 2.5" H x 7.5" W x 7.5"L

Large: 3.5" H x 9.5" W x 9.5"L

Weight:

Small- 1/2 lb.

Medium- 1 lb.

Large- 1 1/2 lbs.

Breed Size:

Breed Size- All size and breeds of Dogs & Cats.

Lifestage- Puppy, Kitten, Adult & Senior.

Purpose: Trim & file pet nails.

Advice for Use: It's important to select the proper size for your pets size. The Scratch Square should be large enough to encourage chewing from the side rather than top and bottom. If you have more than one pet in your household, select the appropriate size for the largest pet. Dog

plays differently and, since not all toys are created equal, it's best to supervised play sessions.

Caution: Inspect before giving to your pet to make sure it's whole and intact. Supervised use only. Check frequently and replace if worn or damaged.

3. De' Vora Kicks

Dicription

Changeable De' Vora Kicks are the number one choice of pet parents for filing and trimming their pets nails. Use exclusively with De' Vora Scratch Square Health & Wellness toys, De'Vora kick come in an assortment of grits for all types of pet nail types, including: coarse, file and smooth. For best trimming and filing results allow your pet to work through the sequence of grits. Scratch Square Feline Kick come in Feline smooth only to support daily use.

-(6) Assorted grits or (6) Feline fine grit.

-Made with garnet abrasive minerals.

-Sharp, clean trimming power.

-Designed to produce quality smooth finishes to pet nails.

Dimension- Made exclusively for Scratch Square and Scratch Square Feline.

Size- Scratch Square- Small, Medium and Large. Scratch Square Feline- One size fits all.

Material- Emery paper with loop backing.

Grit - Coarse, File, Smooth & Feline Fine.

Breed Size- All size and breeds of Dogs & Cats.

Lifestage- Puppy, Kitten, Adult & Senior.

Purpose: Trim & file pet nails.


CHANGEABLE "KICKS"
DE'VORAS SCRATCH PAD
FLOOR & TEETH
GUARD
TUG HANDLES
TREAT INSERT
SCENT HOLES
Scratch Square by De'Vora
De' Vora

HOME PRODUCTS SHOP ABOUT CONTACT BLOG CART (0)

Always the Highest Standard of Life

# De' Vora



As a pet enthusiast or owner, you wouldn't argue that pets are one of the best things to happen to humanity. Their attention, unconditional love and loyalty are unmatched; they deserve the best at of everything.

Now, you can get the best eco-friendly pet products that don't just entertain or groom your pets, but teach and stimulate them mentally, physically, intellectually and psychologically.

We realize what you and your pets need, so we are here to serve you both the very best way we can.

LEARN MORE

## The First Products: Introducing Scratch Square!

Scratch Square ™ is the toy that files your pet's nails.



SCRATCH SQUARE

The toy that allows your Dogs to file & trim their own nails!



KICKS

Changeable Scratch pads in multiple degrees of toughness!



STICKS

Yummy treats! Our decadent mixture of everything healthy!



SCRATCH SQUARE FELINE

The toy that allows your Cats to file & trim their own nails!



FELINE KICKS

Replaceable Scratch pad!



PET PAW BALM

Natural Paw Balm your pet wants to Steps in to!

## De' Vora is out to recreate your pets everyday experience!

## Designed for Humans and Their Pets!

De' Vora caters to the needs of pets and pet people. With pet - centric design in all of our products, ensuring owner satisfataction is equally important. We serve as a one-stop spot for all who seek to grow the bond they

have with their pets. Our collections don't just save you time, but are quite functional, too!

We offer excellent products that engage your pet and take their minds away from their everyday anxiety and boredom.

"Scratch Square engages pets, allowing them to trim their own nails while they have fun: a new and unique combination in the pet world!"
-Dr. Abby

## THE TEAM

[illegible]



### Debra LoFranco

[illegible]



### Ivan Donazet

[illegible]



### Monica Amadio

[illegible]

## Made in the USA

All De' Vora products are manufactured and designed in the United States. We believe in strengthening our community through safe and fair working conditions. Our products are built with quality that meets our high expectations. Therefore, we take pride in our ability to deliver only the best when it comes to our brand.

### Why De' Vora?

Love, they say, is reciprocal. Our pets show us love unconditionally, and they deserve even more love from us. The De' Vora team seeks to grow a community of people who love their pets and want to show loyalty, attention and care the best way they can.

Get started with the De' Vora community and pre-order Scratch Square now.
What are you waiting for?

PRE-ORDER

## We are Launching Soon!
## To have access to our Friends and Family Discount Register to our Pre-Sale invite!

40% off Retail Price

(Limited amount available)

* INDICATES REQUIRED FIELD

YOU LOVE WHAT WE ARE DOING? *

Yes
No
Not sure

# OF PET YOU IN YOUR HOME? *

EMAIL *

NAME *

First Last

I agree to receiving marketing and promotional materials *

SUBMIT

### Join the De' Vora Community and be the first to be updated on our adventure!

* INDICATES REQUIRED FIELD

EMAIL *

I agree to receiving marketing and



promotional materials.*

SUBSCRIBE TO NEWSLETTER



Copyright © 2019 De' Vora. All rights reserved.
De' Vora & Scratch Square are trademarks of De' Vora.

Terms/ Policy

De' Vora

HOME PRODUCTS SHOP ABOUT CONTACT BLOG CART (0)




# Our Products

### A Spark That Ignites Pet Engagement and Safe Grooming

Scratch Square health and wellness toys are a top-of-the-line multipurpose product crafted for proper pet engagement and topnotch grooming. Scratch Square is a product of De' Vora; a brand with a strong passion for pets and pet people.

Scratch Square serves as an emery board for pets, igniting their curiosity and activeness. It will file your pet's nails and save you the stress of nail clipping – an activity stressful for you and your pet . Simply put a treat inside and let your pet scramble for it. The graded surface of the toy will gently and automatically file their nails without inflicting any pain on your pet.

## Start Your Day Right

A quick play session each morning can do more for your pet then you realize!

**Scratch Square!**

Treat insert    Durable rubber casing

### Chewer / Bouncer

Kick boredom away and let your pet do the destructive biting without worries on your side.

### Tugger/ Rattler

Let your pet interact with his toy for so long by keeping him focused on conquering the sound.

PRE ORDER NOW

### Scratch Pads

Automatically files your pets' nails to a smooth and healthy level during interactive play.

### Catnip Stuffing

Get your pets attention by making them Happy!

### Scratch Pad

Automatically files your pets' nails to a smooth and healthy level during interactive play.

PRE ORDER NOW

### Wand & Teaser

Give your pet something irresistible to chase after!





## Why Scratch Square?

- Frequency- Pet nails need to be trimmed often. According to PetMd, Cats nails should be trimmed every 10-14 day and Dogs nails should be trimmed at least every 6 to 8 weeks. With Scratch Square, that is super easy to keep under control!
- Comfort- For both pets and their owners, clipping their nails can be uncomfortable. With Scratch Square, that worry no longer occurs!
- Aggressiveness- Pets can become aggressive after a nails trimmed injury. With Scratch Square they love accomplishing the same goal as nail trimming while playing too!



“ Scratch Square is a fun, wonderful & healthful solution for pet owners of all pets who hate having their nails cut. A safe stress free way to maintain proper nail hygiene and function. An amazing product."
~Dr. Lou Sabatini, Physician and Physical therapist

Copyright © 2019 De' Vora. All rights reserved.
De' Vora & Scratch Square are trademarks of De' Vora.

Terms/ Policy

Dé Vora

HOME PRODUCTS SHOP ABOUT CONTACT BLOG CART (0)




# CUTTING YOUR DOG'S NAILS: WHEN, WHY, AND HOW OFTEN?

6/17/2019 0 Comments



A quick guide

Are you tired of getting scratch marks all over your legs?

Dogs are excitable and like to jump on you when they're happy to see you. Sometimes, those jumps can leave you with bloody scratch marks—even if your furry friend didn't mean harm.

Just like your nails, a dog's claws grow constantly.

So, it is important for your sake, and that of your dog's that you cut them regularly.

In this blog post, we will go through everything you need to know about cutting your furry friend's nails, why it is necessary, and how often they need to be trimmed.

Let's begin!

**Snippety Snap: Why You Should Cut Your Dog's Nails**

People often ask me why they need to trim your dog's nails. After all, feral or wild dogs don't need such sort of grooming!

Wild dogs or active dogs have nails that are worn naturally down, thanks to them running around all

DEBRA LOFRANCO

Founder

CATEGORIES

All

RSS Feed

day on varying surfaces.
So, their nails don't get excessively long.
This isn't the case with your pet who's confined to your home most of the day and gets about a mile or two in terms of walks.

**What Happens If You Don't Cut Your Dog's Nails**

In this section of the blog post, I'll go through what happens if you let your dog's nails grow excessively long.

**Ouchie When He Walks: Painful feet**

If your dog has long toenails, the chances are that the simple act of walking may be painful for him.

**How?**
Well, when your dog's walking on the concrete sidewalk or your kitchen floor, the surface pushes your furry friend's nails into the nail bed which can be painful. Not just that, the pressure can even force the toe to twist on the side!
And, they can even get infected!

**Joint pain and Arthritis**
Your dog's posture changes when he has long nails to avoid the pain.
This stresses your dog's joints.
If this goes on for the long term, in extreme cases, your dog can undergo joint problems and may even develop arthritis!

**How to Know That it's Time to Cut Your Dog's Nails?**

How often you should cut your dog's nails depends on various factors such as the breed, age, level of activity, etc.
Experts suggest that you should trim your dog's nails at least once in 6 to 8 weeks.
However, if you can hear your dog's nails tapping on a hard surface while he walks, it's time to give them a trim!
Keep in mind that:
- The claws shouldn't extend over your dog's pad
- They shouldn't touch the ground when he's standing up

The best way to ensure that your pal's paws are protected is by keeping a constant eye on the length of your dog's nails.

**In Conclusion**

You shouldn't avoid cutting your dog's nails just because your dog doesn't like it!
As a pet owner, it is one of the things that you've gotta do to keep your furry friend safe and healthy in the long run.

Do you have any questions? Let me know in the comments

# WHY YOUR PET NEEDS QUALITY TIME WITH YOU.

5/17/2018 0 Comments





**Do you love the feeling of coming home to the wagging tail and excited jumps of your pet?**

There's unarguably nothing compared to the companionship of a loving pet.

Most of us pet lovers and owners may have come across information about how having a pet can be quintessentially healing and beneficial for our physical and mental well being.

But did you know our presence, bonding, and TLC can be instrumental to your pet's well being too?

About a fraction of your days time is indispensable for your pets psychological well being! This blog post is dedicated to highlighting the importance of bonding with your pet and how you can achieve it in the best ways possible.

Read on for a successful pet relationship!

**Why Your Pet Needs To Be Your Priority**

It's not a task.

We all love to spend time with our furry balls of happiness. But understanding why it is so crucial for their health and wellness may help you take conscious steps towards finding time for your four-legged buddies.

This section of the blog post will do just that!

Your vet may be working miracles by keeping unwanted pests and diseases away from your pet, but you'd never come to like visiting them.

Guess what!?

The more physically available you are for your pet, the lesser are the chances of your pet to spend vet time.

Cats and dogs are highly mobile creatures, and sitting in one place is not good for their health. Even 15-20 minutes of exercise can keep cardiovascular diseases at bay and also improve your pet's flexibility and muscle tone.

Not only that, regular mental exercise is imperative for your pet's cognitive health.

Playing games that will make their brain work will keep them active and anxiety free. They tend to become less destructive and more organized.

Spending quality time with your furry friend does wonders to their psychological well being.

While dogs are social creatures, they consider you as the leader of their pack. Cats consider you as a constant anchor in their life. Being there for your pets can bring them peace and sheer joy

**Here's How You Can Build a Healthy Relationship With Your Furry Friend**

Playtime!

Walking your dog is by far the best method to exercise and bond with it.

Studies show that your dog ideally needs walks, twice a day. While cats don't prefer walking, engaging them with simple games like laser pointers, toy mice, or other indoor games is helpful.

Dogs are sporty animals and love adventure.

Outdoor play sessions like running, fetching, hide and seek, and even swimmingcan do wonders with their health and happiness. Indoor bonding ways like playing tug of war, watching tv together or even reading with them cuddled with you can make your pets love you even more.

Did you know that bathing your pet can help you bond with your furry friend?
Bathing your four-legged friend helps you build trust. Usually, the mother grooms her children so, when you're grooming your dog, he feels nurtured and loved. It'll help you create a long-lasting bond!

**Be There...**
Your presence can impact your pet's mental health immensely.
Running errands with them, touching and massaging them, tickling them and giving them a few moments of extra attention is what they crave.

You are more important to them than you can ever understand.

Surely you have some incredible moments shared with your pets, share them with us in the comments section!

Like 0 Tweet

## DIFFERENT TOYS TO SPICE UP YOUR PET'S PLAY SESSIONS

6/17/2019 0 Comments

[redacted]

*Are you looking to buy some awesome toys for your furry friend?*

You are the best playmate your pet can have. Besides your companionship, there are bountiful of toys that can make your and your pet's play sessions fun and exciting.

When such a wide range is available, and you want nothing but the best for your pet, it is natural to get confused!

This blog post will help you clear all confusion. Read on to find out which toy will be the right pick for you!

What the Variety Has To OfferIn this section of the blog, I will go through some of the best types of toys for your pet available on the market.

Let's take a look.
1. Chew ToysWhether it is your hand or random furniture at home, your furry best friend will always need something to chew on!

Half-chewed and discarded things at your house may be a cause of concern for you, but what's greater interest is how badly they can affect your pet's health.

While some may think its a luxury, chew toys have enough benefits to prove it is an essential toy every pet deserves. When a single toy can keep your pet engaged, keep them away from chewing harmful and toxic substances, keep things at home safe, and also take care of your pet's oral hygiene.

*Wouldn't every pet owner want to have one?*

Moreover, they are long-term investments as the indestructible ones last a long time.

Check them out here.

2. Tug ToysTug toys come in a large variety.

Some are in the form of soft toys that even human babies have fun playing with, while others, newer and better-designed ones are S-shaped made from a pet-friendly form or plastic.

And, the common myth about playing tug with your furry friend makes them aggressive is just not true at all.

It stimulates your dog's body and mind and also keeps them healthy!

These toys come in attractive shapes and colors to help distract your dog whenever needed and keep them focused on their plaything.

You can check some tug toys out here.

3. Throw ToysOne of the most commonly played games with dogs is fetch.

Cliche, right?

Throw toys are highly instrumental in keeping your pet active and provide them a good exercise. They generally come in the form of bones or balls that attract your dog.

Some of the top-selling toys include the snowball or the bouncy ball.

You can check colorful, indestructible options here.

4. Interactive ToysInteractive toys are one of the most exciting, new generation toys for your pet, that can keep it occupied and well, addicted.

These are games that can not only entertain your four-legged friend but also exercise their mind and help increase their IQ. They are fantastic as they help ease the stress in dogs, hone their problem-solving skills, and some can also dispense treats!

You can check the variety out here.

5. Treat Dispensing ToysOne of the most loved toys by pets and owners alike.

Pets love them because they can ward off hunger as well as boredom with these toys with surprises in the form of treats. Owners love them because these toys can play a pivotal role in treat training their pets.

These also stimulate pet minds as they have to figure out how to obtain that treat.

Available in different shapes, difficulty levels, sizes, and colors browse through these fantastic helping toys here.

6. Soft Comfort ToysThese are soft toys that are stuffed with dog-friendly materials as they can be put to use in several ways.

Soft toys can be used for different purposes.

These can be used either as toys to carry around and cuddle with or as preys that they can kill, bite,

and remove frustration on. Smart comfort toys also have comforting features like heart beating sound or warmth, that can further calm your pet.

Find these exciting toys here.

All in AllWhile researching about all these toys, you must have come across toys that perform more than one of these functions.

Multi-function toys are typically those that can provide entertainment, treats, mind stimulation, and activity for your pets and therefore, are ideal and affordable. Some picks that you can try out are:

- Multifunction Pet Bowl Feeder Toy
- Natural Essence Multi-Purpose
- Multifunction Cat Toys With Bells and Mouse

All in all, you have to make sure you take care of what materials your toys are made of.

While they can effectively kill your pet's boredom, toys can also cause harm if it has toxins. Make sure you clean these toys regularly, and your pet gets enough time outdoors to keep them physically fit!

*If you have any confusion or queries regarding pet toys and what is ideal for your pet, feel free to drop them down in the comments section, and we'll get back to you soon!*

## HERE'S YOUR GUIDE TO CHOOSING THE RIGHT TOY FOR YOUR PET!

6/17/2019 0 Comments




What if your pet's favorite chew toy is secretly adding toxins to his body?
This is one of the scariest situations for pet owners!
When you get something for your pet to play with, you trust the manufacturer for using nothing but the best for your dog. But, some companies care more about their profits than about your pet's health!

We know you care for your four-legged friend and would want the best for him, but choosing the best may be a tricky thing to do!
Especially when you are unaware.

That's what makes this blog a must-read for you. This blog post is going to take you through the various materials that are used in dog toys and which ones are the best for your adorable little pets.

**Pet-Friendly Materials for Your Furry Friends' Toys**
Toys and their descriptions can be misleading.
Often those claiming to be pet-friendly in use can still have pretty unfriendly substances that went in

the making, thereby making it harmful for your sensitive pets. So, this section of the blog post will dive straight into what materials are best for your pet toys.

When searching for the right material, you would want a safe and durable option.
Here are some pet-friendly materials:

- **Zogoflexis** a sturdy rubber-plastic blend that is durable and non-toxic, a fantastic choice for your pet's chewy needs
- **AZO-free dyes are safe and non-toxic**, so make sure of what that attractive color is made of
- Soft toys filled with **strips of repurposed fabrics or recycled plastic bottles**are durable and safe and will prevent your pets from ingesting and choking. These are also wash-proof so you can stick them in the machine whenever they're dirty
- Rope Toys made of **natural materials**like 100% organic cotton yarn, organic hemp or organic wool would be the best picks which will require little maintenance

Now, let's take a look at materials that are not safe for your furbaby.

**Things You Need to Steer Clear Of!**
Coming to the materials that should be avoided at all costs, you'll get tired counting; there are as many!
However, this section of our blog will help you with that.

When looking out to avoid materials, there's a straightforward tip to follow: **Any material that is soft enough to be shredded to pieces is harmful to your curious pets.**
We need to understand that as unattractive as it may be to us, pets don't care.
If it fits their mouth, it will be down their throat within minutes, and soon you'd be running up and down to find a way to ease that blockage in your pet's GI tract.

Pets often tend to play with old socks, ragged jeans, or other things they find challenging to chew and shred. If you find them enjoying their time with these, be warned, you'll soon find parts of your bed getting torn and ingested.

On the other hand, toys made of sturdy materials like wood and metal can be another danger as your pets can easily bleed or hurt themselves.
And, bleeding gums are the last thing you want your dog to have!
Moving on to the ready-made toys you pick off the market, do thorough research before you spend.
Make sure these products don't contain the following:

- PVC
- Phthalates
- BPA
- Lead
- Chromium
- Melamine
- Arsenic
- Bromine
- Formaldehyde

These toxic chemicals can hide in the paint or coloring used and can cause extreme sickness in your pet.

**That's How You Do It!**
With the above guide, you'll be able to shop for the best toys for your pets safely. But, in case you are still confused, you can do either of the following:

- Buy products only that are made of anti-bacterial and anti-microbial hemp or primarily made of natural rubber. These are strong, durable, and toxin-free, so you don't have to keep worrying each time your pet wants to chew through its toys.
- Your second option is to check the Archived Pet Supply Data to see if your product has been tested [illegible]

for toxins. You can also check the FDA list of withdrawn products that were unsafe, to make sure what you are buying is the right choice.

That's it. That's how you can be a super mom/dad to your super pet and keep them safe and happy!
If you have any other suggestions to add to the list, we'll be glad to read them in the comments section!

## JUNE 17TH, 2019

6/17/2019 0 Comments




Give your furry friend the treat that he deserves!
And only what he deserves;
Nothing more, nothing less.
That's Treat training summed up for you!

You must have come across the method of treat training while researching ways in which you can introduce some manners and discipline to your furry bundle of joy.
Treat training is one of the most commonly used methods to train pets in a friendly way.
However, before you set on your mission, you need to not only have patience, consistency, and lots of understanding for your pet, but also a guide that can help you achieve your mission.
This blog post will help you with treat training and how it can make your and your pet's life easier.

**Here's How Treat Training Works**
So, what is treat training, anyway?
Treat training is teaching your pet to do the 'right' things by rewarding them for their deed.
Technically speaking, it is based on positive reinforcement, which enhances the chances of that behavior being repeated.
For example, your puppy, who regularly pees wherever he wanders, understands your cues and pees outside. You get impressed and offer him his favorite treat, as a reward.
This treat acts as the positive reinforcement that your puppy needs to repeat that behavior, in this case, peeing outside.
Positive reinforcement can also be in the form of letting your puppy play with his favorite toy, play sessions, praise, and affection.
Your furry pal must know that his behavior is appreciated.
In this manner, you can not only fix their behavior but guide their schedules and teach them a variety of 'good boy' behaviors!

**Why Dogs Love Treat Training**
It's no news that dogs love food!
They love eating so much that they pick on anything that looks interesting to them and have a taste! In fact, my dog once found his leash appealing, and swallowed it whole when I wasn't around.
Of course, I had to take him to the emergency room, and he learned his lesson.
However, when we offer them tasty food to do something, it appears to them, like.... what easy money seems to us!

Dogs are sensitive to their owners and want to comply with anything that makes you happy. But learning new things is a gradual process and creates stress.
While other forms of training may add to that stress, treat training feels like a rewarding game! In this way, while getting trained, you smartly reducing most of the stress.
Interestingly, treat training can also build your dog's IQ.
Making them use their brain to find their treats or using treat dispensing toys of various difficulty levels can make this task cognitively beneficial for your pet!

**The Best Part**
While the primary benefits of this training is them getting effectively trained and doing whatever you ask them to do, for most pet lovers, another highlighted benefit is how they become fiercely loyal to you.
For them, you give them immense happiness, and they would strive to do all it needs to make you happy!
If you have an adorably silly dog who got disciplined from this training, do share some personal tips and advice with us in the comments!

## WHY TRAINING IS CRUCIAL FOR YOUR PET'S WELLNESS

6/17/2019 0 Comments




Have you thought about how your pet's training can affect his health?
When training hours in the gym and school can benefit our health and wellbeing, if our pet's discipline training can benefit their health, is a question to ponder on.

For pet people and owners, love is unconditional.
I'm sure most of us love our pets irrespective of how disciplined they might be. For this reason, we may get annoyed if our puppy pees on an expensive carpet, but shrug it off because he's too adorable!

But, what if we come to understand that pet's training can have significant health implication, mostly positive?
Wouldn't we want to take that step towards our pet's wellness?
So here's the guide you need!

This blog post will clear the air about your furry friend's training and its relationship with their health.

**What Kind Of Training Is the Best?**
There are several ways to train your pet.
These are broadly classified under:
* Positive reinforcement
* Negative reinforcement
* Isolation

All these techniques are successful in disciplining your pet and teaching them ideal ways to live their

lives.

However, positive reinforcement is one of the most pet-friendly techniques that not only teach your furry friend a lot but also keeps them happy and fosters healthy pet-owner relationships.
On the other hand, negative reinforcement includes punishments and isolating your pet comes on the harsher side of punishments.
Your attention is, after all, what they crave the most!

**Why Dog-Friendly Training is Also Health Friendly!**
Dog-friendly training refers to a reward based training where for every 'good' or desired thing that your pet does, you reward them for it.
The reward is mainly in the form of their favorite treats or some awesome cuddles.

Training also incalculates schedules into your furry friend's daily habits.
A good sleeping and eating schedule means that your pet is habituated to proper and timely meals as well as good hours of rest. Also, adequate exercise and playtime included in their routine keep your pet active and energetic.
This will not only be good for their physical fitness but also mental well being.
Well rested and well fed-pets are calm.

Training also means that your furry friend will get accustomed to hygiene and understand the right places to poop or pee.
This is one of the most important health benefits for you and your pets!
It is not always possible to be there to clean your pets' waste. By the time you get it cleaned, your pet may already have been exposed to germs and other dangerous bacteria.
Teaching your pet good manners has more benefits than you think.
Sure, you can post cute videos on the internet, you can also feel proud among relatives, but most importantly, you can drive away a lot of anxiety from your pet's life.

Not knowing what to do, what is expected of them, or how they should behave in unfamiliar settings can cause stress and anxiety in a pet. A well-trained pet will know that their owner would be happy with certain behaviors and will stick to that behavior.
This will not only make you happy but will give him peace of mind.

**Healthy and Happy**
Whether you take professional help for its training or you do it yourself gradually, the ultimate aim is for your pet to be healthy, happy, and the adorable little thing it is!
At the end, who doesn't want a clean, obedient and trained pet?

If you have some exciting pet training stories to share, our comments section is your platform! Keep them coming...

## WHAT DIFFERENT BEHAVIORS SAY ABOUT YOUR PETS' OVERALL HEALTH AND WELLNESS

6/17/2019 0 Comments



When pets come to mind, a very cute happy, goofy buddy that loves to play and stay right by our side

is what most people think about. Most people forget that these pets are just like us in so many ways. Dogs, cats, bunnies, and other pets, all have the tendency to fall short of good health sometimes and they can even suffer from emotional issues like anxiety, stress, and, even depression, in the worst of cases.

It would have been easier if our darling pets could speak and talk to us about their symptoms, but the powers that be denied them the ability to talk. Now, the only way they can get our attention to tell us if there is something wrong is by acting out and displaying certain behavior. This article aims to shed some light on some of these behaviors, what they say about our pet's overall health and why training your pet is important.

If you notice any of the listed behaviors in your pets, then consider them signals that something isn't right with the mood and emotions of your pet:

1. Restlessness.
2. Excessive drooling.
3. Aggression towards strangers or other animals.
4. Destructive behavior like chewing furniture.
5. Abnormal Urination not connected to marking.
6. Suddenly forgetting where to poop.
7. Inability to focus on a task (like a game of fetch)

These could mean that your pet is trying to release some pent-up stress. It is most likely a bout of anxiety or fear. These symptoms could also be pointers to Cushing's disease, Cognitive Dysfunction (Alzheimer's Disease), rabies or even post-vaccination.

In other news, a damaged liver in some pets like dogs can lead to some abnormal neurological behaviors like circling, pacing, or even sudden behavioral changes. This happens if the liver is unable to function correctly. If it can't filter out toxins correctly, those toxins can get into the bloodstream and affect the neurological systems of a dog. Ear infections can also cause circling.

Note that, a housebroken reliable dog who suddenly begins to pee inside the house probably has a health problem! If your pet urinates more frequently than usual, even in the correct location, that could be a sign of a kidney, bladder or a urinary tract infection, or dementia in an older pet. Eating poop excessively could be a sign of a nutritional deficiency.

**What to do?**
These strange behaviors are pointers to potential condition. It becomes imperative to get cues from their behavior and act by making a decision to correct the underlying problem. A combo of tactics to alleviate anxiety, stress, and nutritional deficiencies work better than just one method, so you should always ensure that your dog is getting enough exercise and is eating a balanced diet.

Home training is very important in putting their behavior in check, this way, you know when they're acting weirdly or strangely. However, if at any point, you feel that your pet's behavior is getting out of your control, waste no time in consulting a behavioral therapist. Pets, like dogs, are pack animals and need a pack leader to listen to and obey.
Before taking your pet's matters into your own hands, seek professional advice on what to do about their negative behavior. Visit a professional vet and receive proper medical advice. Pay close attention to your pet's health and wellness!

Like 0 Tweet

Copyright © 2019 De' Vora. All rights reserved.
De' Vora & Scratch Square are trademarks of De' Vora.

Terms/ Policy


SECTION A-A
QTY:
CUST. NO:

WIPO
WORLD
INTELLECTUAL PROPERTY
ORGANIZATION

# DOCUMENT MADE AVAILABLE UNDER THE PATENT COOPERATION TREATY (PCT)

| | | |
|---|---|---|
| International application number: | | **PCT/US2019/069087** |
| International filing date: | | **31 December 2019 (31.12.2019)** |
| Document type: | | **Certified copy of priority document** |
| Document details: | Country/Office: | **US** |
| | Number: | **62/910,144** |
| | Filing date: | **03 October 2019 (03.10.2019)** |
| Date of receipt at the International Bureau: | | **20 January 2020 (20.01.2020)** |

Remark: Priority document submitted or transmitted to the International Bureau in compliance with Rule 17.1(a),(b) or (b-*bis*)

34, chemin des Colombettes
1211 Geneva 20, Switzerland
www.wipo.int

2019-168

1/4

**PCT REQUEST**

Original (for **SUBMISSION** )

| | | |
|---|---|---|
| **0** | **For receiving Office use only** | |
| **0-1** | International Application No. | PCT/US19/69087 |
| **0-2** | International Filing Date | 31 December 2019 (31.12.2019) |
| **0-3** | Name of receiving Office and "PCT International Application" | PCTINTERNATIONAL RO/USAPPLICATION |

| | | |
|---|---|---|
| **0-4** | **Form PCT/RO/101 PCT Request** | |
| 0-4-1 | Prepared Using | PCT-SAFE [EFS-Web mode]<br>Version 3.51.086.262 MT/FOP<br>20190101/0.20.5.24 |
| **0-5** | **Petition**<br>The undersigned requests that the present international application be processed according to the Patent Cooperation Treaty | |
| **0-6** | **Receiving Office (specified by the applicant)** | United States Patent and Trademark Office (USPTO) (RO/US) |
| **0-7** | **Applicant's or agent's file reference** | 2019-168 |
| **I** | **Title of Invention** | PET TOY |
| **II** | **Applicant** | |
| II-1 | This person is | Applicant and inventor |
| II-2 | Applicant for | All designated States |
| II-4 | Name (LAST, First) | LOFRANCO, Debra |
| II-5 | Address | Debra LoFranco<br>35 East Mockingbird Way<br>Galloway, New Jersey 08205<br>United States of America |
| II-6 | State of nationality | US |
| II-7 | State of residence | US |
| II-8 | Telephone No. | 703-401-3784 |
| II-10 | e-mail | debralofranco@gmail.com |

| | | |
|---|---|---|
| **IV-1** | **Agent or common representative; or address for correspondence**<br>The person identified below is hereby/ has been appointed to act on behalf of the applicant(s) before the competent International Authorities as: | Agent |
| IV-1-1 | Name (LAST, First) | SLUZAS, Alex |
| IV-1-2 | Address | Alex R. Sluzas<br>Paul and Paul<br>Suite 3740<br>1717 Arch Street<br>Philadelphia, Pennsylvania 19103<br>United States of America |
| IV-1-3 | Telephone No. | 2155684900 |
| IV-1-4 | Facsimile No. | 2155675057 |
| IV-1-5 | e-mail | info@paulandpaul.com |
| IV-1-5(a) | E-mail authorization<br>The receiving Office, the International Searching Authority, the International Bureau and the International Preliminary Examining Authority are authorized to use this e-mail address, if the Office or Authority so wishes, to send notifications issued in respect of this international application: | as advance copies followed by paper notifications |
| IV-1-6 | Agent's registration No. | 28669 |
| **V** | **DESIGNATIONS** | |
| **V-1** | **The filing of this request constitutes under Rule 4.9(a), the designation of all Contracting States bound by the PCT on the international filing date, for the grant of every kind of protection available and, where applicable, for the grant of both regional and national patents.** | |
| **VI-1** | **Priority claim of earlier national application** | |
| VI-1-1 | Filing date | 02 January 2019 (02.01.2019) |
| VI-1-2 | Number | 62/787,624 |
| VI-1-3 | Country or Member of WTO | US |
| **VI-2** | **Priority claim of earlier national application** | |
| VI-2-1 | Filing date | 03 October 2019 (03.10.2019) |
| VI-2-2 | Number | 62/910,144 |
| VI-2-3 | Country or Member of WTO | US |
| **VI-3** | **Priority document request**<br>The receiving Office is requested to prepare and transmit to the International Bureau a certified copy of the earlier application(s) identified above as item(s): | VI-1<br>VI-2 |

| | | | |
|---|---|---|---|
| **VI-4** | **Incorporation by reference :**<br>where an element of the international application referred to in Article 11(1)(iii)(d) or (e) or a part of the description, claims or drawings referred to in Rule 20.5(a) is not otherwise contained in this international application but is completely contained in an earlier application whose priority is claimed on the date on which one or more elements referred to in Article 11(1)(iii) were first received by the receiving Office, that element or part is, subject to confirmation under Rule 20.6, incorporated by reference in this international application for the purposes of Rule 20.6. | | |
| **VII-1** | **International Searching Authority Chosen** | **Federal Service for Intellectual Property (Rospatent) (Russian Federation) (ISA/RU)** | |
| **VIII** | **Declarations** | Number of declarations | |
| VIII-1 | Declaration as to the identity of the inventor | – | |
| VIII-2 | Declaration as to the applicant's entitlement, as at the international filing date, to apply for and be granted a patent | – | |
| VIII-3 | Declaration as to the applicant's entitlement, as at the international filing date, to claim the priority of the earlier application | – | |
| VIII-4 | Declaration of inventorship (only for the purposes of the designation of the United States of America) | – | |
| VIII-5 | Declaration as to non-prejudicial disclosures or exceptions to lack of novelty | – | |
| **IX** | **Check list** | Number of sheets | Electronic file(s) attached |
| IX-1 | Request (including declaration sheets) | **4** | ✓ |
| IX-2 | Description | **5** | – |
| IX-3 | Claims | **2** | – |
| IX-4 | Abstract | **1** | ✓ |
| IX-5 | Drawings | **2** | – |
| IX-7 | TOTAL | **14** | |
| | **Accompanying Items** | Paper document(s) attached | Electronic file(s) attached |
| IX-8 | Fee calculation sheet | ✓ | – |
| **IX-20** | **Figure of the drawings which should accompany the abstract** | **1** | |
| **IX-21** | **Language of filing of the international application** | **English** | |

2019-168

4/4

**PCT REQUEST**

Original (for **SUBMISSION** )

| | | |
|---|---|---|
| **X-1** | **Signature of applicant, agent or common representative** | /Alex R. Sluzas Reg. No. 28669/ |
| **X-1-1** | Name (LAST, First) | SLUZAS, Alex |
| **X-1-3** | Capacity (if such capacity is not obvious from reading the request) | |

## FOR RECEIVING OFFICE USE ONLY

| | | |
|---|---|---|
| **10-1** | **Date of actual receipt of the purported international application** | 31 December 2019 (31.12.2019) |
| **10-2** | **Drawings:** | |
| 10-2-1 | Received | |
| 10-2-2 | Not received | |
| **10-3** | **Corrected date of actual receipt due to later but timely received papers or drawings completing the purported international application** | |
| **10-4** | **Date of timely receipt of the required corrections under PCT Article 11(2)** | |
| **10-5** | **International Searching Authority** | ISA/RU |
| **10-6** | **Transmittal of search copy delayed until search fee is paid** | |

## FOR INTERNATIONAL BUREAU USE ONLY

| | | |
|---|---|---|
| **11-1** | **Date of receipt of the record copy by the International Bureau** | |

1045769

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

*January 19, 2020*

**THIS IS TO CERTIFY THAT ANNEXED HERETO IS A TRUE COPY FROM THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE OF THOSE PAPERS OF THE BELOW IDENTIFIED PATENT APPLICATION THAT MET THE REQUIREMENTS TO BE GRANTED A FILING DATE.**

**APPLICATION NUMBER:** ***62/787,624***
**FILING DATE:** ***January 02, 2019***
**RELATED PCT APPLICATION NUMBER:** ***PCT/US19/69087***

**THE COUNTRY CODE AND NUMBER OF YOUR PRIORITY APPLICATION, TO BE USED FOR FILING ABROAD UNDER THE PARIS CONVENTION, IS** ***US62/787,624***

UNITED STATES PATENT AND TRADEMARK OFFICE
DEPARTMENT OF COMMERCE

Certified by

Under Secretary of Commerce
for Intellectual Property
and Director of the United States
Patent and Trademark Office

| Electronic Acknowledgement Receipt | |
|---|---|
| **EFS ID:** | 34741628 |
| **Application Number:** | 62787624 |
| **International Application Number:** | |
| **Confirmation Number:** | 3108 |
| **Title of Invention:** | MULTI-PURPOSE PET TOY |
| **First Named Inventor/Applicant Name:** | Debra LoFranco |
| **Customer Number:** | 27569 |
| **Filer:** | Alex R. Sluzas |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 2009-001 |
| **Receipt Date:** | 02-JAN-2019 |
| **Filing Date:** | |
| **Time Stamp:** | 16:57:50 |
| **Application Type:** | Provisional |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $70 |
| RAM confirmation Number | 010319INTEFSW16581900 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Provisional Cover Sheet (SB16) | ProvisionalSB.pdf | 2032466<br>f476efad42df76424680d6cf73bde8a8587aa4ed | no | 3 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Certification of Micro Entity (Gross Income Basis) | Micro_entity_status.pdf | 69887<br>8eb3772ec69426002ef11a8c97b9680c2c596af4 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | Specification | 2019_01_02_16_56_10.pdf | 624879<br>bc43a54e11c54234a19ae35605da0ecef5200038 | no | 4 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 4 | Fee Worksheet (SB06) | fee-info.pdf | 29474<br>4f44407d516b5772a49b973050d6fc4bacc813dd | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 2756706 | | |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**
**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**
**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

Doc Code: **TR.PROV**
Document Description: Provisional Cover Sheet (SB16)

PTO/SB/16 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# Provisional Application for Patent Cover Sheet

This is a request for filing a PROVISIONAL APPLICATION FOR PATENT under 37 CFR 1.53(c)

## Inventor(s)

Inventor 1 | Remove

| Given Name | Middle Name | Family Name | City | State | Country i |
|---|---|---|---|---|---|
| Debra | | LoFranco | Galloway | NJ | US |

All Inventors Must Be Listed – Additional Inventor Information blocks may be generated within this form by selecting the **Add** button. | Add

| | |
|---|---|
| **Title of Invention** | MULTI-PURPOSE PET TOY |
| Attorney Docket Number (if applicable) | 2019-001 |

## Correspondence Address

Direct all correspondence to (select one):

| | |
|---|---|
| ◉ The address corresponding to Customer Number | ○ Firm or Individual Name |
| Customer Number | 27569 |

The invention was made by an agency of the United States Government or under a contract with an agency of the United States Government.

- ● No.
- Yes, the invention was made by an agency of the United States Government. The U.S. Government agency name is:
- Yes, the invention was under a contract with an agency of the United States Government. The name of the U.S. Government agency and Government contract number are:

Doc Code: **TR.PROV**
Document Description: Provisional Cover Sheet (SB16)

PTO/SB/16 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

**Entity Status**
**Applicant asserts small entity status under 37 CFR 1.27 or applicant certifies micro entity status under 37 CFR 1.29**

- ◯ Applicant asserts small entity status under 37 CFR 1.27
- ◉ Applicant certifies micro entity status under 37 CFR 1.29. Applicant must attach form PTO/SB/15A or B or equivalent.
- ◯ No

## Warning

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

## Signature

Please see 37 CFR 1.4(d) for the form of the signature.

| | | | | | |
|---|---|---|---|---|---|
| Signature | /Alex R. Sluzas/ | | | Date (YYYY-MM-DD) | 2019-01-02 |
| First Name | Alex | Last Name | Sluzas | Registration Number (If appropriate) | 28669 |

This collection of information is required by 37 CFR 1.51. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 8 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **This form can only be used when in conjunction with EFS-Web. If this form is mailed to the USPTO, it may cause delays in handling the provisional application.**

# Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or paten. Accordingly, pursuant to the requirements of the Act, please be advised that : (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, t o a n other federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

Purpose: to shorten and file pet nails; Dog emery board; dog nail file.

Objective: Interactive animal DIY Multipurpose toy: playing and grooming.Durability (can be applied to all toy surface, toy binds, scratch plates……)
Scratch Square is a sand/stone graded surface that is inlayed in hard rubber objects of different shapes and sizes and receded about 1/2 cm. Its intent is to file and shorten pet nails during interactive play.

The sand/ stone graded surface can be produced in different "weights" ranging from 60-120 depending on the desired result. Hight weight are more ruff; lower weight are designed for daily use.

Each shape will dispense a dog treat during inter active play. Sizes will be compatible with animal size. Please see images of the Ball, box, stick and video of use attached below.

Animal benefits: Intelligence! Physical & Mental activity (Entertaining, sharping the mind of the animal, use of natural instincts (smell) or a sense of accomplishment, self rewarding, fun, release energy and crate training. Product also aids in release of pet anxiety, and boredom.

Human benefits: rip clothing, scratched skin, reduction of cost and travel inconvenience or fear of injury. in add-on to having a happy pet.
Current market options: Groomer, vet, DIY clippers and nail grinder

Market flaws: cost, travel, hesitation for error. Micro economical factors: More people are getting dogs, millennial single family home with dogs, market trends in humanization of pets (doggie door, video treat dispenser.








Box
(Front)
(Back)
(Top)

WIPO
WORLD
INTELLECTUAL PROPERTY
ORGANIZATION

# DOCUMENT MADE AVAILABLE UNDER THE PATENT COOPERATION TREATY (PCT)

| | | |
|---|---|---|
| International application number: | | **PCT/US2019/069087** |
| International filing date: | | **31 December 2019 (31.12.2019)** |
| Document type: | | **Certified copy of priority document** |
| Document details: | Country/Office: | **US** |
| | Number: | **62/787,624** |
| | Filing date: | **02 January 2019 (02.01.2019)** |
| Date of receipt at the International Bureau: | | **20 January 2020 (20.01.2020)** |

Remark: Priority document submitted or transmitted to the International Bureau in compliance with Rule 17.1(a),(b) or (b-*bis*)

34, chemin des Colombettes
1211 Geneva 20, Switzerland
www.wipo.int

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (02-18)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | | |
|---|---|---|
| | Application Number | |
| | Filing Date | |
| | First Named Inventor | Debra LOFRANCO |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | W4588.10010US01 |

| U.S.PATENTS | | | | | | Remove |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | 10485220 | | 2019-11-26 | VALLE | |
| | 2 | 10244735 | | 2019-04-02 | WOLFE JR. | |
| | 3 | 10477838 | | 2019-11-19 | DERTSAKYAN | |
| | 4 | 10206373 | | 2019-02-19 | FINCHER | |
| | 5 | 8561575 | | 2013-10-22 | RUFFIN | |
| | 6 | 7011043 | | 2006-03-14 | DIEP | |
| | 7 | 7565884 | | 2009-07-28 | LAMSTEIN | |
| | 8 | 8997695 | | 2015-04-07 | RIDING | |

If you wish to add additional U.S. Patent citation information please click the Add button. Add

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| | Application Number | |
| | Filing Date | |
| | First Named Inventor | Debra LOFRANCO |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | W4588.10010US01 |

**U.S.PATENT APPLICATION PUBLICATIONS** Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 20150257366 | A1 | 2015-09-17 | GICK | |
| | 2 | 20160255812 | A1 | 2016-08-09 | WOLFE JR. | |
| | 3 | 20040194731 | A1 | 2004-10-07 | LINEBERRY | |

If you wish to add additional U.S. Published Application citation information please click the Add button. Add

**FOREIGN PATENT DOCUMENTS** Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2018096524 | WO | A1 | 2018-05-31 | COOPERSMITH | | |
| | 2 | 2012075346 | WO | A2 | 2012-06-07 | PIONEER PET PRODUCTS LLC | | |

If you wish to add additional Foreign Patent Document citation information please click the Add button Add

**NON-PATENT LITERATURE DOCUMENTS** Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| | 1 | | |

If you wish to add additional non-patent literature document citation information please click the Add button Add

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | | |
|---|---|---|
| | Application Number | |
| | Filing Date | |
| | First Named Inventor | Debra LOFRANCO |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | W4588.10010US01 |

| **EXAMINER SIGNATURE** | | | |
|---|---|---|---|
| Examiner Signature | | Date Considered | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | | |
|---|---|---|
| | Application Number | |
| | Filing Date | |
| | First Named Inventor | Debra LOFRANCO |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | W4588.10010US01 |

**CERTIFICATION STATEMENT**

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

See attached certification statement.

The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

**SIGNATURE**

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /R. Burns Israelsen, Reg. No. 42685/ | Date (YYYY-MM-DD) | 2021-07-01 |
|---|---|---|---|
| Name/Print | R. Burns Israelsen | Registration Number | 42685 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | PET TOY |
| **First Named Inventor/Applicant Name:** | Debra LOFRANCO |
| **Filer:** | Robert Burns Israelsen/Greta Schneider |
| **Attorney Docket Number:** | W4588.10010US03 |

Filed as Micro Entity

**Filing Fees for** **U.S. National Stage under 35 USC 371**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| NATIONAL STAGE FEE | 3631 | 1 | 80 | 80 |
| NATL STAGE SEARCH FEE - REPORT PROVIDED | 3642 | 1 | 135 | 135 |
| NATIONAL STAGE EXAM - ALL OTHER CASES | 3633 | 1 | 200 | 200 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | **Total in USD ($)** | | | 415 |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 43149503 |
| **Application Number:** | 17420351 |
| **International Application Number:** | PCT/US2019/069087 |
| **Confirmation Number:** | 7734 |
| **Title of Invention:** | PET TOY |
| **First Named Inventor/Applicant Name:** | Debra LOFRANCO |
| **Customer Number:** | 97149 |
| **Filer:** | Robert Burns Israelsen/Greta Schneider |
| **Filer Authorized By:** | Robert Burns Israelsen |
| **Attorney Docket Number:** | W4588.10010US03 |
| **Receipt Date:** | 01-JUL-2021 |
| **Filing Date:** | |
| **Time Stamp:** | 17:39:42 |
| **Application Type:** | U.S. National Stage under 35 USC 371 |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $415 |
| RAM confirmation Number | E202171H40131669 |
| Deposit Account | |
| Authorized User | |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Application Data Sheet | W4588-10010US03_ADS.pdf | 1828448<br>17ad3696d05406527bcd6de36312de87de af4641 | no | 8 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Oath or Declaration filed | W4588-10010US03_Declaratio n.pdf | 95541<br>846b8790eec510fcb9c88dce261ee00b67f0 3d7b | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | Certification of Micro Entity (Gross Income Basis) | W4588-10010US03_Micro_Enti ty.pdf | 119740<br>b8372a3d7a6b47dda2dff903568391a1222f 72e5 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 4 | Power of Attorney | W4588-10010US03_POA.pdf | 197340<br>8f4f94ea4d61df2edaa87727b0456d12443c 7ff1 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 5 | Foreign Reference | WO2012075346A2.pdf | 1780474<br>a67a564ad9e021cfb136959ff73762150515 f708 | no | 26 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 6 | Foreign Reference | WO2018096524A1.pdf | 4734186<br>09850bebcb08c1afa78d909b8e253fd0631 83bf4 | no | 81 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 7 | | W4588-10010US03_PCT_ISR.pdf | 487109<br>62ab0a528b73168119868df36855bb92b089c69a | yes | 11 |
| | **Multipart Description/PDF files in .zip description** | | | | |
| | **Document Description** | | **Start** | **End** | |
| | Documents submitted with 371 Applications | | 11 | 11 | |
| | Drawings-only black and white line drawings | | 9 | 10 | |
| | Claims | | 7 | 8 | |
| | Specification | | 2 | 6 | |
| | Abstract | | 1 | 1 | |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 8 | Information Disclosure Statement (IDS) Form (SB08) | W4588-10010US03_IDS.pdf | 1042457<br>7600dd719f62de8530f947eb85267151f8c03634 | no | 5 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 9 | Fee Worksheet (SB06) | fee-info.pdf | 34973<br>f0fa488a8a1a12e1d123850ef75195bf9919b4a2 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 10320268 | | |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**

**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**

**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**

**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | W4588.10010US03 |
|---|---|---|
| | Application Number | |
| Title of Invention | PET TOY | |

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

Inventor 1 [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Debra | | LOFRANCO | |

**Residence Information (Select One)** ● US Residency ○ Non US Residency ○ Active US Military Service

| City | Galloway | State/Province | NJ | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| | | | |
|---|---|---|---|
| Address 1 | 35 East Mockingbird Way | | |
| Address 2 | | | |
| City | Galloway | State/Province | NJ |
| Postal Code | 08205 | Country | US |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button. [Add]

## Correspondence Information:

**Enter either Customer Number or complete the Correspondence Information section below. For further information see 37 CFR 1.33(a).**

☐ **An Address is being provided for the correspondence Information of this application.**

| | |
|---|---|
| Customer Number | 97149 |
| Email Address | docket@mabr.com [Add Email] [Remove Email] |

## Application Information:

| | | | |
|---|---|---|---|
| Title of the Invention | PET TOY | | |
| Attorney Docket Number | W4588.10010US03 | Small Entity Status Claimed | ☒ |
| Application Type | Nonprovisional | | |
| Subject Matter | Utility | | |
| Total Number of Drawing Sheets (if any) | 2 | Suggested Figure for Publication (if any) | 1 |

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | W4588.10010US03 |
|---|---|---|
| | Application Number | |
| Title of Invention | PET TOY | |

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
|---|---|---|
| | | |

## Publication Information:

☐ Request Early Publication (Fee required at time of Request 37 CFR 1.219)

☐ **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing.

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ● Customer Number | US Patent Practitioner | ◯ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 97149 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | a 371 of international | PCT/US2019/069087 | 2019-12-31 |

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | W4588.10010US03 |
|---|---|---|
| | Application Number | |
| Title of Invention | PET TOY | |

| Prior Application Status | Expired | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| PCT/US2019/069087 | Claims benefit of provisional | 62/787624 | 2019-01-02 |
| Prior Application Status | Expired | | Remove |
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| PCT/US2019/069087 | Claims benefit of provisional | 62/910144 | 2019-10-03 |
| Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button. | | | Add |

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55. When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

| | | | Remove |
|---|---|---|---|
| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
| | | | |
| Additional Foreign Priority Data may be generated within this form by selecting the **Add** button. | | | Add |

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | W4588.10010US03 |
|---|---|---|
| | Application Number | |
| Title of Invention | PET TOY | |

## Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**: This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application. After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s). Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

**1. Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

**A. Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2) any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

**B. Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

**2. Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐ A. Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed. If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐ B. Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

**NOTE:** Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | W4588.10010US03 |
|---|---|---|
| | Application Number | |
| Title of Invention | PET TOY | |

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Applicant** 1 Remove

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

Clear

| | | |
|---|---|---|
| ● Assignee | Legal Representative under 35 U.S.C. 117 | Joint Inventor |
| Person to whom the inventor is obligated to assign. | Person who shows sufficient proprietary interest | |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

| | |
|---|---|
| Name of the Deceased or Legally Incapacitated Inventor: | |
| If the Applicant is an Organization check here. | ☒ |
| Organization Name | |

**Mailing Address Information For Applicant:**

| | | | |
|---|---|---|---|
| **Address 1** | | | |
| Address 2 | | | |
| **City** | | **State/Province** | |
| **Country** | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button. Add

## Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | W4588.10010US03 |
|---|---|---|
| | Application Number | |
| Title of Invention | PET TOY | |

**Assignee 1**

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

Remove

If the Assignee or Non-Applicant Assignee is an Organization check here. ☒

| | |
|---|---|
| Organization Name | |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| | | | |
|---|---|---|---|
| **Address 1** | | | |
| Address 2 | | | |
| **City** | | **State/Province** | |
| **Country** i | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button. Add

## Signature:

Remove

**NOTE:** This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the <u>INITIAL</u> filing of the application <u>and</u> either box A or B is <u>not</u> checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**

This Application Data Sheet **<u>must</u>** be signed by a patent practitioner if one or more of the applicants is a **juristic entity** (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, **<u>all</u>** joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of **<u>all</u>** joint inventor-applicants.

See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| | | | | | |
|---|---|---|---|---|---|
| **Signature** | /R. Burns Israelsen, Reg. No. 42685/ | | | Date (YYYY-MM-DD) | 2021-07-01 |
| First Name | R. Burns | Last Name | Israelsen | Registration Number | 42685 |

Additional Signature may be generated within this form by selecting the Add button. Add

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | W4588.10010US03 |
|---|---|---|
| | Application Number | |

| Title of Invention | PET TOY |
|---|---|

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1 The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3 A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent CooperationTreaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| | |
|---|---|
| **Title of Invention** | PET TOY |
| **Docket Number** | W4588.10010US03 |

As the below named inventor, I hereby declare that:

This declaration is directed to:

☐ The attached application, or

☒ United States application or PCT international application number PCT/US2019/069087 filed on December 31, 2019.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

LEGAL NAME OF INVENTOR

Inventor: Debra LOFRANCO Date: June 21st, 2021

Signature: [signature]

**MASCHOFF BRENNAN, PLLC**
1389 Center Drive, SUITE 300
PARK CITY, UTAH 84098, USA

# TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B or equivalent) to identify the application to which the Power of Attorney directed, in accordance with 37 CFR 1.5. If the Power of Attorney by Applicant form is not accompanied by this transmittal form or an equivalent, the Power of Attorney will not be recognized in the application.

| | | | |
|---|---|---|---|
| **Application Number** | | | |
| **Filing Date** | | | |
| **First Named Inventor** | Debra LOFRANCO | | |
| **Title** | PET TOY | | |
| **Art Unit** | | | |
| **Examiner Name** | | | |
| **Attorney Docket Number** | W4588.10010US01 | | |
| **SIGNATURE of Applicant or Patent Practitioner** | | | |
| **Signature** | /R. Burns Israelsen, Reg. No. 42685/ | **Date** | July 1, 2021 |
| **Name** | R. Burns Israelsen | **Telephone** | (435) 252-1360 |
| **Registration Number** | 42685 | | |

**MASCHOFF BRENNAN, PLLC**
1389 Center Drive, SUITE 300
PARK CITY, UTAH 84098, USA

# POWER OF ATTORNEY BY APPLICANT
**[Inventor]**

I hereby revoke all previous powers of attorney given in the application identified in the attached Transmittal for Power of Attorney form.

■ I hereby appoint Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter:

97149

Please recognize or change the correspondence address for the above-identified patent to:

■ The address associated with the above-mentioned Customer Number.

I am the Applicant:

■ Inventor or Joint Inventor.

**SIGNATURE of Applicant for Patent**

| | | | |
|---|---|---|---|
| Signature | [signature] | Date | June 21st, 2021 |
| Name | Debra LOFRANCO | Telephone | 703-401-3784 |

NOTE: Signature - This form must be signed by the applicant or applicant's representative in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. Submit multiple forms for more than one signature, see below*.

*Total of forms are submitted.

**MASCHOFF BRENNAN, PLLC**
1389 Center Drive, SUITE 300
PARK CITY, UTAH 84098, USA

(12) INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

(19) World Intellectual Property Organization
International Bureau

(43) International Publication Date
7 June 2012 (07.06.2012)

WIPO | PCT

(10) International Publication Number
**WO 2012/075346 A2**

(51) **International Patent Classification:**
*A01K 15/02* (2006.01) *A23K 1/16* (2006.01)
*A01K 13/00* (2006.01)

(21) **International Application Number:**
PCT/US2011/062972

(22) **International Filing Date:**
1 December 2011 (01.12.2011)

(25) **Filing Language:** English

(26) **Publication Language:** English

(30) **Priority Data:**
61/418,816 1 December 2010 (01.12.2010) US
61/526,707 24 August 2011 (24.08.2011) US

(71) **Applicant** *(for all designated States except US)*: **PIONEER PET PRODUCTS, LLC** [US/US]; N144 W5660 Pioneer Road, Cedarburg, WI 53012 (US).

(72) **Inventor; and**
(75) **Inventor/Applicant** *(for US only)*: **LIPSCOMB, John, M.** [US/US]; 193 Granville Road, Cedarburg, WI 53012 (US).

(74) **Agent: STEIN, David, D.**; Boyle Fredrickson SC, 840 North Plankinton Avenue, Milwaukee, WI 53203 (US).

(81) **Designated States** *(unless otherwise indicated, for every kind of national protection available)*: AE, AG, AL, AM, AO, AT, AU, AZ, BA, BB, BG, BH, BR, BW, BY, BZ, CA, CH, CL, CN, CO, CR, CU, CZ, DE, DK, DM, DO, DZ, EC, EE, EG, ES, FI, GB, GD, GE, GH, GM, GT, HN, HR, HU, ID, IL, IN, IS, JP, KE, KG, KM, KN, KP, KR, KZ, LA, LC, LK, LR, LS, LT, LU, LY, MA, MD, ME, MG, MK, MN, MW, MX, MY, MZ, NA, NG, NI, NO, NZ, OM, PE, PG, PH, PL, PT, QA, RO, RS, RU, RW, SC, SD, SE, SG, SK, SL, SM, ST, SV, SY, TH, TJ, TM, TN, TR, TT, TZ, UA, UG, US, UZ, VC, VN, ZA, ZM, ZW.

(84) **Designated States** *(unless otherwise indicated, for every kind of regional protection available)*: ARIPO (BW, GH, GM, KE, LR, LS, MW, MZ, NA, RW, SD, SL, SZ, TZ, UG, ZM, ZW), Eurasian (AM, AZ, BY, KG, KZ, MD, RU, TJ, TM), European (AL, AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FI, FR, GB, GR, HR, HU, IE, IS, IT, LT, LU, LV, MC, MK, MT, NL, NO, PL, PT, RO, RS, SE, SI, SK, SM, TR), OAPI (BF, BJ, CF, CG, CI, CM, GA, GN, GQ, GW, ML, MR, NE, SN, TD, TG).

**Published:**
— *without international search report and to be republished upon receipt of that report (Rule 48.2(g))*

(54) **Title:** ANIMAL ATTRACTANT DISPENSING DEVICE




FIG 1

(57) **Abstract:** A dispensing animal interactive device formed of a perforate flexible pouch holding an animal attractant dispensed through perforations in the pouch during animal- induced deformation of the pouch during animal interaction. The pouch is formed of an endless sidewall of a biaxial woven or braided construction whose perforations change in size responsive to animal interaction. One preferred pouch holds catnip that is dispensed through perforations by engagement between the pouch sidewall and catnip from cat interaction that abrades catnip into smaller particles and that squeezes catnip out perforations in the sidewall with cat interaction causing the size of perforations in a region of the sidewall adjacent cat-induced deformation to increase dispensing catnip out of enlarged perforations. Ground catnip can express oils that can be dispensed in the form of a scent from the pouch and which increases the pungency of dispensed catnip.

WO 2012/075346 A2

# DISPENSING ANIMAL INTERACTIVE DEVICE

## FIELD

[0001] The present invention relates generally to a device with which an animal interacts that dispenses material during interaction and more particularly to a dispensing animal interactive device used for play, training and the like that can be an animal toy.

## BACKGROUND

[0002] There are many pet toys and animal training devices that have been used in the past to entice interaction with the device including for play training and the like. In the past, most, if not all, of these devices are heavy, bulky, breakdown, or require maintenance and/or refilling, which has led to limited commercial acceptance.

[0003] Toys for use by domestic animals are well known in the art. Such toys may be intended purely for the entertainment purpose of the animal, or they may include secondary functions, such as providing a means of exercise, promoting oral health, or providing a scratching outlet. These pet toys are often round or curved in shape to promote mobility of the toy, and in turn allowing the pet to move and chase after the toy during play. This movement provides an opportunity for exercise that is particularly important in domestic animals that are confined to living indoors.

[0004] Other toys promote interaction between the toy and the pet by utilizing a pet attractant in combination with the toy. Such attractants may include a piece of food lodged within the center of the toy, a scent imparted onto the toy, an outer surface of stimulating bright colors, or even constructing the toy out of a consumable material. All of these additional pet attractants offer additional means for stimulating the pet during play, and thereby increase the degree of both entertainment and beneficial exercise of the pet.

[0005] In toys intended for use by domestic cats, their use as a scratching device is also important. Providing a scratching outlet is particularly useful for cats who have not been declawed, and who may otherwise cause unwanted damage to home furnishings. Accordingly, such toys must provide an exterior surface that promotes scratching, while also withstanding the force of scratching. Similarly, those toys designed to be bitten or chewed must be made of a material of significant strength, capable of withstanding the forces applied to it.

[0006] As previously indicated, some toys may also release a treat for the animal. Catnip is one such treat, which is typically included with dispensing toys for domestic cats. The scent of catnip has been shown to attract and excite cats, and therefore is particularly well suited for use in conjunction with cat toys. However, in order for the catnip to be effective, its scent must be able to emanate from the toy. To this end, traditional catnip toys included porous cloth packets filled with catnip. While such cloth allowed the scent of catnip to diffuse through the cloth layer, the cloth structure was susceptible to tearing and breaking in response to the prolonged use of cat biting and scratching.

[0007] What is needed is a simple, economical, durable and disposable device with which an animal, such as a domestic animal, interacts that also dispenses material. What is also needed is a material dispensing device with which an animal interacts by playing with the device or by being trained using the device.

SUMMARY

[0008] The present invention is directed to an animal attractant dispensing device configured so that animal interaction causes deformation or deflection of the device which causes animal attractant within the device to be dispensed from the device rewarding an animal interacting with the device. In a preferred embodiment, the animal attractant dispensing device is a flexible

deformation-induced dispensing pouch formed of a sidewall of flexible and perforate construction that dispenses animal attractant through perforations in the pouch sidewall when subjected to deformation or deflection from an animal interacting with the pouch.

[0009] An animal attractant dispensing pouch constructed in accordance with the present invention is of tubular construction and is at least partially filled with animal attractant of edible composition. The pouch can be formed with one or more end closures that close or otherwise seal one or both ends of the pouch to help keep animal attractant in the pouch when the pouch is not in use.

[0010] The pouch is formed of a segment of mesh tubing or sleeving of Chinese finger-cuff construction made of a biaxial woven or braided material defining a perforate, endless and flexible pouch sidewall. The pouch sidewall is formed of a plurality of pairs of first and second elongate helical or spiral strands that are biaxially woven or braided defining perforations therethrough whose size changes in response to animal-induced deflection or deformation of the pouch dispensing particles of animal attractant through perforations enlarged as a result. The pouch sidewall is made of a durable, tough and abrasion resistant plastic that preferably is nylon or polyethylene terephthalate enabling a pouch constructed in accordance with the present invention to withstand animal biting and scratching with animal claws.

[0011] Such a biaxial woven or braided pouch sidewall construction enables the pouch to diametrically expand or widen when axially compressed, such as by urging one end relative to the opposite end toward the opposite end, and diametrically contract or narrow when axially stretched, such as by pulling one end relative to the opposite end away from the opposite end. When at least part of the pouch is axially compressed, a corresponding local portion of its biaxial woven sidewall deforms in a manner that causes the size of perforations in the region of pouch

compression to increase allowing particles of the animal attractant within the pouch to pass through the enlarged perforation perforations and be dispensed from the pouch. When at least part of the pouch is axially stretched, its biaxial woven sidewall narrows or diametrically shrinks causing the size of perforations in the corresponding region to decrease opposing dispensation of particles of animal attractant through the reduced sized perforations.

[0012] Likewise, when the pouch is bitten, bent, scratched, clawed, twisted or otherwise deformed or deflected by an animal interacting with the pouch, the pouch locally diametrically expands or widens in a manner that causes at least some perforations to enlarge enabling particles of animal attractant to be dispensed from the pouch. Such animal-induced deformation or deflection causes relative movement between biaxially woven or braided strands that form the pouch sidewall increasing the size of a least some perforations large enough to allow particles of animal attractant to pass through or be squeezed through. Animal-induced deformation or deflection also causes engagement to occur between animal attractant in the pouch and the pouch sidewall, squeezing at least some particles of the animal attractant through perforations in the sidewall. Such engagement caused by animal-induced deformation or deflection also grinds some of the animal attractant in the pouch abrading particles that are squeezed through or which can pass through perforations in the pouch sidewall. Grinding and/or abrasion of animal attractant in the pouch can also release liquid, such as in the form of oils from the animal attractant that can produce a scent also dispensed from the pouch during animal interaction.

[0013] A preferred animal attractant dispensing device constructed in accordance with the invention is a cat toy pouch at least partially filled with catnip that is engaged by the pouch sidewall during interaction by the cat causing at least some catnip to be dispensed through perforations in the pouch sidewall enticing the cat into continued interaction. During interaction,

particles of catnip are dispensed from the pouch that are tasted or smelled by the cat exciting the cat into continued interaction that can be heightened as a result. During interaction, a scent can be dispensed from the pouch produced by grinding or abrasive engagement between the pouch sidewall and animal attractant in the pouch.

[0014] In a method of use, interaction with the pouch by a cat biting, grasping, rolling, twisting, bending or otherwise deforming or deflecting the pouch squeezes at least some particles of catnip out perforations in the pouch sidewall. Cat-induced deformation or deflection of the pouch enlarges at least some perforations in the pouch sidewall in a region of the pouch sidewall at or adjacent the deformation or deflection enabling smaller sized particles of catnip to pass through the perforations dispensing them from the pouch. Cat-induced deformation or deflection of the pouch grinds at least some of the catnip into smaller size catnip particles that more readily pass through perforations in the pouch sidewall and causes at least some catnip particles to be squeezed out perforations in the pouch sidewall. Cat-induced deformation or deflection of the pouch that not only grinds catnip particles into smaller size particles, but also releases oils onto particles being dispensed from the pouch increasing their pungency. Such released oils also produce a scent that is dispensed from perforations in the pouch sidewall into the air surrounding the cat. Dispensation of catnip particles provides a treat or reward to the cat interacting with the pouch advantageously enticing the cat into further interaction with the pouch.

[0015] These and various other features, aspects, and advantages of the present invention will be made apparent from the following descriptions of the drawings and detailed description.

## DRAWING DESCRIPTION

[0016] The drawings illustrate at least one preferred embodiment presently contemplated for carrying out the invention. In the drawings:

[0017] Fig. 1 is a perspective view of a cat interacting with a flexible perforate pouch of an animal attractant dispensing device constructed in accordance with the present invention containing animal attractant that dispenses when the pouch deflects during animal interaction with the pouch.

[0018] Fig. 2 is a top plan view of the animal attractant dispensing device.

[0019] Fig. 3 is a side elevation view of the animal attractant dispensing device.

[0020] Fig. 4 is an end view of the animal attractant dispensing device.

[0021] Fig. 5 is an enlarged fragmentary view of a portion of a perforate sidewall made of biaxial woven material that forms the animal attractant dispensing device.

[0022] Fig. 6 is a side elevation view of the animal attractant dispensing device undergoing deflection causing animal attractant to be dispensed from the device.

[0023] Fig. 7 is an enlarged fragmentary view of a portion of the perforate sidewall of the animal attractant dispensing device shown in Fig. 6 undergoing deflection.

[0024] Fig. 8 is an enlarged fragmentary view of a portion of the perforate sidewall defining a perforation formed therein whose size increases or decreases in response to deflection or deformation of the animal attractant dispensing device during animal interaction therewith.

[0025] Fig. 9 is an enlarged cross section of the animal attractant dispensing device filled with animal attractant.

[0026] Before explaining one or more embodiments of the invention in detail, it is to be understood that the invention is not limited in its application to the details of construction and the arrangement of the components set forth in the following description or illustrated in the drawings. The invention is capable of other embodiments, which can be practiced or carried out

in various ways. Also, it is to be understood that the phraseology and terminology employed herein is for the purpose of description and should not be regarded as limiting.

## DETAILED DESCRIPTION

[0027] Figures 1-9 illustrate an animal attractant dispensing device 20 that is a deformation-induced dispensing pouch 22 formed of a sidewall 24 of flexible and perforate construction that dispenses animal attractant 26 held by the pouch 22 when the pouch 22 is deformed or deflected during interaction with an animal 28, such as a cat 64. The flexible perforate pouch 22 is of tubular construction and is at least partially filled with animal attractant 26, such as a particulate or granular animal attractant 26 of edible or consumable composition like catnip (e.g., nepeta, such as nepeta cataria or the like). The pouch 22 can include or be formed with one or more closures 30 and 32 disposed at opposite ends to help hold animal attractant 26 within the pouch 22. During animal interaction with the pouch 22, a scent 42, such as from an oil, fragrance, perfume, or aromatic expressed by animal attractant 26 within the pouch 22 that is engaged by the pouch 22 during pouch deflection or deformation, can be released or dispensed.

[0028] The release or dispensation from the pouch 22 of animal attractant 26, including any scent 42 from the animal attractant 26, encourages desired behavior in the animal 28 interacting with the pouch 22. For example, in one preferred embodiment, the pouch 22 holds catnip animal attractant 26 that is dispensed during interaction with the pouch 22 by a cat 64 enticing the cat 64 into continued or heightened interaction, e.g., play, with the pouch 22. If desired, the animal attractant 26 can be selected to help train the behavior of an animal, such as a dog, interacting with another embodiment of the pouch 22 filled with another type of animal attractant, such as peanut butter, dog treats, etc.

[0029] The pouch 22 is formed of a segment 34 of mesh braided tubing or sleeving 36 of Chinese finger-cuff material 38 made of a biaxial woven material 40 defining a perforate, endless and flexible sidewall 24 of the pouch 22. Being of Chinese finger cuff material construction 38, the biaxially woven or braided sidewall 24 defines a plurality of pairs of perforations 66 formed therein that communicate with an internally disposed attractant holding compartment 44 (Figures 7 and 9) within the pouch 22 enabling particles 27, e.g., granules, of animal attractant 26 within the pouch 22 to pass through perforations 66 and be dispensed from the pouch 22 in response to deformation of the pouch 22.

[0030] For example, where the pouch 22 is filled with catnip animal attractant 26, particles 27 of catnip 26 pass through perforations 66 in the pouch sidewall 24 when a cat 64 interacts with the pouch 22 by playing with the pouch 22 in a manner that causes pouch deformation. The releasing or dispensation of particles 27 of catnip 26 from the pouch 22 during play with the pouch 22 that the cat 64 can taste and/or smell rewards the cat 64 enticing the cat 64 into continued or even heightened play with the pouch 22. The cat 64 can also be rewarded with a scent 42 released from the pouch 22 from oil, e.g., nepetalactone, in catnip 26 within the pouch 22 expressed from the catnip 26 during engagement between the catnip 26 and pouch 22 caused by cat-induced pouch deformation.

[0031] The sidewall 24 of the pouch 22 is formed of a biaxial woven or braided material of Chinese finger-cuff construction 38 having a first plurality of spaced apart and generally parallel elongate strands 46 that each extend along and/or generally parallel to a first strand axis 48 with each first strand 46 crisscrossing a second plurality of spaced apart and generally parallel elongate strands 50 that each extend along and/or generally parallel to a second strand axis 52. The pouch sidewall 24 is formed of a first plurality of pairs, i.e., at least three, of generally spiral

or helically extending strands 46 that crisscross and are braided with a second plurality of pairs, i.e. at least three, of generally spiral or helically extending strands 50 in a manner that permits relative, e.g., sliding, movement between strands 46 and 50 in response to deflection of the pouch 22 by an animal interacting with the pouch 22, such as while playing with the pouch 22.

[0032] With reference to Figures 2 and 3, each first strand 46 (and corresponding first strand axis 48) is acutely angled relative to the second strand axis 52 (and second strands 50) and is also acutely angled relative to a generally longitudinally extending central axis 54 of the pouch 22. Likewise, each second strand 50 (and corresponding second strand axis 52) is acutely angled relative to the first strand axis 48 (and first strands 46) and is also acutely angled to the central pouch axis 54.

[0033] As is best shown in Figure 3, each first strand 46 generally spirals or helically extends around the longitudinal central axis 54 of the pouch 22 with each first strand 46 oriented at a first acute included angle, ɵ, relative to the central axis 54. Likewise, each second strand 50 generally spirals or helically extends around the longitudinal central axis 54 with each second strand 50 oriented at a second acute included angle, ʙ, relative to the central axis 54. As is also shown in Figure 3, each first strand 46 and first strand axis 48 is acutely angled relative to each second strand 50 and second strand axis 52 as the combined sum of the included angle, ɵ, between first strand axis 48 and center pouch axis 54 and the included angle, ʙ, between second strand axis 52 and center pouch axis 54 is less than 90 degrees.

[0034] With specific reference to Figures 2-7, first and second strands 46 and 50 are woven together so that each one of the first strands 46 alternately overlies and then underlies at least one of the second strands 50 and each one of the second strands 50 alternately overlies and then underlies at least one of the first strands 46 biaxially weaving or braiding the strands 46 and 50

together to form the perforate, flexible and endless sidewall 24 of the pouch 22. Each one of the first strands 46 can alternately overlie and then underlie a plurality of second strands 50 crisscrossing the second strands 50 and each one of the second strands 50 can alternately overlie and then underlie a plurality of first strands 46 also crisscrossing the first strands 46. For example, in one preferred embodiment, each one of the first strands 46 alternately overlies one pair of second strands 50 and then underlies another pair of second strands 50 and each one of the second strands 50 in turn alternately overlies one pair of first strands 46 before underlying a second pair of the first strands 46, such as in the manner shown in Figure 5.

[0035] With specific reference to Figure 5, the flexible and perforate pouch sidewall 24 can be formed of first and second plurality of pairs of spiral or helically woven or braided strands 46 and 50 that are each formed by an elongate filament bundle 56 having a plurality of elongate filaments 58, 60 and 62 that can also each extend substantially the length of the pouch 22. As is depicted in Figure 5, each filament bundle 56 can have three filaments 58, 60 and 62 arranged so they are generally parallel and adjoin one another along one or both longitudinally extending sides of the filament. Each filament bundle 56 can define a strand 46 and/or 50 having an oblong or generally rectangular transverse cross-section. In a preferred embodiment, the filaments 58, 60 and 62 of each strand 46 and/or 50 can function as a strand 46 and/or 50 of one piece, unitary and substantially homogeneous construction permitting relative movement of one strand e.g., one or more first strands 46, relative to another strand, e.g., one or more second strands 50, in response to deflection of a portion of the pouch 22. If desired, one or more of the filaments 58, 60 and 62 of a particular strand 46 and/or 50 can be movable, e.g., slidable, relative to one or more of the other filaments 58, 60 and/or 62 of the strand 46 and/or 50.

[0036] Each strand 46 and 50 extends substantially the entire length of the pouch 22 with the strands 46 and 50 converging together at or adjacent at least one end of the pouch 22 forming a closure, such as closure 30 and/or closure 32, that helps hold animal attractant 26 in the pouch. For example, in the pouch 22 shown in Figures 1-7, the spiral or helical woven or braided strands 46 and 50 that form the perforate pouch sidewall 24 converge together at opposite ends of the pouch 22 where respective closures 30 and 32 close the ends of the pouch 22.

[0037] In a preferred embodiment, the strands 46 and 50 of the pouch 22, including any filaments 58, 60 and/or 62 from which any strand 46 and/or 50 is formed, are made of a flexible material that preferably is plastic. One preferred plastic is nylon, as nylon provides a desired combination of durability, toughness and abrasion resistance to an animal 28 chewing on the pouch 22. Making the pouch 22 of plastic advantageously enables each closure 30 and 32 to be formed of a seal, such as a heat seal that can be formed by a hot knife, RF sealer, or the like. Such a plastic pouch construction also produces a pouch 22 of disposable construction that can be disposed of after the animal attractant 26 within the pouch 22 has been exhausted or used up.

[0038] In one preferred embodiment, the pouch 22 is formed of nylon expandable braided sleeving, such as an expandable braided sleeving or tubing made of nylon 6, 6. If desired, the pouch 22 can be made of another type of plastic, such as polyethylene terephthalate (PET) or the like, which provides a suitable combination of abrasion resistance, durability and toughness.

[0039] Weaving or braiding the strands 46 and 50 into a perforate, flexible and endless sidewall 24 of the pouch 22 in such a manner permits the first and second strands 46 and 50 to move relative to one another, including by sliding over and/or along one another, when at least part of the pouch 22 is deflected or deformed, such as by being bent, twisted, compressed, bit, swatted, batted around, and/or pulled by the animal 28, such as a pet, like the cat 64 shown in Figures 1

and 6, during animal interaction with the pouch 22. Since the woven or braided strands 46 and 50 define a perforation 66 where each pair of adjacent and generally parallel first strands 46 crisscross each corresponding pair of adjacent and generally parallel second strands 50, the size of the perforations 66 in a particular region or regions of the pouch 22 can vary in response to relative movement between strands 46 and 50 caused by animal-induced deformation or deflection of the pouch 22 during animal interaction. Increasing the size of the perforations 66 in one or more regions of the pouch 22 due to animal-induced deformation or deflection will cause animal attractant 26 to be dispensed from the pouch 22 releasing particles of animal attractant 26 through perforations 66 enlarged during animal interaction.

[0040] At least a plurality of pairs of the perforations 66 is shaped generally like a parallelogram that can be rhomboid-shaped or a rhombus, e.g., diamond-shaped, like that depicted in Figures 5 and 7. In a preferred pouch embodiment, substantially all of the perforations 66 of the pouch 22 are parallelogram or rhomboid shaped. As is best shown in Figure 8, each parallelogram-shaped perforation 66 is defined by two pairs of opposed sides 68, 70, 72 and 74 has a length, **L**, in a longitudinal direction relative to the pouch 22 and a width, **W**, in a transverse direction relative to the pouch 22 that increases or decreases in response to animal-induced deflection or deformation correspondingly increasing or decreasing perforation size. As is also shown in Figure 8, one pair of opposed sides 68 and 70 of each perforation 66 is formed by a pair of adjacent but spaced apart generally parallel first strands 46 and the other pair of opposed perforation sides 72 and 74 is formed by a pair of adjacent but spaced apart generally parallel second strands 50.

[0041] In a method of use and operation, an animal 28, such as the cat 64 shown in Figures 1 and 6, interacts with the pouch 22 by engaging the pouch 22 in a manner that causes the pouch 22 to

deform or deflect at least a portion of the pouch 22. For example, a cat 64 grasping the pouch 22 with its paws, e.g. front paws 76, can bite the pouch 22 with its mouth 78, such as is depicted in Figure 1, or can bend the pouch 22, such as is depicted in Figure 6 causing the pouch 22 to deform and/or deflect.

[0042] During deformation and/or deflection of the pouch 22 due to animal interaction, engagement between the pouch sidewall 24 and animal attractant 26 within the pouch 22 can grind the animal attractant 26. Grinding of the animal attractant 26 caused by animal interaction with the pouch 22 creates particles 27 that pass through perforations 66 in the pouch 22. Grinding of animal attractant 26 also can release oils from the attractant 26 which make particles 27 of attractant 26 passing through the perforations 66 in the pouch 22 more pungent. During deformation and/or deflection of the pouch 22, perforations 66 in one region 82 of the pouch 22 enlarge relative to perforations 66 in another region 84 of the pouch 22 becoming large enough so particles 27 of animal attractant 26 pass through the enlarged perforations 66, such as depicted in Figures 6 and 7.

[0043] Where grinding occurs during animal interaction, it results from engagement between the pouch 22 undergoing deformation or deflection and animal attractant 26 within the pouch 22 rubbing and/or abrading the animal attractant 26 into particles 27 capable of passing through perforations 66 in the sidewall 24 of the pouch 22. Where the animal attractant 26 is already formed of particulate matter, such as in the case where the animal attractant 26 is pre-ground catnip, engagement between the pouch 22 and the catnip animal attractant 26 grinds at least some particles of the catnip 26 into smaller particles 27, at least some of which pass through perforations 66 in the pouch sidewall 24 dispensing them to a cat 64 playing with the pouch 22 stimulating the cat 64.

[0044] Where the animal attractant 26 is or includes catnip, oil expressed from the catnip animal attractant 26 produced by grinding and/or squeezing of the catnip 26 in the pouch 22 can pass through perforations 66 in the pouch 22 into the surrounding air producing a scent 42 that can enter the mouth 78 or nose 80 of the cat 64 stimulating the cat 64. Such oil is also carried by particles 27 passing through perforations 66 in the pouch 22 causing the catnip particles 27 to be more pungent and more reactive to a cat 64 playing with the pouch 22. As is depicted by Figures 6 and 7, such oil 86 can also directly pass through or be squeezed out perforations 66 in the pouch 22 coating part of the exterior of the pouch sidewall 24 enabling the oil 86 to be licked by a cat 64 playing with the pouch 22.

[0045] Where the animal attractant 26 is something other than catnip, it can be of a composition from which a scent 42 can be expressed when the attractant 26 is engaged and squeezed and/or ground during pouch deformation or deflection that is then dispensed from the pouch 22. For example, the animal attractant 26 can be capsules that break during engagement with the pouch sidewall 24 during animal-induced deformation of the pouch 22 releasing a liquid or perfume that produces a scent 42 dispensed from the pouch 22 that can waft into the air surrounding the animal 28. Where liquid, e.g., oil, is released from particles 27 of animal attractant 26, the liquid 86 can coat the exterior of the pouch 22 enticing the animal 28 to lick the pouch 22.

[0046] With reference to Figure 1, a cat 64 interacting with the pouch 22 grasps the pouch 22 between its front paws 76 and bites the pouch 22 with its mouth 78 causing particles 27 of catnip 26 to be squeezed out perforations 66 at and/or adjacent its mouth 78 stimulating the cat 64 into further interaction with the pouch 22. While the cat 64 is grasping the pouch 22 between its front paws 76, the cat 64 also kicks or scratches part of the pouch 22 with its rear paws 79 a distance

from its front paws 78 causing particles 27 of catnip 26 to be squeezed out perforations 66 at or adjacent where the rear paws 79 are engaging the pouch.

[0047] As is also shown in Figure 1, particles 27 of catnip 26 dispensed from the perforations 66 adjacent and along where the cat 64 engages the pouch 22 with its front paws 76 (as well as where the cat 64 engages the pouch 22 with its rear paws 79 and/or mouth 78) can waft into the air where it can be smelled by the nose 80 of the cat 64 further stimulating the cat 64. In addition, the cat 64 can grasp the pouch 22 between one or both pairs of paws 76 and/or 79 kicking or tossing the pouch 22 into the air chasing after the pouch 22 with such engagement causing release of additional particles 27 of catnip 26.

[0048] Interaction with the pouch 22 by a cat 64 can be in the form of bending or twisting of the pouch 22, such as is depicted in Figures 6 and 7. When twisted, such as relative to the longitudinal axis 54 (Figures 2 and 3), the perforations 66 in one region 82 of the pouch 22 will enlarge, such as depicted in Figure 7, enabling particles 27 of catnip 26 to pass through the enlarged perforation 66.

[0049] Likewise, when bent in a manner that imparts a radius of curvature to the pouch 22, such as in the manner depicted in Figures 6 and 7, the perforations 66 extending generally along a region 82 of the pouch 22 where it is convexly curved become enlarged due to relative movement between strands 46 and 50 of the biaxially woven or braided pouch sidewall 24 enabling particles 27 of catnip 26 to pass through the enlarged perforation 66. For example, when the pouch 22 is engaged by a cat 64 in a manner that bends the pouch 22, such as by bending the pouch 22 upwardly in the manner shown in Figure 6, the perforations 66 on at least one side along the radius of curvature of the pouch 22 are enlarged relative to the perforations 66

on the opposite side along the radius of curvature as a result of relative movement between strands 46 and 50 that form the biaxially woven or braided pouch sidewall 24.

[0050] When the pouch 22 is being bent, twisted, bitten, scratched, compressed, and/or stretch during animal interaction, relative movement of strands 46 and/or 50 of the biaxially woven or braided pouch sidewall 24 cause particles 27 of the catnip 26 within the pouch 22 to be ground into smaller or finer particles 27 by engagement with the pouch sidewall 24, at least some of which are small enough to be squeezed through perforations 66 in the pouch sidewall 24. While this is occurring, deformation of the pouch sidewall 24 also causes perforations 66 in one region 82 of the pouch 22 to enlarge allowing particles 27 of catnip 26 small enough to pass through the enlarged perforations 66 to do so.

[0051] The present invention is directed to an animal attractant dispensing device that can be an animal toy comprised of a flexible bi-axially woven or braided material of perforated construction that disperses and dispenses an animal attractant in response to interaction with the device by the animal. The present invention can be further directed to an animal attractant dispensing device formed of a perforate flexible tube where the tube is includes a plurality elongate helical or spiral strands woven or braided into a pouch sidewall having perforations through which the animal attractant is dispersed when the pouch is being manipulated by a pet interacting with the pouch such as by playing with the pouch. The present invention can be further directed to a perforate animal attractant dispensing pouch having a first plurality of helical or spiral longitudinally extending elongate strands that are acutely angled at one angle relative to a longitudinal axis of the pouch and a second plurality of helical or spiral longitudinally extending elongate strands that are acutely angled at another angle relative to the longitudinal axis of the pouch crossing the first plurality of helical or spiral longitudinally

extending elongate strands at an angle defining opposed acute included angles extending longitudinally and opposed obtuse included angles extending transversely. The present invention can be further defined where the woven or braided strands are movable relative to one another changing the size of a plurality of perforations defined by the woven or braided strands enabling granular or particulate animal attractant to pass through the perforations during physical interaction with the pouch by an animal. The present invention can be further defined where the perforations defined by a first plurality of strands and a second plurality of strands form parallelogram shaped perforations whose size changes depending on stress or strain from deflection or deformation to the pouch applied by the animal to the pouch during animal interaction with the pouch. The present invention can be further defined with the animal attractant being catnip that is crushed or ground catnip. The present invention can be further defined where the ground or crushed catnip is ground or crushed into smaller sized particles or grains of catnip during physical engagement and manipulation of the pouch by a cat playing with the pouch.

[0052] Understandably, the present invention has been described above in terms of the preferred embodiment. It is recognized that various alternatives and modifications may be made to these embodiments which are within the scope of the appended claims.

## CLAIMS

What is claimed is:

1. An animal attractant dispensing device comprised of a flexible pouch having a plurality of pairs of perforations through which an animal attractant inside the pouch is dispensed by deformation of the pouch caused by interaction with the pouch by an animal.

2. The animal attractant dispensing device of claim 1 wherein deformation of the pouch comprises at least one of squeezing, bending, compressing and rolling of the pouch causing a size of a plurality of the perforations in the pouch to increase with engagement between animal attractant within the pouch and the pouch during deformation causing animal attractant to pass through the enlarged perforations.

3. The animal attractant dispensing device of any one of claims 1 and 2 wherein the pouch is comprised of a flexible perforate sidewall of endless construction that holds and engages attractant within the pouch during animal interaction.

4. The animal attractant dispensing device of any one of claims 1-3 wherein the flexible perforate sidewall of the pouch is comprised of a biaxial woven or braided material.

5. The animal attractant dispensing device of any one of claims 1-4 wherein the flexible perforate sidewall of the pouch is comprised of a section of braided or woven tubing or sleeving.

7. The animal attractant dispensing device of any one of claims 1-6 wherein pouch sidewall is formed by a plurality of biaxially woven or braided strands defining perforations therebetween with the strands movable relative to one another in response to deformation or deflection of the pouch in response to animal interaction enlarging the size of a plurality of perforations formed in the pouch sidewall.

8. The animal attractant dispensing device of any one of claims 1-7 wherein the strands are elongate and helically spiral about a central longitudinal axis of the pouch.

9. The animal attractant dispensing device of any one of claims 1-8 wherein pouch sidewall is formed of a first plurality of strands oriented at an acute angle relative to the central longitudinal axis of the pouch and the pouch sidewall is formed of a second plurality of strands oriented at an acute angle relative to the central longitudinal axis of the pouch wherein the first and second plurality of strands crisscross one another.

10. The animal attractant dispensing device of any one of claims 1-9 wherein the pouch is closed at or adjacent one end.

11. The animal attractant dispensing device of any one of claims 1-10 wherein the animal attractant is engaged by the pouch during deformation from interaction with the pouch by the animal dispensing a scent from the pouch.

12. The animal attractant dispensing device of any one of claims 1-11 wherein the animal attractant is comprised of catnip and the scent dispensed from the pouch comprises oil released from catnip in the pouch engaged by the pouch during deformation from interaction with the pouch by the animal.

13. The animal attractant dispensing device of any one of claims 1-12 wherein the animal attractant is engaged by the pouch during deformation from interaction with the pouch by the animal dispensing grinding the animal attractant dispensing particles of animal attractant from the pouch.

14. The animal attractant dispensing device of any one of claims 1-13 wherein the pouch is comprised of a flexible perforate sidewall of endless construction that engages animal attractant within the pouch during animal interaction grinding or abrading animal attractant into particles small enough to pass through perforations in the pouch.

15. The animal attractant dispensing device of any one of claims 1-13 wherein the pouch is comprised of a flexible perforate sidewall of endless construction that engages animal attractant within the pouch during animal interaction grinding or abrading animal attractant expressing oil therefrom producing a scent dispensed from the pouch.

16. The animal attractant dispensing device of any one of claims 1-13 wherein the pouch is comprised of a flexible perforate sidewall having a plurality of perforations formed therein whose size increases in response to animal-induced deformation of the pouch during animal interaction with the pouch dispensing particles of animal attractant through the enlarged perforations.

17. The animal attractant dispensing device of any one of claims 1-16 wherein the animal attractant is comprised of particulate or granular matter.

18. The animal attractant dispensing device of any one of claims 1-17 wherein the animal attractant comprises catnip.

19. The animal attractant dispensing device of any one of claims 1-18 wherein the pouch is closed at or adjacent opposite ends.

20. The animal attractant dispensing device of any one of claims 1-19 wherein the pouch is closed at or adjacent opposite ends by a seal.

21. The animal attractant dispensing device of any one of claims 1-20 wherein the seal at or adjacent opposite ends of the pouch comprises a heat seal.


64
78
28
79
66
76
80
42
40
20
30
32
36
26
34
38
24
22
27


FIG. 1


56
58
46
40
62
66
50
38
22
20
36
60


FIG. 5




FIG. 2




FIG. 4




FIG. 3


64
32
76
24
84
76
34
20
30
22
66
66
76
76
66
86
36
66
27
26
26
27
82
27

FIG. 6


22
44
26
50
27
27
66
26
66
50
66
46
66
46
50
27
86
66
24
26
50
27
66
27
26
46
82
27
26

FIG. 7



FIG. 8



FIG. 9

(12) INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

(19) World Intellectual Property Organization
International Bureau

(43) International Publication Date
31 May 2018 (31.05.2018)

WIPO | PCT

(10) International Publication Number
WO 2018/096524 A1

(51) International Patent Classification:
*A61D 5/00* (2006.01) *A01K 13/00* (2006.01)

(21) International Application Number: PCT/IB2017/057472

(22) International Filing Date: 28 November 2017 (28.11.2017)

(25) Filing Language: English

(26) Publication Language: English

(30) Priority Data:
62/497,616 28 November 2016 (28.11.2016) US
62/467,431 06 March 2017 (06.03.2017) US
62/571,689 12 October 2017 (12.10.2017) US

(72) Inventors; and
(71) Applicants: COOPERSMITH, Allan [CA/CA]; 245 Victoria Ave., Suite 620, Westmount, Québec H3Z 2M6 (CA). FISET, Nathalie [CA/CA]; 245 Victoria Ave., Suite 620, Westmount, Québec H3Z 2M6 (CA).

(74) Agent: CUTLER, Jonathan D.; BCF LLP, 1100 Rene-Levesque Blvd West, Suite 2500, Montreal, Québec H3B 5C9 (CA).

(81) Designated States *(unless otherwise indicated, for every kind of national protection available)*: AE, AG, AL, AM, AO, AT, AU, AZ, BA, BB, BG, BH, BN, BR, BW, BY, BZ, CA, CH, CL, CN, CO, CR, CU, CZ, DE, DJ, DK, DM, DO, DZ, EC, EE, EG, ES, FI, GB, GD, GE, GH, GM, GT, HN, HR, HU, ID, IL, IN, IR, IS, JO, JP, KE, KG, KH, KN, KP, KR, KW, KZ, LA, LC, LK, LR, LS, LU, LY, MA, MD, ME, MG, MK, MN, MW, MX, MY, MZ, NA, NG, NI, NO, NZ, OM, PA, PE, PG, PH, PL, PT, QA, RO, RS, RU, RW, SA, SC, SD, SE, SG, SK, SL, SM, ST, SV, SY, TH, TJ, TM, TN, TR, TT, TZ, UA, UG, US, UZ, VC, VN, ZA, ZM, ZW.

(84) Designated States *(unless otherwise indicated, for every kind of regional protection available)*: ARIPO (BW, GH, GM, KE, LR, LS, MW, MZ, NA, RW, SD, SL, ST, SZ, TZ, UG, ZM, ZW), Eurasian (AM, AZ, BY, KG, KZ, RU, TJ, TM), European (AL, AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FI, FR, GB, GR, HR, HU, IE, IS, IT, LT, LU, LV, MC, MK, MT, NL, NO, PL, PT, RO, RS, SE, SI, SK, SM, TR), OAPI (BF, BJ, CF, CG, CI, CM, GA, GN, GQ, GW, KM, ML, MR, NE, SN, TD, TG).

Published:
— *with international search report (Art. 21(3))*

(54) Title: ANIMAL DENTAL HYGIENIC DEVICE




Figure 41

**(57) Abstract:** Animal dental hygienic device, comprising: A hollow body having an exterior surface and an interior cavity, and being sized to fit within the mouth of the animal and to be bitten thereby. The hollow body having a plurality of apertures positioned along its exterior surface, the apertures extending from the exterior surface to the interior cavity. Each aperture having dental- hygienically active dimensions allowing an animal's tooth to penetrate through the aperture; such that (i) material surrounding the aperture frictionally engages the animal's tooth's outer surface during penetration of the aperture by the tooth, the material surrounding the aperture being of sufficient hardness to scrape the tooth's outer surface during frictional engagement to remove dental plaque, and (ii) a portion of the animal's tooth extends within the interior cavity during penetration of the aperture by the tooth.

WO 2018/096524 A1

# ANIMAL DENTAL HYGIENIC DEVICE

## CROSS-REFERENCE

[01] The present application claims priority to United States Provisional Patent Application No. 62/497,616, filed November 28, 2016, entitled "*Dental Cleaning Application Device and Method*". The present application also claims priority to United States Provisional Patent Application No. 62/467,431, filed March 6, 2017, entitled "*Dental Cleaning and Application Device and Method*". The present application also claims priority to United States Provisional Patent Application No. 62/571,689, filed October 12, 2017, entitled "*Animal Dental Hygienic Device*". As to the United States of America only, the entire contents of all of these patent applications are incorporated herein by reference.

## FIELD

[02] The present technology relates to dental hygienic devices for animals (including humans).

## BACKGROUND

[03] Domesticated animals, such as cats and dogs, often need dental care to prevent dental problems commonly due to plaque, tartar, tooth decay, gingivitis, periodontal disease, and the like. Poor dental health in such animals is, unfortunately, very common. Indeed, periodontal disease is one of the most frequently treated diseases by veterinarians in the United States.

[04] Most periodontal disease starts with the formation of a film of a soft amorphous biofilm called plaque, consisting primarily of oral bacteria, bacterial by-products, and oral debris. This film typically covers both the exposed tooth surface and the area lying under the gum line, the gingival cavity (sulcus). Through the deposition of calcium and other mineral salts, this layer of plaque hardens and develops into tartar. Although tartar is hard, it is also porous and adheres to the tooth surface. Tartar appears to be progressively deposited in layers and provides a rough surface onto which more plaque is deposited. As tartar builds up, a broad range of microbes can attach. The by-products of metabolism fFrom these bacteria cause inflammation of local tissues including those surrounding the gingival cavity. This ultimately leads to periodontal disease. The earliest stage is gingivitis, characterized by inflammation of the gums. As periodontal disease

progresses, gingivitis becomes periodontitis, with inflammation extending into the connective tissues surrounding the tooth. Through gingivitis and periodontitis, it is thought that harmful bacteria enter into the blood stream and ultimately lodge in the heart and other internal organs.

[05] The long-term impact of poor dental health can be devastating. Poor dental health is thought to be a contributing factor in the deaths of dogs, cats, and other mammals. In animals, as is the case in humans, poor dental health has been linked with serious diseases of the heart, liver, kidney, and other internal organs. Indeed, one study demonstrated that every dog with periodontal disease had pathological changes in the heart, liver, and kidneys.

[06] Dental care for animals is generally more difficult to manage than dental care for humans; animals do not voluntarily engage in tooth brushing.

[07] Some veterinarians recommend regularly brushing the animal's teeth, but as any pet owner knows, such a task is extremely difficult. It is often difficult for the owner to keep the animal's mouth open during brushing, and the process may be extremely unpleasant for the animal and even potentially dangerous to the owner. Few animal owners are willing and able to maintain this level of home care.

[08] Another solution is to bring the animal to the veterinarian to have it sedated and have the veterinarian perform dental care on the animal while it is under sedation. This solution, however, is not something that can reasonably be performed daily, weekly or even monthly. Sedation can be potentially harmful to the animal, especially if the animal is older.

[09] Many domestic animal dental hygienic devices have been created in the past. Unfortunately, none to date that provide satisfactory dental cleaning for animals are found in widespread contemporary use.

[10] As a simple example, U.S. Patent 6,405,681, issued June 18, 2002 to Ward, entitled "*Chew Toy*" provides: "*An animal chew toy and a system are disclosed that are capable of dispensing a liquid, such as a dentifrice, to the oral cavity of an animal. The toy may comprise one of various shapes such as a ball or a bone shape. The chew toy may provide a reservoir containing a plurality of apertures that dispense the liquid when compressed. The reservoir may provide bristles to brush the animal's teeth during play. The liquid may be a solution that*

*improves dental hygiene, such as fluoride, or in some instances, the solution may promote general health in the animal."* [Abstract Ward].

[11] Improvements in this area are therefore desirable.

SUMMARY

[12] It is thus an object of the present technology to ameliorate at least some of the inconveniences present in the prior art.

[13] It is also an object of the present technology to provide an improved animal dental hygienic device at least as compared with some of the prior art devices.

[14] The creator of the present technology has realized several facts that are believed to be helpful in designing improved animal dental hygienic devices.

[15] In this respect, the sides of the teeth facing the cheeks, *i.e.*, the buccal (facial) side – located in the buccal cavity, have a greater incidence of gingivitis and plaque/tartar build-up than the sides of the teeth facing the tongue, *i.e.*, the lingual (oral) side. It has also been found that the rear teeth, *i.e.*, the pre-molars and molars; more rapidly develop plaque and tartar than the front teeth. Yet, typical conventional animal hygienic devices seemingly have limited efficacy in cleaning the molars and pre-molars, and this notwithstanding the fact that these are the teeth where tartar build up typically is heaviest. These teeth are also the most difficult teeth for an animal owner to clean with a toothbrush. They are thus the areas where plaque accumulation can rapidly develop into gingivitis and pathogenic bacteria enter the blood stream with potentially harmful consequences. But, if an animal dental hygienic device is poorly designed, then, during chewing, little of the device will actually enter the rear buccal cavity, thus leading to reduced abrasive action and limited cleaning of the tooth surface.

[16] Further, typical conventional domestic animal hygienic products do not always clean the crevices of the animal's teeth, and many such products are ineffective in cleaning the areas underneath the animal's gums.

[17] A further drawback of typical conventional animal hygienic products is that many of these products are ineffective in removing existing tartar from the teeth. Because tartar is so hard,

attempting to remove tartar by the simple abrading action caused by chewing may not be effective in reducing the tartar.

[18] A common failure of the typical conventional animal dental hygienic devices is that they are not designed to take into account the bite force exerted by the teeth and the biting behavior of the target animals. If the bite resistance is too high, then the teeth will not evenly penetrate the product and there will be little opportunity for the product to push against the gums and clean in critical areas. Conversely, if the bite resistance is too low then the animal will rapidly bite through and potentially destroy the product; thus, little pressure will be exerted against the tooth surface under the gums again leading to poor cleaning in critical areas.

[19] Another issue is that typical conventional animal dental hygienic devices rely solely on bristles, which do not adequately clean the teeth of the animal.

[20] Some such typical conventional animal hygienic products have oral care additives that are designed to inhibit the formation of tartar. A problem with some of these products is that they do not necessarily function as desired. In this regard, the efficacy of these agents disappears when the product is swallowed or other food is eaten by the animal. In a similar vein, some of these products are unstable and their texture changes with time, losing their cleansing properties.

[21] The present technology was created with the foregoing information in mind. Thus, in one aspect, embodiments of the present technology provide an animal dental hygienic device, comprising: A hollow body having an exterior surface and an interior cavity. The hollow body is sized to fit within the mouth of the animal and to be bitten by the animal. The hollow body has a plurality of apertures positioned along the exterior surface of the hollow body. The apertures extend from the exterior surface to the interior cavity. Each aperture has dental-hygienically active dimensions allowing a tooth of the animal to penetrate through the aperture, such that (i) material surrounding the aperture frictionally engages an outer surface of the tooth of the animal during penetration of the aperture by the tooth, the material surrounding the aperture being of sufficient hardness (and in some embodiments also of sufficient roughness) to scrape the outer surface of the tooth during frictional engagement to remove dental plaque, and (ii) a portion of the tooth of the animal extends within the interior cavity during penetration of the aperture by the tooth.

[22] An animal dental hygienic device of the present technology attempts to overcome at least some of aforementioned difficulties with typical conventional domestic animal dental hygienic device. As an animal chews on an appropriately sized device, the teeth of the animal will penetrate through the body of the device via the apertures (which may also be described as channels through the hollow body). During such penetration, plaque, tartar and debris are cleaned from the animal's teeth surface via being scraped against the material surrounding the apertures. The more force that the animal exerts while biting the device, the deeper that their teeth will penetrate, thus cleaning the tooth closer to the animal's gum line and potentially cleaning the gingival cavity itself.

[23] Being designed in this manner, it is not necessary to design the material forming the hollow body to itself be penetrable by the teeth of the animal (although it may be in some embodiments). The apertures permit penetration and are appropriately sized to scrape a tooth of the animal as it penetrates therethrough. Indeed, the material surrounding the apertures (which is in many embodiments the same as the material of the remainder of the hollow body, although this is not required and is not the case in some embodiments), and the apertures themselves, may be designed and structured taking into account the typical animal's biting force in respect of which the device has been designed. In this manner, typical penetration depth of the teeth may be able to be controlled.

[24] The hollow body may be constructed from any suitable material or combination of materials sufficient to achieve the design objective referred to hereinabove. For example, in some embodiments, the hollow body may be constructed of a single material, such as any suitable biocompatible natural or synthetic rubber or plastic. In other embodiments, the hollow body may be constructed of more than one material, such as any combination of suitable such rubbers and/or plastics. In some embodiments, all of the materials of the hollow body (be there a single material or multiple materials) are edible by the animal. (In some such embodiments, the remainder of components of the device are edible as well so that the entire device may be consumed by the animal.)

[25] In some embodiments, the hollow body is of a single layer construction. In some embodiments, the hollow body is of a multiple layer construction with at least one of the layers being dental-hygienically active. In such embodiments, the other layers may also be dental-

hygienically active and/or may serve other purposes (including structural). As non-limiting examples, a device may have a fluoride release layer, an abrasive layer, a layer that acts like a squeegee, etc. or combination thereof, or of layers serving other purposes.

[26] In some embodiments, the hollow body is flexible while being chewed by the animal. In other embodiments, the hollow body is rigid while being chewed by the animal. It is not necessary that all portions of the hollow body have the same flexibility and/or rigidity. In some embodiments, the flexibility and/or rigidity of different portions of the hollow body varies.

[27] In still other embodiments, the material or materials (as the case may be) of which the hollow body is constructed may have other materials added therein and/or thereon to provide the device with additional functionalities, be they dental-hygienically active or otherwise. As an example, in some embodiments a mesh may be provided within or over the material of which the hollow body is constructed for structural stability purposes. In other embodiments, other materials such as plastic or metal fibers serve a similar purpose. As another example, in some embodiments, a mesh may also be provided on the exterior surface to enhance the scraping, and thus cleaning ability, of the device.

[28] Such suitable additional materials are not limited to those determined solely based on mechanical properties. In some embodiments, a chemical substance (material) having suitable chemical properties is associated with the hollow body. This includes chemical substances that are on the exterior surface and those that are within the material(s) of which the hollow body is constructed. This includes those chemical substances which are adhered to the surface or other part of the hollow body, which are absorbed within one or more of the materials of which the hollow body is constructed, and/or those which are adsorbed to one or more of the materials of which the hollow body is constructed. This includes materials of which the hollow body is constructed that release chemical substances as a result of the chewing and/or biting action of the animal on the device. This includes chemical substances that result from the breakdown of other materials or substances when in contact with a liquid such as water and/or the saliva of the animal. Such chemical substances may be a single chemical substance or a combination of chemical substances. Such chemical substances may have one or more desired functionalities. For example, such a chemical substance may be an anti-bacterial (be it to attempt to reduce the number of bacteria growing in or on the device or otherwise). Such a chemical substance may be

a medicament (be it a dental medicament to assist in dental hygiene (*e.g.*, fluorine, a dental disinfectant, etc.) or a medicament for some other purpose such as an antibiotic or medicine intended to be ingested by the animal for action in another part of the animal's body other than the mouth). Such a chemical substance may be a fragrance (be it one intended to attract the animal to the device and/or one intended to reduce or eliminate any malodorousness of the device and/or one intended to render the device (or its environment) more aromatic). Such chemical substance may be a flavor, such as one intended to make the device more attractive to the animal. Such a chemical substance may be a nutrient, such as a vitamin, a mineral, or a combination thereof. Such a chemical substance may also be mechanical, such as an abrasive, which may add in cleansing the tooth of the animal.

[29] The apertures may be of any shape sufficient to accomplish their intended function as described hereinabove. For example, in different embodiments, the apertures will be of one or more of the following shapes: slits, crosses, zigzags, stars, etc. (This list is not intended to be limiting, merely exemplary.) In some embodiments, all of the apertures of the device are of the same shape; but this is not required to always be the case. In some embodiments, different apertures of the same device have different shapes.

[30] Further the apertures may be of any thickness sufficient to allow a tooth of an animal (for which the device is designed) penetrating the aperture to extend into the internal cavity of the hollow body, as will be further described hereinbelow.

[31] In some embodiments, the apertures further have structures therein that assist in their scraping function. Non-limiting examples include edges that are beveled, honey-comb-like projections, etc.

[32] In some embodiments, the hollow body is constructed of material having sufficient flexibility to deform under pressure exerted by the animal biting the hollow body, and the dimensions of apertures change during deformation from initial dimensions to the dental-hygienically active dimensions. Dental-hygienically active dimensions are those sufficient to accomplish the function of the apertures as was previously described. In some such embodiments, the initial dimensions are themselves dental-hygienically active dimensions. In some other such embodiments, the initial dimensions are themselves not dental-hygienically

active dimensions. As an example, in some such embodiments, the apertures are slits in which the side walls touch each other (effectively closing the apertures) until pressure from the animal's biting the hollow body causes a deformation which separates the side walls form one another, opening the apertures.

[33] In some embodiments, at least some apertures are at least partially closed by at least one frangible closure broken open by the tooth of the animal penetrating the closure. In some embodiments, at least some apertures are only partially formed in the hollow body as manufactured (prior to being the device being bitten by the animal) (*e.g.*, apertures that upon manufacturing extend from the exterior surface into the hollow body but not completely to the interior cavity; apertures that extend from the interior cavity into the hollow body but not completely to the exterior surface; apertures that extend within the hollow body towards both the exterior surface and the interior cavity but that communicate with neither). In such embodiments, the apertures are caused to extend from the exterior surface to the interior cavity as the animal bites the device (*e.g.*, by tearing, ripping and/or piercing).

[34] In some embodiments, at least some of the material or materials (as the case may be) of which the hollow body is constructed may have a cancellous structure defining a network of small cell-like cavities; such cell-like cavities having a certain shape, a certain average size and a certain average density. In such embodiments, it is not necessary that all portions of the hollow body having such a cancellous structure have the same shape, average size and/or density of cell-like cavities. In some such embodiments, the shape and/or average size and/or density of cell-like cavities of different portions of the hollow body vary. In some such embodiments, apertures are defined by at least some of the cell-like cavities of the hollow body that are interconnected. In some such embodiments, apertures are defined by at least some of the cell-like cavities of the hollow body that are interconnectable upon the animal biting the device. In some such embodiments, the internal cavity is defined by the largest cell-like cavity of the hollow body.

[35] In some embodiments, projections extend outwardly from the exterior surface of the hollow body, the projections being positioned, dimensioned, shaped and structured to be dental-hygienically active as the animal bites the hollow body. In the context of the present technology no particular projection position, dimension, shape or structure is required as long as the function

of dental-hygienically activeness is met. Non-limiting examples of projection shapes are cylinders, rods, honeycomb-like, plates, etc.

[36] The projections may be of the same material as the hollow body or of a different material. Non-limiting examples of projection materials include plastic, silicone, wood, and edible substances.

[37] In some embodiments, the dental-hygienically activeness of the projections occurs as the projections frictionally engage at least the outer surface of the tooth of the animal as the tooth penetrates an aperture, thus removing plaque and/or tartar from the outer surface of the tooth. In some embodiments, the dental-hygienically activeness of the projections occurs as the projections frictionally engage at least the gums of the animal as the tooth of the animal penetrates an aperture. In some such embodiments, the projections assist in cleaning the gingival cavity of the tooth of the animal.

[38] In some such embodiments, when the material of which the hollow body is constructed deforms under pressure, for example as was described hereinabove, the projections move from an initial configuration to a dental-hygienically active configuration. Dental-hygienically active configurations are those sufficient to provide a dental function to the projections, for example as were previously described. In some such embodiments, the initial dimensions are themselves dental-hygienically active dimensions. In some other such embodiments, the initial dimensions are themselves not dental-hygienically active dimensions. Both cases are within the scope of the present technology. The projections may have one or more chemical substances associated with them as was described hereinabove in relation to the hollow body itself.

[39] As was stated hereinabove, each aperture is dimensioned such that a portion of the tooth of the animal extends within the interior cavity during penetration of the aperture by the tooth when the animal chews and/or bites the device. In many embodiments, a filler material is present within the interior cavity of the device. In some such embodiments, the filler material completely fills the interior cavity. In most of some such embodiments, the filler is a material (or materials) different than material(s) of which the hollow body is constructed.

[40] The range of filler materials within the scope of the present technology is vast. Non-limiting examples include the following: In some embodiments, for example in those wherein the hygienic device that is intended for use by dogs, the filler material may contain wood. As dogs like to chew wooden sticks, having a filler in the form of a wooden stick may induce dogs to chew the device for relatively longer periods of time, providing a better cleaning of their teeth. For similar reasons, in some embodiments, the filler material may contain rawhide. In other embodiments, such as those wherein the hygienic device is intended for cats, the filler material may contain catnip and/or other cat attracting herbs.

[41] In some embodiments, the filler material may include food to induce the animal to bite the device. In some such embodiments, the food filler material may exit the device (for example via the apertures or some other means) and be available to be eaten by the animal. In some embodiments, the filler material may be a material structured to engage the outer surface of the animal's tooth within the interior cavity and having a shape and sufficient hardness (and roughness) to scrape the outer surface and/or to provide additional frictional engagement to clean the tooth (*e.g.*, brushes, bristles, wires, meshes, sponges etc. made of natural or synthetic materials, plastics, rubbers, elastomers, etc. and being of any suitable shape (*e.g.*, circular, longitudinal, horizontal, spiral, etc.)).

[42] In the context of the present technology filler materials are not limited to solids, as, for example, in some embodiments, the filler material may be or contain fluids such as liquids, gels, pastes, etc. or any suitable combination thereof. Thus, in some embodiments the interior cavity may serve as a reservoir for a fluid material to exit the device during chewing or biting and enter the mouth of the animal (without or along with solid particles also being part of the filler). Non-limiting examples of the functions of such fluids include toothpastes, mouth rinses, dental medicaments, other medicaments and medications, flavors, animal attractants, nutrients, vitamins etc. Almost any biocompatible fluid may be housed within the interior cavity (as long as it is not incompatible within any other component or filler of the device).

[43] Filler is not limited to a single material; multiple non-incompatible materials are present as filler within the interior cavity in some embodiments. As a simple non-limiting example of a multiple material filler is a brush coated with a dental antibiotic.

[44] In some embodiments, each aperture is at least one of structured, dimensioned, and positioned so as to discourage filler material from exiting the cavity via that aperture, be it generally or only cases where the animal is not chewing or biting the device. A non-limiting example of the latter is the case described hereinabove where the apertures are slits in which the side walls touch each other (effectively closing the apertures) until pressure from the animal's biting the hollow body causes a deformation which separates the side walls form one another, opening the apertures.

[45] In some embodiments, the hollow body is sealed and replacement of the filler material is not possible. In some such embodiments, the entire device is biodegradable, recyclable and/or compostable.

[46] In some embodiments, the hollow body has at least one releasably-attachable removable portion allowing access to the filler material in the cavity. In some such embodiments, once the removable portion attachment has been released and the removable portion has been removed, the filler material can be removed (if necessary) and new filler material (be it the same as or different from the old filler material) can be inserted into the interior cavity of the device. The removable portion can then be reattached and the device reused with the new filler material.

[47] In some such embodiments, in order to facilitate removal and replacement of the filler material, the filler material is attached to the removable portion of the hollow body. Thus, when the removable portion is removed from the hollow body, the filler material is removed as well. Further, in some such embodiments, reinsertion of new filler material and the removable portion (be it the old removable portion to which the new filler material has been attached or a new removable portion having new filler material attached), is accomplished as a single unit.

[48] In some embodiments, the device is dog-bone shaped. In some such embodiments, the at least one releasably-attachable removable portion is a flared-end of the dog-bone.

[49] In some embodiments, the device is one of a rod, spherical, disc, and annular (*e.g.*, doughnut) shape.

[50] In some embodiments, is structured to be attachable to an animal toy.

[51] In some embodiments, the device is at least part of an animal toy.

[52] While most embodiments of the device of the present technology are intended for use by domestic animals, embodiments of the device may be constructed for use by other animals such as humans, feral animals or wild animals.

[53] Embodiments of the present technology each have at least one of the above-mentioned object and/or aspects, but do not necessarily have all of them. It should be understood that some aspects of the present technology that have resulted from attempting to attain the above-mentioned object may not satisfy this object and/or may satisfy other objects not specifically recited herein.

[54] Additional and/or alternative features, aspects and advantages of implementations of the present technology will become apparent from the following description, the accompanying drawings and the appended claims.

BRIEF DESCRIPTION OF THE DRAWINGS

[55] For a better understanding of the present technology, as well as other aspects and further features thereof, reference is made to the following description which is to be used in conjunction with the accompanying drawings, where:

[56] Figure 1 is a transverse cross-section of an animal dental hygienic device being a first embodiment of the present technology;

[57] Figure 2 is a transverse cross-section similar to Figure 1, schematically showing animal teeth engaging the device;

[58] Figure 3 is a transverse cross-section of an animal dental hygienic device being a second embodiment of the present technology, schematically showing animal teeth being guided along the surface of primary projections;

[59] Figure 4 is a transverse cross-section similar to Figure 1, schematically showing animal teeth being cleaned by frictional engagement with secondary projections (projecting from primary projections projecting from the exterior surface of the hollow body thereof);

[60] Figure 5 is a transverse cross-section similar to Figure 4, schematically showing animal teeth biting the flexible hollow body of the device causing deformation causing the primary projections to move towards the outer surfaces of the teeth causing the secondary projections to frictionally engage the outer surfaces of the teeth with greater force, enhancing the cleaning action of the secondary projections;

[61] Figure 6 is a side elevation view of an animal dental hygienic device in the form of a sphere (having primary and secondary projections projecting from the exterior surface of the hollow body thereof) being a third embodiment of the present technology;

[62] Figure 7 is a side elevation view of an animal dental hygienic device in the form of "barbell" (a central right cylindrical rod having an interior cavity schematically shown in dotted lines and having spheres at each end) (having primary and secondary projections projecting from the exterior surface of the hollow body thereof) being a fourth embodiment of the present technology;

[63] Figure 8 is a longitudinal cross-section of an animal dental hygienic device in the form of a right cylindrical rod (having primary and secondary projections projecting from the exterior surface of the hollow body thereof) showing the interior cavity of the hollow body thereof lined with a membrane and forming a reservoir, being a fifth embodiment of the present technology;

[64] Figure 9 is a longitudinal cross-section similar to Figure 8 showing apertures (channels) through the hollow body to the exterior surface thereof, being a sixth embodiment of the present technology;

[65] Figure 10 is a longitudinal cross-section similar to Figure 9 showing a device being a seventh embodiment of the present technology having cylindrical primary and secondary projections;

[66] Figure 11 is a cross-section showing a dental hygienic device being an eighth embodiment of the present technology being particularly adapted for use by a human, having vertical and horizontal cylindrical projections;

[67] Figure 12 is a cross-section similar to Figure 11 schematically showing human teeth entering the device;

[68] Figure 13 is a schematic cross section of an animal dental hygienic device being a ninth embodiment of the present technology, schematically showing teeth of the animal penetrating apertures of the device;

[69] Figure 14 is schematic cross-section of an animal dental hygienic device being an tenth embodiment of the present technology, including projections, schematically showing teeth of the animal penetrating apertures of the device;

[70] Figure 15 is schematic cross-section of an animal dental hygienic device being an eleventh embodiment of the present technology, including primary and secondary projections, schematically showing teeth of the animal penetrating apertures of the device;

[71] Figure 16 is a transverse cross-section of an animal dental hygienic device being a twelfth embodiment of the present technology, including primary projections, schematically showing teeth of the animal penetrating apertures of the device; there being a circular brush with bristles in the interior cavity of the hollow body of the device to assist in cleaning the teeth;

[72] Figure 17 is a close-up schematic cross-section of an aperture of the exterior surface of the hollow body through which a tooth of the animal may penetrate, along with an upper tooth of the animal; Figure 17*bis* is a close-up schematic cross-section of an aperture of the exterior surface of the hollow body through which a tooth of the animal has penetrated, shown schematically;

[73] Figure 18 is a close-up schematic cross-section of an aperture of the exterior surface of the hollow body through which a tooth of the animal may penetrate, along with a lower tooth of the animal; Figure 18*bis* is a close-up schematic cross-section of an aperture of the exterior surface of the hollow body through which a tooth of the animal has penetrated, shown schematically;

[74] Figure 19 is a close-up schematic cross-section similar to both Figures 17 and 18, schematically showing upper and lower teeth of the animal penetrating the apertures;

[75] Figure 20 is a close-up schematic cross-section similar to Figure 19 schematically showing the portions of the teeth of the animal having penetrated within the interior cavity of the hollow body being cleaned by a brush within the interior cavity;

[76] Figure 21 shows a schematic view of an animal dental hygienic device being an thirteenth embodiment of the present technology, being ring-shaped, showing toothbrush bristle like projections projecting from the exterior surface of the hollow body of the device;

[77] Figure 22 shows a schematic longitudinal cross-section of an animal dental hygienic device being a fourteenth embodiment of the present technology, showing toothbrush bristle like projections projecting from the exterior surface of the hollow body of the device;

[78] Figure 23 shows a schematic top view of an animal dental hygienic device being a fifteenth embodiment of the present technology, being horseshoe-shaped and having a handle, showing toothbrush bristle like projections projecting from the exterior surface of the hollow body of the device;

[79] Figure 24 shows a schematic longitudinal cross-section of an animal dental hygienic device being a sixteenth embodiment of the present technology, being shaped to fit the teeth contours of a cat's or dog's (the proximal and distal aspects are thinner than the middle of the device which coincides with the forms and occlusion of the animal's incisors, molars and bicuspids respectively), showing toothbrush bristle like projections projecting from the exterior surface of the hollow body of the device;

[80] Figure 25 shows an isometric view taken from a first end of an animal dental hygienic device being a seventeenth embodiment of the present technology, being dog-bone shaped;

[81] Figure 26 shows an isometric view taken from a first end of the device of Figure 25 with some of the projections having been removed for clarity;

[82] Figure 27 shows an isometric view taken from a first end of the device of Figure 25 as shown in Figure 26, wherein a releasably-attachable removable portion of the hollow body has been detached from the remainder of the hollow body;

[83] Figure 28 shows an isometric view taken from a second end of the device of Figure 25 as shown in Figure 26;

[84] Figure 29 shows an isometric view taken from a second end of the device of Figure 25 as shown in Figure 26, wherein a releasably-attachable removable portion of the hollow body has been detached from the remainder of the hollow body;

[85] Figure 30 shows a side elevation view of the device of Figure 25 as shown in Figure 26;

[86] Figure 31 shows a side elevation view of the device of Figure 25 as shown in Figure 26 illustrating cross-section line 32 – 32;

[87] Figure 32 shows a cross section of the device of Figure 25 as shown in Figure 26 taken along the line 32 – 32 in Figure 31;

[88] Figure 33 shows the cross section of Figure 32 with a piece of wood shown schematically in the interior cavity of the device;

[89] Figure 34 shows an isometric view of the attachment end of the remainder of the device of Figure 25 as shown in Figure 26, after a releasably-attachable removable portion of the hollow body has been detached from the remainder;

[90] Figure 35 shows an isometric view of the removable portion of the device of Figure 25 as shown in Figure 26;

[91] Figure 36 shows an elevation view of the attachment end of the remainder of the device of Figure 25 as shown in Figure 26, after a releasably-attachable removable portion of the hollow body has been detached from the remainder;

[92] Figure 37 shows an elevation view of the attachment end of the removable portion of the device of Figure 25 as shown in Figure 26;

[93] Figure 38 shows an elevation view of the non-attachment end of the removable portion of the device of Figure 25 as shown in Figure 26;

[94] Figure 39 shows an elevation view of the non-attachment end of the remainder of the device of Figure 25 as shown in Figure 26, after a releasably-attachable removable portion of the hollow body has been detached from the remainder;

[95] Figure 40 is a close-up elevation view of the side of the hollow body of the device of Figure 25, showing a brush with bristles in the interior cavity thereof;

[96] Figure 41 is a top, side perspective view taken from a first end of the device of Figure 25, with the removable portion detached from the remainder, showing a brush with bristles in the interior cavity thereof;

[97] Figure 42, shows an isometric view taken from a first end of the remainder of the device of Figure 25 as shown in Figure 26, after a releasably-attachable removable portion of the hollow body has been detached from the remainder; showing a brush with bristles in the interior cavity thereof;

[98] Figure 43 is an elevation view of the attachment end of the remainder of the device of Figure 25 as shown in Figure 26, after a releasably-attachable removable portion of the hollow body has been detached from the remainder, showing a brush with bristles in the interior cavity thereof, and showing teeth of a dog penetrating the device and contacting the bristles;

[99] Figure 44 is an elevation view of the attachment end of the remainder of the device of Figure 25 as shown in Figure 26, after a releasably-attachable removable portion of the hollow body has been detached from the remainder, showing teeth of a dog penetrating the device, with the mouth of the animal almost closed;

[100] Figure 45 shows an isometric view of an animal dental hygienic device being a nineteenth embodiment of the present technology, being shaped as a sphere;

[101] Figure 46 shows a side elevation view of the device of Figure 45 with a releasably-attachable removable portion of the hollow body removed;

[102] Figure 47 shows an elevation view of an animal dental hygienic device being a twentieth embodiment of the present technology, being shaped and sized as a part of a cat toy;

[103] Figure 48 shows a perspective view of an animal dental hygienic device being an twenty-first embodiment of the present technology, being shaped and sized as a part of a cat toy;

[104] Figure 49 shows a perspective view of the device of Figure 48 along with two other animal dental hygienic devices being the twenty-second and twenty-third embodiments of the present technology, being shaped and sized as a parts of a cat toys;

[105] Figure 50 is a side elevation view of a device shown in Figure 49 being the twenty-second embodiment of the present technology;

[106] Figure 51 is a side elevation view of a device shown in Figure 49 being the twenty-third embodiment of the present technology;

[107] Figure 52 shows perspective views of the attachment ends of the remainders of the devices of Figure 25 as shown in Figure 26, after releasably-attachable removable portions of the hollow bodies have been detached from the remainders, showing various materials that have been inserted into the interior cavities thereof;

[108] Figure 53 schematically shows teeth of a large dog before having chewed a device of the present technology;

[109] Figure 54 schematically shows the same teeth of the same dog of Figure 53 after having chewed on a device of the present technology for two days;

[110] Figure 55 schematically shows a close-up view of the same teeth of the same dog of Figure 53 after having chewed on a device of the present technology for three days.

## DETAILED DESCRIPTION

[111] Referring to the Figures, there are shown various animal dental hygienic devices of the present technology. It is to be expressly understood that the various animal dental hygienic devices are merely some embodiments of the present technology. Thus, the description thereof that follows is intended to be only a description of illustrative examples of the present technology. This description is not intended to define the scope or set forth the bounds of the present technology. In some cases, what are believed to be helpful examples of modifications to

the animal dental hygienic devices may also be set forth below. This is done merely as an aid to understanding, and, again, not to define the scope or set forth the bounds of the present technology. These modifications are not an exhaustive list, and, as a person skilled in the art would understand, other modifications are likely possible. Further, where this has not been done (*i.e.*, where no examples of modifications have been set forth), it should not be interpreted that no modifications are possible and/or that what is described is the sole manner of embodying that element of the present technology. As a person skilled in the art would understand, this is likely not the case. In addition, it is to be understood that the animal dental hygienic devices may provide in certain instances simple embodiments of the present technology, and that where such is the case they have been presented in this manner as an aid to understanding. As persons skilled in the art would understand, various embodiments of the present technology may be of a greater complexity.

[112] Figure 1 shows a transverse cross-section of an animal dental hygienic device being a first embodiment of the present technology. The device has a flexible plastic hollow body 1, having a circular interior cavity 2. Primary projections 3 extend radially away from the exterior surface of the hollow body 1. In this embodiment, primary projections 3 are made of the same flexible plastic as the hollow body 1. Extending from the primary projections 3 are secondary projections 4. In this embodiment, secondary projections 4 are made of the same flexible plastic as the hollow body 1 and the primary projections 3. In other embodiments, the primary projections 3 may comprise bristles, plastic, silicone, rubber, wood, etc. In other embodiments, a primary projection 3 may be bent or angled in such a way to form a secondary projection 4. In this embodiment, the primary projections 3 are triangular in shape when viewed in a transverse cross-section, with the base of the triangle at the exterior surface of the hollow body 1. In this embodiment, the primary projections 3 are flexibly rigid. In other embodiments, the primary projections (when present) are various different shapes and sizes and rigidities and flexibilities. In other embodiments, the surfaces of the primary projections 3 are roughened and/or contain and/or have attached to them chemical substances. Such chemical substances in various other embodiments are, by way of example, abrasives, additives, nutrients, etc. The primary projections 3 clean teeth, gums, and tongue of the animal, and in this embodiment the primary projections 3 help to guide the animal's teeth to engage the secondary projections 4 which are more numerous and have larger cleaning surface, thereby producing a more effective and efficient cleaning action

than the primary projections 3 may otherwise produce by themselves. Apertures are not illustrated in this view.

[113] Figure 2 is a transverse cross-section similar to Figure 1, schematically showing animal teeth (an upper tooth 11 and a lower tooth 13) engaging the device. Specifically, upper tooth 11 and lower tooth 13 are schematically shown at the moment of biting in the dental hygienic device. In this embodiment, the triangular shape of the primary projections 3 and the secondary projections 4 is selected to conform to most animal teeth (and indeed most human teeth), which are themselves triangular in shape.

[114] Figure 3 is a transverse cross-section similar to Figure 1, schematically showing animal teeth 10, 12 being guided along the surface of primary projections 3. Specifically, an upper tooth 10 and/or lower tooth 12 biting on a distal aspect of a primary projection 3, is guided towards the exterior surface of the hollow body 1, and in so doing allows for more effective cleaning by the secondary projections (where present), as well as preparing the biting force to engage (and penetrate) the hollow body 1. Upper tooth 11 and lower tooth 13 can be seen resting between primary projections 3 after having been guided by the slope of a primary projection 3.

[115] Figure 4 illustrates the preferred biting position of teeth 11 and 13 between the primary projections 3 wedged between the secondary projections 4, engaging the hollow body 1 of the device.

[116] Figure 5 demonstrates the biting force of upper 11 and lower 13 teeth engaging the flexible hollow body 1 (prior to penetration), causing a deformation 20 in the hollow body 1, and interior cavity 22. The deformation 20 causes the proximal displacement 25 of the primary projection 3 as well as the secondary projections 4 attached thereto, thereby creating an active cleaning movement on the part of both the primary projections 3 and secondary projections 4 (those of which that are moving are referenced as 24).

[117] Figure 6 illustrates another embodiment of an animal dental hygienic device, which is spherical. In this embodiment, the same principal of guiding and cleaning by primary projections 3 being displaced proximally towards teeth 11 and 13 as a biting force is exerted is true. As was discussed above, this causes increased movement of and hence cleaning by the primary

projections 3 and secondary projections 4 when the hollow body 1 of the device is round (as seen in Figure 6) or rod-shaped (in whole or in part) as illustrated in Figures 7, 8, 9 and 10. Apertures are not illustrated in this view.

[118] Figure 7 is a side elevation view with partial cross-section of an animal dental hygienic device in the form of "barbell" (a central right cylindrical rod having spheres at each end) (having primary projections 3 and secondary projections 4 projecting from the exterior surface of the hollow body 1 thereof) being another embodiment of the present technology. The interior cavity 2 of the hollow body 1, shown in dotted lines, serves as a reservoir which may contain any one or more of various solids, liquids or gels. A handle may be attached to one end of the device so that the device can be moved over the teeth of the animal in a brushing motion by a human (*e.g.*, as illustrated in Figure 23). Apertures are not illustrated in this view.

[119] Figure 8 is a longitudinal cross-section of an animal dental hygienic device in the form of a right cylindrical rod (having primary projections 3 and secondary projections 4 projecting from the exterior surface of the hollow body 1 thereof) showing the interior cavity 2 of the hollow body 1 thereof. In this embodiment, the interior cavity 2 is lined with a membrane 7 sealing the interior cavity 2 to form a reservoir. Apertures are not illustrated in this view.

[120] Figure 9 is a longitudinal cross-section similar to Figure 8 showing apertures (in this embodiment in the form of cylindrical "tube-like" channels) 8 from the membrane 7 lining the interior cavity 2 and through the hollow body 1 to the exterior surface thereof. The apertures 8 are located on the exterior surface of the hollow body 1 between the primary projections 3. As teeth bite the device, prior to penetration, pressure is exerted against the hollow body 1 of the device, thereby expressing material contained in the interior cavity 2 therein through the membrane 7 and through the apertures 8. In this embodiment, the apertures 8 are open on both ends (through the hollow body 1) and an appropriately sized material (*e.g.*, a fragrance, a medicament, a nutrient, etc., or any combination thereof) is placed into the interior cavity 2. Thus, saliva from the animal will enter the interior cavity 2 either prior to or after penetration of the apertures 8 by the teeth of the animal and will interact with the material which will be released into the mouth of the animal.

[121] Figure 10 is a longitudinal cross-section similar to Figure 9 showing a device being another embodiment of the present technology. In this embodiment, the primary projections 3 and the secondary projections 4 are cylindrical. Also in this embodiment, secondary projections 41, 42, 43 extend from the distal end of the primary projections 3. Optionally, the secondary projections 4 (and/or 41, 42, 43) may include brush bristles. Also in this embodiment, the secondary projections may be constructed of one or more of the following: plastic, silicone, nylon, rubber, a mineral (*e.g.* calcium) or a nutrient. The motion and force of an upper tooth biting the device is schematically represented in Figure 10 by an arrow 55. The force generated causes the deformation 20 of primary projections 3, inward towards the tooth (not shown, which may engage the device at a point that is either before or past the cross-section plane of Figure 10) in order to enhance the cleaning action of the primary projections 3 and the second projections 4.

[122] Figures 11 and 12 are cross-sections showing a dental hygienic device being another embodiment of the present technology being particularly adapted for use by a human. The hollow body 1 of the device in this embodiment has a transverse cross-section in the form of an "H" that is dimensioned to fit between upper teeth (55 shown in Figure 12 and schematically in Figure 11) and lower teeth (56 shown in Figure 12 and schematically in Figure 11). The hollow body 1 has a facial (distal) side flange 60 and an oral side flange 61. In this embodiment, the interior cavity 2 serves as a reservoir a material that will exit from the interior cavity 2 and deposited onto the teeth 55 and 56 via apertures (prior to penetration) 8. A force exerted will be exerted on the central connecting portion 65 of the "H"-shaped hollow body 1 by the upper teeth 55 and the lower teeth 56 coming together during chewing or biting causes an inward movement 50 and 51 of part 30 of the flange portions of the "H" 60, 61 thereby causing a cleaning movement of the secondary projections 40, 41, 42 against the teeth and other oral structures. Furthermore, as this force is exerted onto the reservoir formed by the interior cavity 2 of the hollow body 1, material inside the interior cavity will exit via the apertures 8 as was described hereinabove in relation to other embodiments. As teeth 55, 56 penetrate the apertures 8, they will be cleaned by being scraped by the material surround the apertures 8. Also in this embodiment, the secondary projections 4 may be constructed of one or more of the following: plastic, silicone, nylon, wood, rubber, a mineral (*e.g.* calcium) or a nutrient. Secondary projections 4 may optionally be edible.

[123] Figure 13 is a schematic cross section of an animal dental hygienic device being another embodiment of the present technology, schematically showing an upper tooth 65 and a lower tooth 66 of the animal having penetrated and deformed apertures 70 of the device.

[124] Figure 14 is schematic cross-section of an animal dental hygienic device being another embodiment of the present technology, including primary projections 3 as were described hereinabove in relation to other embodiments. An upper tooth 65 and a lower tooth 66 of the animal are schematically shown penetrating and deforming apertures 70 of the device. The device has a hollow body 71 and an interior cavity 2.

[125] Figure 15 is schematic cross-section of an animal dental hygienic device being another embodiment of the present technology, including primary projections 3 and secondary projections 4 as were described hereinabove in relation to other embodiments. An upper tooth 65 and a lower tooth 66 of the animal are schematically shown penetrating deformed apertures 70 of the device. The device has a hollow body 71 and an interior cavity 2.

[126] Figure 16 is schematic cross-section of an animal dental hygienic device being another embodiment of the present technology, including primary projections 3 as were described hereinabove in relation to other embodiments. The device has a hollow body 71 and an interior cavity 2. Inside the interior cavity 2, is a brush 76 having bristles 75. An upper tooth 65 and a lower tooth 66 of the animal are schematically shown penetrating deformed apertures 70 of the device. Once a tooth 65 and/or 66 is within the interior cavity 2 it will contact the bristles 75 of the brush 76 which will assist in cleaning the tooth. Optionally, the bristles 75 of the brush 76 may extrude through the apertures 8 and deformed apertures 70 as the device is chewed in order to additionally clean teeth and gums of the animal.

[127] Figure 17 is a close-up schematic cross-section of an aperture 84 of the exterior surface of the hollow body through which an upper tooth 65 of the animal may penetrate, along with an upper tooth 65 of the animal. In this embodiment, the material at the edge 80, 81 of the aperture 84 has a cross-section that is triangular in shape. In other embodiments, the material at the edge 80, 81 of the aperture 84 has a cross-section that is rectangular or another geometric form in shape. Figure 17*bis* schematically shows the upper tooth 65 penetrating the deformed aperture 84.

[128] Figure 18 is a close-up schematic cross-section of an aperture 85 of the exterior surface of the hollow body through which a lower tooth 66 of the animal may penetrate, along with a lower tooth 66 of the animal. In this embodiment, the material at the edge 82, 83 of the aperture 85 is triangular in shape. In other embodiments, the material at the edge 82, 83 of the aperture 85 is rectangular or another geometric form in shape. Figure 18*bis* schematically shows the lower tooth 66 penetrating the deformed aperture 70.

[129] Figure 19 is a combination of Figures 17*bis* and 18*bis*, schematically showing the incisal edge 95 of the upper tooth 65 and the incisal edge 96 of the lower tooth 66 being within the interior cavity 2 of the hollow body 71 of the device.

[130] Figure 20 is similar to Figure 19, schematically showing the incisal edges 95, 96 contacting the bristles 75 of a brush 76 within the interior cavity 2 of the hollow body 71 of the device, for additional cleaning.

[131] Figure 21 shows a schematic view of an animal dental hygienic device being another embodiment of the present technology, the device being ring-shaped. In this embodiment, toothbrush bristle like projections 100, 101 project from the exterior surface of the hollow body 1 of the device. Projections 100 clean the maxillary teeth (not shown) when the device is chewed and projections 101 clean the mandibular teeth (not shown) when the device is chewed.

[132] Figure 22 shows a schematic longitudinal cross-section of an animal dental hygienic device being an embodiment of the present technology, with the interior structure of the device being similar to that shown in Figure 8. In this embodiment, toothbrush bristle like projections 100, 101 project from the exterior surface of the hollow body 1 of the device. Projections 100 clean the maxillary teeth when the device is chewed and projections 101 clean the mandibular teeth when the device is chewed.

[133] Figure 23 shows a schematic view of an animal dental hygienic device being another embodiment of the present technology. In this embodiment, the hollow body 112 of the device is horseshoe-shaped and conforms to the jaws of an animal (*e.g.*, a dog, a cat, livestock, etc.) for which the device is designed to be used. The device has handle 110 for placing the device into the mouth of an animal. A guard 111 helps to protect a person holding the handle from being

accidentally bit. Toothbrush bristle like projections 100 project from the exterior surface of the hollow body of the device for additional cleaning.

[134] Figure 24 shows a schematic longitudinal cross-section of an animal dental hygienic device being an embodiment of the present technology. In this embodiment, the device is shaped to fit the teeth contours of a cat's or dog's (the proximal and distal aspects 120, 122 (respectively) are thinner than the middle of the device 121 (which bulges) to coincide with the form and occlusion of the animal's incisors, molars and bicuspids respectively). Toothbrush bristle like projections 100 project from the exterior surface of the hollow body 113 of the device for additional cleaning.

[135] With reference to Figures 25-44 and 51-54 there is shown an animal dental hygienic device 200 being another embodiment of the present technology. The device 200 has a hollow body 206 having an exterior surface 210 and an interior cavity 202 therein. The device 200 is made of a flexible (when bitten by a dog) thermoplastic elastomer, styrene butadiene block copolymer – modified with polypropylene. The device 200 has the shape of a "dog-bone" which is sized to fit into the mouth of a medium to large sized dog. The device 200 has two flared ends 214, 218 and a central section (unlabelled).

[136] The hollow body 206 of the device has a plurality of apertures 208 along the exterior surface 210 thereof. These apertures extend from the exterior surface 210 of the hollow body 206, through its thickness 238, to the interior cavity 202 thereof. In this embodiment, the apertures 208 are rectangular and extend transverse to the longitudinal centerline of the device 200. The apertures are dimensioned such that teeth 1000 of an animal (Figures 51-53) (shown as teeth models 302, 312 in Figure 43) extend therethrough as the animal bites down on the device 200. As can be seen in Figure 43, a portion 304, 314 of the tooth 302, 312 extends within the interior cavity 202 as the animal bites down on the device 200. The apertures 208 are also dimensioned such that the material 212 (in this case the TPE) frictionally engages an outer surface 306, 316 of the tooth 302, 312 of the animal during penetration of the aperture 308 by the tooth 302, 312. The material 212 surrounding the aperture 208 of sufficient hardness to scrape the outer surface 306, 316 of the tooth 302, 312 during frictional engagement to remove dental plaque 1003 therefrom (Figures 52-54).

[137] In this embodiment, there is a brush 262 having bristles 264 within the interior cavity 202 of the device 200 (*e.g.*, see Figure 42). As can be best seen in Figure 43, as the teeth 302, 312 extend into the interior cavity 202 of the device 200, the outer surface 306, 316 of the portion thereof 304, 314 extending into the interior cavity 202 comes into contact with the bristles 264 of the brush 262 and is cleaned thereby.

[138] The effectiveness of the device 200 can be seen in Figure 53, 54, and 55. In Figure 53, the dog has patches of tartar 1003 that can be seen on its teeth 1000. (The tartar 1003 can be more easily seen with a dental stain designed for that purpose.) In Figure 54, after two days of using (at the dog's discretion) the device 200, it can be seen that the size of the tartar 1003 has been greatly reduced. In Figure 55, after three days of using (at the dog's discretion) the device 200, it can be seen that the size of the tartar 1003 is even further reduced.

[139] As can be seen in Figure 25, many projections 204 extend from the exterior surface 210 of the hollow body 206. In this embodiment, these projections 204 are made from the same material as the hollow body 206 itself. In this embodiment, these projections 204 are positioned, dimensioned, shaped and structured to massage the gums of the dog as the dog bites the device 200 and its teeth 302, 312 have deeply penetrated the apertures 208. This may help to clean the animal's gums, as can be seen in a comparison of Figures 53, 54, and 55. The hollow body 206 is flexible as the animal bites the device 200. In Figure 42 the device is annular in cross section. In Figure 43 the device 200 has become slightly oval in cross section. In Figure 44 the device 200 has become a much more pronounced oval in cross section. This flexibility will cause the projections 204 to move with respect to the mouth and teeth of the animal and may assist in enhancing the cleaning action of the device 200.

[140] In this embodiment, the device 200 has a releasably-attached removable portion 250 (which can be best seen in Figure 35). When the removable portion 250 is detached from the remainder 240 of the device 200, the interior cavity 202 thereof is accessible. This allows for structures (such as brush 262) to be removed from and/or placed into the interior cavity 202. Referring to Figure 52, there are shown (a non-limiting set of) examples of materials that can be placed within the interior cavity 202 of the device 200: (I) A rawhide stick 902 can be placed within the interior cavity 202 for increasing the attractiveness of the device 200 to dogs. (II) Metallic coils 904 can be placed within the interior cavity 202 for increasing the teeth cleaning

capability of the device 200. (III) Plastic strands 906 can be placed within the interior cavity 202 for increasing the teeth cleaning capability of the device 200. (IV) A brush having bristles 908 can be placed within the interior cavity 202 for increasing the teeth cleaning capability of the device 200. (V) A wooden rod 910 can be placed within the interior cavity 202 for increasing the attractiveness of the device 200 to dogs. (See also Figure 33.) (VI) A rawhide stick 912 and wooden rods 914 can be placed within the interior cavity 202 together for increasing the attractiveness of the device 200 to dogs. (VII) Wooden cubes 916 can be placed within the interior cavity 202 for increasing the attractiveness of the device 200 to dogs.

[141] Referring to Figures 35 to 41, in this embodiment, the releasably-attached removable portion 250 is one 218 of the flared ends 214, 218 of the device 200. In this respect, the removable portion 250 has a plug 216, the end 228 of which fits securely inside the end 224 of the reminder 250 of the device 200. The plug 216 has a cylindrical portion 222 with raised flanges 220 that can be inserted into the end 224 of the remainder 240. Once inside the end 224 of the remainder 240, the raised flanges 220 fit snugly within grooves 234 and the cylindrical portion 222 mates with an interior cylindrical portion 232 of the interior of the end 224 of the remainder 240. This registration and mating relationship is such that the removable portion 250 will not generally become detached from the remainder 240 during normal use by a dog, but a human can pull the removable portion 250 apart from the remainder 240. Once removed, the end 228 of the removable portion 250 has a hole 230 through which the interior cavity 202 of the hollow body 206 can be accessed. Further, once the removable portion 250 is removed, the end 224 of the remainder 240 has a hole 226 through which the interior cavity 202 can be accessed.

[142] Referring to Figures 45 and 46, there is shown an embodiment of the present technology being an animal dental hygienic device 400 that is a sphere in shape. The device 400 has a hollow body 406 having an exterior surface 410 and an interior cavity 402 therein. Extending from the exterior surface 410 are a plurality of projections 404. A plurality of apertures 408 are present in the hollow body 406 extending from the exterior surface 410 thereof to the interior cavity 402 thereof, the material 412 surrounding the aperture 408 of sufficient hardness to scrape the outer surface of a tooth during frictional engagement to remove dental plaque therefrom. There is a brush 462 having bristles 464 in the interior cavity 402 of the device 400. The device has a releasably-attached removable portion (not shown), which, when removed, provides an opening

490 through which the interior cavity 402 is accessible. Material can be removed from and placed into the interior cavity 402 of the device 400 via the opening 490. As the functionality of the various components of the device 400 is the same as was previously described in relation to device 200, it will not be repeated.

[143] Referring to Figures 47, 48, 49 and 50, various embodiments of the present technology being animal dental hygienic devices 500, 600, 700, 800 (being dimensioned and structured for domestic cats), which are attached to various cat toys 505, 605/607, 705/707, 805/807 (respectively) are shown. The device 500 has projections 504. As the functionality of the various components of the devices 500, 600, 700, 800 is the same as was previously described in relation to device 200, it will not be repeated.

[144] Modifications and improvements to the above-described implementations of the present technology may become apparent to those skilled in the art. The foregoing description is intended to be exemplary rather than limiting. The scope of the present technology is therefore intended to be limited solely by the scope of the appended claims.

CLAIMS

1. An animal dental hygienic device, comprising:

- a hollow body having an exterior surface and an interior cavity, the hollow body being sized to fit within the mouth of the animal and to be bitten by the animal;
- the hollow body having a plurality of apertures positioned along the exterior surface of the hollow body, the apertures extending from the exterior surface to the interior cavity;
- each aperture having dental-hygienically active dimensions allowing a tooth of the animal to penetrate through the aperture
    - such that material surrounding the aperture frictionally engages an outer surface of the tooth of the animal during penetration of the aperture by the tooth, the material surrounding the aperture being of sufficient hardness to scrape the outer surface of the tooth during frictional engagement to remove dental plaque, and
    - such that a portion of the tooth of the animal extends within the interior cavity during penetration of the aperture by the tooth.

2. The animal dental hygiene device of claim 1, wherein the interior cavity of the hollow body contains a filler material different than material of which the hollow body is constructed.

3. The animal dental hygienic device of any one of claims 1 and 2, wherein, the hollow body is constructed of material having sufficient flexibility to deform under pressure exerted by the animal biting the hollow body, and the dimensions of a one of the plurality of the apertures change during deformation from initial dimensions to the dental-hygienically active dimensions.

4. The animal dental hygienic device of any one of claims 1 to 3, wherein each aperture is at least partially closed by at least one frangible closure broken open by the tooth of the animal penetrating the closure.

5. The animal dental hygienic device of any one of claims 1 to 4, wherein each aperture is at least one of structured, dimensioned, and positioned so as to discourage filler material from exiting the cavity via that aperture.

6. The animal dental hygienic device of any one of claims 1 to 5, wherein projections extend outwardly from the exterior surface of the hollow body, the projections being positioned,

dimensioned, shaped and structured to be dental-hygienically active as the animal bites the hollow body.

7. The animal dental hygienic device of claim 6, wherein the projections frictionally engage at least one of the outer surface of the tooth of the animal and gums of the animal as the tooth of the animal penetrates a one of the plurality of apertures.

8. The animal dental hygienic device of claim 7 as it depends directly or indirectly from claim 3, wherein when the material deforms under the pressure, the projections move from an initial configuration to a dental-hygienically active configuration.

9. The animal dental hygienic device of any one of claims 1 to 8, wherein the hollow body is of a multiple layer construction, at least one of the layers being dental-hygienically active.

10. The animal dental hygienic device of any one of claims 1 to 9, wherein the hollow body has at least one releasably-attachable removable portion allowing access to filler material in the interior cavity.

11. The animal dental hygienic device of claim 10, wherein the filler material is attached to the removable portion of the hollow body and is removed from the interior cavity when the removable portion is removed from the hollow body.

12. The animal dental hygienic device of any one of claims 1 to 11, further comprising a chemical substance associated with the hollow body.

13. The animal dental hygienic device of claim 12, wherein the chemical substance is at least one of an anti-bacterial, a medicament, a fragrance, and a flavor.

14. The animal dental hygienic device of any one of claims 2 to 13 as they depend directly or indirectly from claim 2, wherein the filler material includes wood.

15. The animal dental hygienic device of any one of claims 2 to 14 as they depend directly or indirectly from claim 2, wherein the filler material includes food.

16. The animal dental hygienic device of any one of claims 2 to 15 as they depend directly or indirectly from claim 2, wherein the filler material includes a medicament.

17. The animal dental hygienic device of any one of claims 2 to 16 as they depend directly or indirectly from claim 2, wherein the filler material includes a material having a shape and sufficient hardness to scrape the outer surface of the tooth as the tooth enters the cavity to clean the tooth.

18. The animal dental hygienic device of any one of claims 2 to 17 as they depend directly or indirectly from claim 2, wherein the device is dog-bone shaped.

19. The animal dental hygienic device of claim 18 as it depends directly or indirectly from claim 10, wherein the at least one releasably-attachable removable portion is a flared-end of the dog-bone.

20. The animal dental hygienic device of any one of claims 1 to 17, wherein the device is one of a rod, spherical, disc, and annular shape.

21. The animal dental hygienic device of any one of claims 1 to 20, wherein the device is structured to be attachable to an animal toy.

22. The animal dental hygienic device of any one of claims 1 to 20, wherein the device is at least part of an animal toy.

23. The animal dental hygienic device of any one of claims 1 to 22, wherein the material surrounding the aperture is of sufficient hardness and roughness to scrape the outer surface of the tooth during frictional engagement to remove dental plaque.

24. The animal dental hygienic device of any one of claims 1 to 23, wherein the interior cavity is completely filled.

25. The animal dental hygienic device of any one of claims 1 to 24, wherein the hollow body includes at least a helical coil and spaces between successive turns of the helical coil define the apertures.

26. The animal dental hygienic device of any one of claims 1 to 25, wherein at least some apertures are only partially formed in the hollow body, prior to being the device being bitten by the animal.

27. The animal dental hygienic device of any one of claims 1 to 26, wherein the hollow body includes at least one material having a cancellous structure.




Figure 1




Figure 2




Figure 3




Figure 4




Figure 5




Figure 6




Figure 7




Figure 8




Figure 9




Figure 10




Figure 11




Figure 12




Figure 13




Figure 14




Figure 15




Figure 16




Figure 17




Figure 18




Figure 17*bis*




Figure 18*bis*




Figure 19




Figure 20




Figure 21




Figure 22




Figure 23




Figure 24




Figure 25




Figure 26




Figure 27




Figure 28


218
204
220
222
220
200
250
228
224
206
240
202
208
212
210
204
214

Figure 29




Figure 30




Figure 31


200
240
206
220
222
220
250
204
226
214
202
218
208
212
208
230 234
234
232

Figure 32


200
240
206
220
222
250
204
226
220
210
214
202
202
218
260
212
208
228
234
234
232

Figure 33




Figure 34




Figure 35




Figure 36




Figure 37




Figure 38




Figure 39




Figure 40


214
204
240
202
208
264
200
262
230
224
228
226
202
220
222
220
208
250
218
204

Figure 41




Figure 42




Figure 43




Figure 44




Figure 45




Figure 46




Figure 47




Figure 48




Figure 49




Figure 50




Figure 51




Figure 52




Figure 53




Figure 54




Figure 55

**INTERNATIONAL SEARCH REPORT**

International application No.
**PCT/IB2017/057472**

A. CLASSIFICATION OF SUBJECT MATTER
IPC: ***A61D 5/00*** (2006.01) , ***A01K 13/00*** (2006.01)

According to International Patent Classification (IPC) or to both national classification and IPC

B. FIELDS SEARCHED

Minimum documentation searched (classification system followed by classification symbols)
IPC: A61D 5/00 (2006.01) , A01K 13/00 (2006.01)

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched
None

Electronic database(s) consulted during the international search (name of database(s) and, where practicable, search terms used)
Questel (FAMPAT)

Keywords: HOLE?, APERTURE?, OPENING?, CHANNEL?, CAVITY, HOLLOW, TOY, EXTEND+, PLAQUE

C. DOCUMENTS CONSIDERED TO BE RELEVANT

| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| A | US 2009/0114166 (Saborio et al.) 7 May 2009 (07-05-2009) | 1-27 |
| A | WO 89/00379 (BOUNCE, INC.) 26 January 1989 (26-01-1989) | 1-27 |
| A | US 5,944,516 (Deshaies) 31 August 1999 (31-08-1999) | 1-27 |

☐ Further documents are listed in the continuation of Box C. ☑ See patent family annex.

| | |
|---|---|
| * Special categories of cited documents: | |
| "A" document defining the general state of the art which is not considered to be of particular relevance | "T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention |
| "E" earlier application or patent but published on or after the international filing date | "X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone |
| "L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified) | "Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art |
| "O" document referring to an oral disclosure, use, exhibition or other means | |
| "P" document published prior to the international filing date but later than the priority date claimed | "&" document member of the same patent family |

| | |
|---|---|
| Date of the actual completion of the international search<br>16 February 2018 (16-02-2018) | Date of mailing of the international search report<br>19 February 2018 (19-02-2018) |
| Name and mailing address of the ISA/CA<br>Canadian Intellectual Property Office<br>Place du Portage I, C114 - 1st Floor, Box PCT<br>50 Victoria Street<br>Gatineau, Quebec K1A 0C9<br>Facsimile No.: 819-953-2476 | Authorized officer<br><br>Alexis Cote (819) 639-7785 |

**INTERNATIONAL SEARCH REPORT**
Information on patent family members

International application No.
**PCT/IB2017/057472**

| Patent Document Cited in Search Report | Publication Date | Patent Family Member(s) | Publication Date |
|---|---|---|---|
| US2009114166A1 | 07 May 2009 (07-05-2009) | US2009114166A1 | 07 May 2009 (07-05-2009) |
| | | US7997229B2 | 16 August 2011 (16-08-2011) |
| WO8900379A1 | 26 January 1989 (26-01-1989) | WO8900379A1 | 26 January 1989 (26-01-1989) |
| | | CA1334364C | 14 February 1995 (14-02-1995) |
| | | DE3850663D1 | 18 August 1994 (18-08-1994) |
| | | DE3850663T2 | 09 February 1995 (09-02-1995) |
| | | EP0367793A1 | 16 May 1990 (16-05-1990) |
| | | EP0367793A4 | 19 December 1990 (19-12-1990) |
| | | EP0367793B1 | 13 July 1994 (13-07-1994) |
| | | USRE34352E | 24 August 1993 (24-08-1993) |
| | | US4802444A | 07 February 1989 (07-02-1989) |
| US5944516A | 31 August 1999 (31-08-1999) | None | |

**INTERNATIONAL SEARCH REPORT**

International application No.
PCT/US 2019/069087

A. CLASSIFICATION OF SUBJECT MATTER

***A01K 15/02** (2006.01)*

According to International Patent Classification (IPC) or to both national classification and IPC

B. FIELDS SEARCHED

Minimum documentation searched (classification system followed by classification symbols)

A01K 15/00, 15/02, 15/24-15/26, 13/00, 11/00, 5/00, A63H 11/00, 11/02

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practicable, search terms used)

PatSearch (RUPTO internal), USPTO, PAJ, Esp@cenet, Information Retrieval System of FIPS

C. DOCUMENTS CONSIDERED TO BE RELEVANT

| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| Y | US 2015/0257366 A1 (PET QWERKS INC) 17.09.2015, fig.1, claims | 1-18 |
| Y | WO 2018/096524 A1 (COOPERSMITH ALLAN et al) 31.05.2018, fig..41, claims, abstract | 1-18 |
| Y | US 2016/0255812 A1 (WOLFE JR JERRY J et al) 08.09.2016, fig..1-6, paragraphs [0019]-[0026]) | 1-18 |
| Y | US 8997695 B2 (RIDING RAINY) 07.04.2015, fig..1 | 13, 16 |
| Y | WO 2012/075346 A2 (PIONEER PET PRODUCTS LLC et al) 07.06.2012, claims, abstract, fig.1) | 15 |
| A | US 20040194731 A1 (LINEBERRY CHRISTOPHER J.) 07.10.2004, fig.1, abstract | 1-18 |

☐ Further documents are listed in the continuation of Box C. ☐ See patent family annex.

* Special categories of cited documents:

"A" document defining the general state of the art which is not considered to be of particular relevance

"E" earlier document but published on or after the international filing date

"L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)

"O" document referring to an oral disclosure, use, exhibition or other means

"P" document published prior to the international filing date but later than the priority date claimed

"T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention

"X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone

"Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art

"&" document member of the same patent family

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 20 March 2020 (20.03.2020) | 03 April 2020 (03.04.2020) |

| Name and mailing address of the ISA/RU: | Authorized officer |
|---|---|
| Federal Institute of Industrial Property,<br>Berezhkovskaya nab., 30-1, Moscow, G-59,<br>GSP-3, Russia, 125993<br>Facsimile No: (8-495) 531-63-18, (8-499) 243-33-37 | L. Kornetova<br><br>Telephone No. (495) 531 64 81 |

(12) INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

(19) **World Intellectual Property Organization**
International Bureau

(43) **International Publication Date**
**09 July 2020 (09.07.2020)**

WIPO | PCT

(10) **International Publication Number**
**WO 2020/142502 A1**

(51) **International Patent Classification:**
*A01K 15/02* (2006.01)

(21) **International Application Number:** PCT/US2019/069087

(22) **International Filing Date:** 31 December 2019 (31.12.2019)

(25) **Filing Language:** English

(26) **Publication Language:** English

(30) **Priority Data:**
62/787,624 02 January 2019 (02.01.2019) US
62/910,144 03 October 2019 (03.10.2019) US

(72) **Inventor; and**
(71) **Applicant: LOFRANCO, Debra** [US/US]; Debra LoFranco, 35 East Mockingbird Way, Galloway, New Jersey 08205 (US).

(74) **Agent: SLUZAS, Alex R.**; Paul and Paul, Suite 3740, 1717 Arch Street, Philadelphia, Pennsylvania 19103 (US).

(81) **Designated States** *(unless otherwise indicated, for every kind of national protection available)*: AE, AG, AL, AM, AO, AT, AU, AZ, BA, BB, BG, BH, BN, BR, BW, BY, BZ, CA, CH, CL, CN, CO, CR, CU, CZ, DE, DJ, DK, DM, DO, DZ, EC, EE, EG, ES, FI, GB, GD, GE, GH, GM, GT, HN, HR, HU, ID, IL, IN, IR, IS, JO, JP, KE, KG, KH, KN, KP, KR, KW, KZ, LA, LC, LK, LR, LS, LU, LY, MA, MD, ME, MG, MK, MN, MW, MX, MY, MZ, NA, NG, NI, NO, NZ, OM, PA, PE, PG, PH, PL, PT, QA, RO, RS, RU, RW, SA, SC, SD, SE, SG, SK, SL, SM, ST, SV, SY, TH, TJ, TM, TN, TR, TT, TZ, UA, UG, US, UZ, VC, VN, ZA, ZM, ZW.

(84) **Designated States** *(unless otherwise indicated, for every kind of regional protection available)*: ARIPO (BW, GH, GM, KE, LR, LS, MW, MZ, NA, RW, SD, SL, ST, SZ, TZ, UG, ZM, ZW), Eurasian (AM, AZ, BY, KG, KZ, RU, TJ, TM), European (AL, AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FI, FR, GB, GR, HR, HU, IE, IS, IT, LT, LU, LV, MC, MK, MT, NL, NO, PL, PT, RO, RS, SE, SI, SK, SM, TR), OAPI (BF, BJ, CF, CG, CI, CM, GA, GN, GQ, GW, KM, ML, MR, NE, SN, TD, TG).

**Published:**
— *with international search report (Art. 21(3))*

(54) **Title:** PET TOY




Fig. 1

(57) **Abstract:** A pet toy includes surfaces for adhering abrasive material for dulling a pet's claws as the pet plays with the toy, as well as a cavity for receiving pet treats for encouraging play.

WO 2020/142502 A1

# PET TOY

## BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to devices for caring for pet animals.

3. Brief Summary of the Prior Art

Pet toys of various types are well known in the art. Some such toys permit animal foodstuffs such as disclosed in U.S. Patents 10,485,220 and 10,244,735 to be retained within the toy and to provide amusement for the animal in the interest of avoiding boredom and the destructive behavior which may sometimes accompany pet boredom. Other such toys are designed to aid with providing good care for pet animals. For example, U.S. Patent 10,477,838 discloses a pet toy having cavities for engaging an animal's teeth with scrubbing elements with the goal of improving the animal's dental hygiene, while U.S. Patent 10,206,373 discloses a double-ended pet toy adapted to clean a pet's teeth. U.S. Patents 8,561,575 and 7,011,043 disclose apparatus for dulling an animal's claws using abrasive surfaces. U.S. Patent 7,565,884 discloses a cat scratcher system for providing replaceable scatchable materials such as corrugated cardboard.

## SUMMARY OF THE INVENTION

The present invention is a pet toy comprising a body having an upper face, a lower face, a top side, a bottom side, a left side, and a right side. At least one of the upper face and the lower face has a pad surface for adhering an abrasive material. Preferably, the body has an internal central cavity. Preferably, at least one aperture is formed in the body for accessing the internal central cavity. Preferably, at least one handle extends from the group consisting of the top side, the bottom side, the left side, and the right side of the body for grasping the pet toy. Preferably, the at least one aperture is formed in the group consisting of the top side, the bottom side, the left side, and the right side of the body. Preferably, the at least one handle and the at least one aperture are formed in the same side. Preferably, the at least one handle is arc-shaped. Preferably, the at least one handle is arc-shaped and extends from the side on either side of the aperture. In one presently preferred embodiment, the body has a pair of arc-shaped handles extending from opposite sides of the body, and at least one aperture is formed in one of the opposite sides. Preferably, the body has an aperture formed in each of the opposite sides. Preferably, the pet toy further includes at least one guard projecting from the at least one face having a pad surface, with the at least one guard projecting from the at least one face proximate the pad surface. Preferably,

the upper surface of the pet toy has an upper pad surface and the lower face has a lower pad surface. Preferably, the pet toy further comprises at least one cavity for receiving a scent material. Preferably, the at least one cavity is formed in at least one of the upper surface and the lower surface. Preferably, the pet toy further comprises an abrasive material adhered to the pad surface.

## BRIEF DESCRIPTION OF THE FIGURES

Fig. 1 is a perspective view of a first embodiment of a pet toy according to the present invention.

Fig. 2 is a front elevational view of the pet toy of Fig. 1.

Fig. 3 is a side elevational view of the pet toy of Fig. 1.

Fig. 4 is a front elevational sectional view of the pet toy of Fig. 1 taken along the line 4—4 of Fig. 3.

Fig. 5 is a plan sectional view of the pet toy of Fig. 1 taken along the line 5—5 of Fig. 3.

Fig. 6 is an exploded perspective view of a second embodiment of a pet toy according to the present invention.

Fig. 7 is a top plan view of the pet toy of Fig. 6.

Fig. 8 is a top plan view of a third embodiment of a pet toy according to the present invention.

## DETAILED DESCRIPTION

The present invention provides a multi-purpose health and wellness toy with two key benefits: interactivity and healthy grooming. The pet toy of the present invention offers physical and mental entertainment with pet-centric specifications that are safe and healthy for pets. The pet toy of the present invention provides challenges for pets to use their natural instincts, and in particular, their sense of smell. Pets will have a sense of accomplishment, having engaged in an activity that is both fun and rewarding while they trim and file their own claws. The pet toy of the present invention mentally stimulates a pet's natural sense, and offers enrichment by helping satisfying instinctual needs. Further, the pet toy of the present invention supports interactive "play" with unpredictable bounces for games of fetch or tug-of-war, as well as advantageously reducing destructive chewing and fights boredom. Further, the pet toy of the present invention can be used for providing pet treats and snacks.

Referring now to the Figures in which like reference numerals represent like elements in each of the several views, there is shown in Fig. 1 a perspective view of a first embodiment of a pet toy 10 according to the present invention, as shown from above. The pet toy 10 has a generally rectangular body 20 having a generally flat

upper face 22 and a generally flat lower face 24 (Fig. 3) parallel to the upper face 22. Preferably, the pet toy 10 is sized to be appropriate to the size of the pet for which the pet toy 10 is intended, such that, for example, a pet toy 10 intended for a larger breed dog is substantially larger overall than a pet toy 10 intended for a minature breed dog. The body 20 further inclues a top side 26, a bottom side 28, as well as a left side 30 and a right side 32. A generally flat upper pad surface 40 is formed on and slightly recessed below the upper face 22 of the pet toy 10, and a corresponding generally flat lower pad surface 42 is formed on and slightly recessed below the lower face 24. The pad surfaces 40, 42 are adapted to receive an abrasive material, such as a sheet of sandpaper, emery paper, or a sandstone material, for contacting and dulling a pet's claws or nails when the pet plays with the toy. The pad surfaces 40, 42 may be provided with an adhesive coating for adhering the abrasive material, or an adhesive material, such as Velcro, for the same purpose. Alternatively, the abrasive material itself may be adherent, as by being coated with an adhesive material. Each abrasive sheet is preferably provided with a fastener surface on the underside of the abrasive sheet order to releasably adhere the abrasive sheet to the pad surface 40, 42 so that the abrasive sheets can be replaced as necessary. Both the upper face 22 and the lower face 24 are provided with guard projections 50 which extend slightly above the respective upper pad surface 40 and lower pad surface 42 to prevent the abrasive material adhering to the pad surfaces 40, 42 from contacting and marring a flat surface on which the pet toy 10 may be placed, such as a wooden floor. The pet toy 10 also includes a plurality of generally circular cavities or scent receptacles 60 formed at the corners of the upper face 22 and the lower face 24, for receiving scent materials for encouraging pets to play with the pet toy 10.

As can be seen in the front elevational sectional view of Fig. 4, the body 20 includes a central cavity 70 which is accessible through a generally round first aperture 72 formed in the top side 26 of the body 20 and a corresponding generally round second aperture 74 formed in the bottom side of the body 20, with the first aperture 72 and second aperture 74 lying on a common axis. Animal food such as pet treats can be received within the central cavity 70. Preferably, such animal food is shaped so the food can be positioned such that the animal food extends at least partially through the first aperture 72 and/or the lower aperture 74, to provide at least partial access to an animal seeking the animal food. Alternatively, or in addition, other toy elements (such as feathers or the like) can be placed in an aperture 72, 74 to encourage play. Further, the apertures 72, 74 may be plugges or closed to raise level of difficulty.

The pet toy 10 also includes a first arc-shaped handle 80 extending from the top side 26 of the body 20 and extending over the first aperture 72 and a second arc-shaped handle 82 exending from the bottom side 28 of the body 20 and extending over the second aperture 74. Either handle 80, 82 can be grasped by a pet owner while his or her pet attempts to pull the pet toy 10 away by tugging at the other handle 82, 80. Preferably, the pet toy 10 is formed from a sturdy, durable material, such as an elastic material such as a natural rubber, a thermoplastic elastomer or the like, such that the pet toy 10 resists destruction by rough play with the pet. Preferably, the pet toy 10 is formed from an FDA-approved chewable rubber material that is both safe and environmentally friendly.

A second embodiment of a pet toy 100 according to the present invention is depicted in the exploded perspective view of Fig. 6. This embodiment of the pet toy 100 is specifically adapted for use with cats. The pet toy 100 includes a plurality of layers 120, 130, 140 arranged symmetrically on either side of a generally flat base layer 110. The base layer 110 is preferably formed from a flexible, durable material, and preferably takes the form of a stylized fish, and has an upper face and a lower face. The base layer 110 includes a central portion 112 from which preferably extends a plurality of simulated appendages 114, 116. When the pet toy 100 is to be used with cats, one or more of the appendages 114, 116 may take the form of a pocket in which catnip can be inserted to motivate play. On either side of the base layer 110 an interlayer or pad 120 preferably formed from a durable, flexible material, such as cotton fabric, is provided. Each interlayer 120 is adhered to a side of the base layer 110 by suitable means, such as by a fabric glue or the like. Preferably, the base layer is adhered to one or each of the interlayers 120 in such a way as to form pockets or central internal cavities 122 in which pet treats can be inserted through apertures formed between the base layer 110 and the interlayer 120. On the exterior side of each of the interlayers 120 an abrasive sheet 130 is provided, preferably, in the case of a pet toy 100 intended for cats, with a fine grain abrasive to aid in trimming the cat's claws as the cat plays with the pet toy 100. Each abrasive sheet 130 is preferably adhered to the respective interlayer 120 with a suitable adhesive material. Alternatively, a fastener surface, such as hook-like fasteners such as Velcro, can be provided on the interlayer 120, and the abrasive sheets 130 can be provided with a surface, such as a fabric, adherent to the fastener surface. In another aspect, the abrasive sheets 130 can be permanently adhered to the interlayers 120, and the abrasive sheets 120 themselves can be covered with a layer of netting material 140 in order of catching a cat's claws in the interest of motivating further play activity with the

pet toy 100. Preferably, the aperture 102 is formed at one end of the pet toy 100 so that a cord or string 150 can be attached, thus forming a handle for the pet toy 100, so that the pet owner can engage his or her pet by dangling the pet toy 100. Preferably, a feather 160 or similar attractive object is attached to the pet toy 100 at one end of the pet toy 100, as best seen in the top plan view of Fig. 7. In a presently preferred embodiment, the pet toy 100 is formed from fabric materials, other than the abrasive sheets 120, and the various component are adhered together, such a with a non-toxic glue, and/or by sewing the layers together.

A third embodiment of a pet toy 200 according to the present invention is depicted in the top plan view of Fig. 8. While this embodiment is substantially similar to the first embodiment, the arc-shaped handles 280, 284, each includes plurality of grooves 285, preferably oriented generally perpendicular to the central axes of the handles 280, 284, and spaced apart and with a depth to permit canine teeth to contact the interior of the grooves 285 to encourage cleaning of the teeth by contacting foreign matter and the like on the teeth, such as, for example, canine molars. Alternatively, a plurality of grooves can be provided for the same purpose elsewhere on the pet toy, such as on the body of the pet toy (not shown).

Various modifications can be made in the details of the various embodiments of the apparatus of the present invention, all within the scope and spirit of the invention as defined by the appended claims.

## CLAIMS

1. A pet toy comprising:

a body having an upper face, a lower face, a top side, a bottom side, a left side, and a right side;

at least one of the upper face and the lower face having a pad surface for adhering an abrasive material;

the body having an internal central cavity; and

at least one aperture formed in the body for accessing the internal central cavity; at least one handle extending from the group consisting of the top side, the bottom side, the left side, and the right side of the body for grasping the pet toy.

2. A pet toy according to claim 1 wherein the at least one aperture is formed in the group
consisting of the top side, the bottom side, the left side, and the right side of the body.

3. A pet toy according to claim 2 wherein the at least one handle and the at least one aperture are formed in the same side.

4. A pet toy according to claim 1 wherein the handle is arc-shaped.

5. A pet toy according to claim 3 wherein the at least one handle is arc-shaped and extends from the side on either side of the aperture.

6. A pet toy according to claim 1, the body having a pair of arc-shaped handles extending from opposite sides of the body, and at least one aperture formed in one of the opposite sides.

7 A pet toy according to claim 6, the body having an aperture formed in each of the opposite sides.

8. A pet toy according to claim 1, further including at least one guard projecting from the at least one face having a pad surface, the at least one guard projecting from the at least one face proximate the pad surface.

9. A pet toy according to claim 1 wherein the upper surface has an upper pad surface and the lower face has a lower pad surface.

10. A pet toy according to claim 1 further comprising at least one cavity for receiving a scent material.

11. A pet toy according to claim 10 wherein the at least one cavity is formed in at least one of the upper surface and the lower surface.

12. A pet toy according to claim 1 further comprising an abrasive material adhered to the pad surface.

13. A pet toy according to claim 1 wherein the handle is a string or cord.

14. A pet toy according to claim 1 further including catnip secured within the body.

15. A pet toy according to claim 12 further including netting material covering the abrasive material.

16. A pet toy according to claim 1 further including a feather adhered to the body.

17. A pet toy according to claim 1 further including a plurality of grooves sized and positioned to be contacted by pet teeth for cleaning the teeth.

18. A pet toy according to claim 17 wherein the plurality of grooves is provided on the at least one handle.




Fig. 2




Fig. 3




Fig. 4




Fig. 5




Fig. 1




Fig. 6




Fig. 7




Fig. 8

Doc Code: MES.GIB
Document Description: Certification of Micro Entity Status (Gross Income Basis)

PTO/SB/15A (07-14)

# CERTIFICATION OF MICRO ENTITY STATUS
(GROSS INCOME BASIS)

| Application Number or Control Number (if applicable): | Patent Number (if applicable): |
|---|---|
| First Named Inventor: Debra LOFRANCO | Title of Invention: PET TOY |

The applicant hereby certifies the following—

(1) **SMALL ENTITY REQUIREMENT –** The applicant qualifies as a small entity as defined in 37 CFR 1.27.

(2) **APPLICATION FILING LIMIT –** Neither the applicant nor the inventor nor a joint inventor has been named as the inventor or a joint inventor on more than four previously filed U.S. patent applications, excluding provisional applications and international applications under the Patent Cooperation Treaty (PCT) for which the basic national fee under 37 CFR 1.492(a) was not paid, and also excluding patent applications for which the applicant has assigned all ownership rights, or is obligated to assign all ownership rights, as a result of the applicant's previous employment.

(3) **GROSS INCOME LIMIT ON APPLICANTS AND INVENTORS –** Neither the applicant nor the inventor nor a joint inventor, in the calendar year preceding the calendar year in which the applicable fee is being paid, had a gross income, as defined in section 61(a) of the Internal Revenue Code of 1986 (26 U.S.C. 61(a)), exceeding the "Maximum Qualifying Gross Income" reported on the USPTO Web site at http://www.uspto.gov/patents/law/micro_entity.jsp which is equal to three times the median household income for that preceding calendar year, as most recently reported by the Bureau of the Census.

(4) **GROSS INCOME LIMIT ON PARTIES WITH AN "OWNERSHIP INTEREST" –** Neither the applicant nor the inventor nor a joint inventor has assigned, granted, or conveyed, nor is under an obligation by contract or law to assign, grant, or convey, a license or other ownership interest in the application concerned to an entity that, in the calendar year preceding the calendar year in which the applicable fee is being paid, had a gross income, as defined in section 61(a) of the Internal Revenue Code of 1986, exceeding the "Maximum Qualifying Gross Income" reported on the USPTO Web site at http://www.uspto.gov/patents/law/micro_entity.jsp which is equal to three times the median household income for that preceding calendar year, as most recently reported by the Bureau of the Census.

**SIGNATURE by an authorized party set forth in 37 CFR 1.33(b)**

| | | | | | |
|---|---|---|---|---|---|
| Signature | /R. Burns Israelsen, Reg. No. 42685/ | | | | |
| Name | R. Burns Israelsen | | | | |
| Date | 2021-07-01 | Telephone | | Registration No. | 42685 |

☐ There is more than one inventor and I am one of the inventors who are jointly identified as the applicant. The required additional certification form(s) signed by the other joint inventor(s) are included with this form.

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.